**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF FLORIDA**
Case No.: _____-Civ

ANTHONY GREENWOOD, d/b/a
McDONALDS,

**09-CV-22982-Altonaga-Brown**

      Plaintiff,

vs.

ARCH SPECIALTY INSURANCE
COMPANY,

      Defendant.
_____/



FILED by _____ *VT* _____ D.C.
ELECTRONIC

**Oct 02, 2009**

STEVEN M. LARIMORE
CLERK U.S. DIST. CT.
S.D. OF FLA. - MIAMI

## NOTICE OF REMOVAL

NOW INTO COURT, through undersigned counsel, comes Defendant, ARCH

SPECIALTY INSURANCE COMPANY (hereinafter referred to as "Arch"), by and through

its undersigned counsel and pursuant to 28 U.S.C. §1441(a), hereby petitions this

Honorable Court for the removal of the cause of action now pending in the Circuit Court

of the Eleventh Judicial Circuit in and for Dade County, State of Florida, styled ANTHONY

GREENWOOD d/b/a McDONALDS vs. ARCH SPECIALTY INSURANCE COMPANY,

Case Number 09-65565 CA 04. Plaintiffs' action is pending in a court which is within the

jurisdiction of the United States District Court for the Southern District of Florida. See S.D.

Fla. Loc. Rule 3.1 (c) and Rule 3.4(D). Jurisdiction in this Honorable Court is proper based

on the following grounds:

### DIVERSITY JURISDICTION

### Complete Diversity Exists

1.    Jurisdiction is proper in this court pursuant to 28 U.S.C. § 1332.

3.    In order to qualify for diversity jurisdiction, there  must be complete diversity

between the parties. 28 U.S.C. § 1332(a). In order for diversity jurisdiction to exist, no

Plaintiff may be a citizen of the same state as any Defendant. See e.g., *Pease v. Medtronic, Inc.*, 6 F. Supp. 2d 1354, 1356 (S.D. Fla. 1998).

4.      At the time this action was commenced, and at the present time, and all times material to the above-styled cause of action, Arch Specialty Insurance Company was and is a corporation organized and existing under the laws of the State of Nebraska  with its principal place of business in Nebraska.  Arch Specialty Insurance Company is not a citizen of or incorporated the State of Florida and does not have its principal place of business in the State of Florida.  At all times material to this action, Arch Specialty Insurance Company has been a foreign corporation doing business in Florida.

5.      According to the Complaint, at all times material hereto, Plaintiff, Anthony Greenwood d/b/a McDonalds ("Plaintiff")  resides and owns real property in Miami-Dade County, Florida

6.      At no time material to this action were Arch Specialty Insurance Company and Plaintiff citizens of the same state.  Therefore, complete diversity exists between the parties in accordance with 28 U.S.C. § 1332(a).

### Amount in Controversy Exceeds $75,000

7.      The Complaint in this action asserts a claim for damages in excess of $15,000.00.  Correspondence from the insured's counsel received by Arch Specialty Insurance Company indicates that Plaintiffs' claim will exceed $75,000.00.

8.      Arch Specialty Insurance Company was served with the Complaint and initial discovery requests via service on the Florida Department of Financial Services on September 15, 2009.  Therefore, the Notice of Removal is timely filed pursuant to 28 U.S.C. § 1446(b).

2

9.      Pursuant to 28 U.S.C. § 1446(a), and the United States District Court Southern District of Florida General Civil Case Filing Requirements IV (G), true and legible copies of the state court documents are being attached to this Notice of Removal for filing and uploading to the CM/ECF system. See Composite Exhibit "A".

10.     Pursuant to  28 U.S.C. §1446(d), Arch Specialty Insurance Company has provided written notice of the filing of the Notice of Removal, along with copies of this Notice of Removal and all attachments, to all adverse parties and with the Clerk of Circuit Court of the Eleventh Judicial Circuit in and for Dade County, Florida.

11.     A copy of this Notice of Removal is being filed by Arch Specialty Insurance Company Insurance Company with the state court where this action is pending, "promptly after" the filing in this Court of this Notice of Removal. 28 U.S.C. § 1446(b).

WHEREFORE, Defendant, Arch Specialty Insurance Company INSURANCE COMPANY, respectfully requests that this Honorable Court exercise jurisdiction over this matter.

Dated: October 1, 2009          Respectfully Submitted,


WILLIAM R. LEWIS, ESQ. (Florida Bar No.: 879827)
wlewis@butlerpappas.com
JOHN V. GARAFFA, ESQ. (Florida Bar No.:0554308)
jgaraffa@butlerpappas.com
BUTLER PAPPAS WEIHMULLER KATZ CRAIG LLP
One Harbour Place, Suite 500
777 S. Harbour Island Blvd.
Tampa, FL 33602
Telephone:(813) 281-1900
Fax: (813) 281-0900
Attorneys for Defendant,
ARCH SPECIALTY INSURANCE COMPANY

3

## CERTIFICATE OF SERVICE

I HEREBY CERTIFY that on October 1, 2009, I mailed the foregoing original to the Clerk of the Court for filing by using the CM/ECF system. I also certify that the foregoing document is being served this day on all counsel of record or pro se parties identified on the attached Service List in the manner specified, either via transmission of Notices of Electronic Filing generated by CM-ECF or in some other authorized manner for those counsel or parties who are not authorized to receive electronically Notice of Electronic Filing.

JOHN V. GARAFFA, ESQ.

**SERVICE LIST**
**ANTHONY GREENWOOD, d/b/a McDONALDS vs. ARCH SPECIALTY INSURANCE CO.**
**Case No.: _____-Civ (Judges last name/Magistrate's late name)**
**United States District Court, Southern District of Florida**

DAVID J. PETTINATO, ESQ.
dpettinato@merlinlawgroup.com
Merlin Law Group, P.A.
777 S. Harbour Island Boulevard
Suite 950
Tampa, FL 33602
Telephone: (813) 229-1000
Fax: (813) 229-3692
Attorney for Plaintiff,
ANTHONY GREENWOOD
d/b/a McDONALDS
Via transmission of Notices of Electronic
Filing generated by CM-ECF and regular
U.S. Mail

WILLIAM R. LEWIS, ESQ.
wlewis@butlerpappas.com
JOHN V. GARAFFA, ESQ.
jgaraffa@butlerpappas.com
BUTLER PAPPAS WEIHMULLER KATZ CRAIG LLP
One Harbour Place, Suite 500
777 S. Harbour Island Blvd.
Tampa, FL 33602
Telephone:(813) 281-1900
Fax: (813) 281-0900
Attorneys for Defendant, ARCH SPECIALTY
INSURANCE COMPANY
Via transmission of Notices of Electronic
Filing generated by CM-ECF and regular
U.S. Mail

5

# Exhibit A

**ALEX SINK**
**CHIEF FINANCIAL OFFICER**
**STATE OF FLORIDA**
Florida Department of Financial Services

SEP 1 5 2009
LEGAL DEPARTMENT
ARCH
RECEIVED

09-48991

---

ANTHONY GREENWOOD, D/B/A MCDONALDS,

PLAINTIFF(S),

VS.

ARCH SPECIALTY INSURANCE COMPANY

DEFENDANT(S).

CASE #:    09 65565 CA 04
COURT:    CIRCUIT COURT
COUNTY:    DADE
DFS-SOP#:  09-48991

SUMMONS, COMPLAINT AND DEMAND FOR JURY TRIAL, EXHIBITS, DISCOVERY

RECEIVED
ARCH
LEGAL DEPARTMENT
SEP 1 5 2009

## NOTICE OF SERVICE OF PROCESS

NOTICE IS HEREBY GIVEN of acceptance of Service of Process by the Chief Financial
Officer of the State of Florida. Said process was received in my office by MAIL on the 11th day
of September, 2009 and a copy was forwarded by Electronic Delivery on the 15th day of
September, 2009 to the designated agent for the named entity as shown below.

    ARCH SPECIALTY INSURANCE COMPANY
    MARTIN J NILSEN   (mnilsen@archinsurance.com)
    ARCH INSURANCE COMPANY
    ONE LIBERTY PLAZA, 53RD FLOOR
    NEW YORK NY 10006

* Our office will only serve the initial process (Summons and Complaint) or Subpoena and is not responsible for transmittal of any
subsequent filings, pleadings or documents unless otherwise ordered by the Court pursuant to Florida Rules of Civil Procedure, Rule #1.080.

Alex Sink
Alex Sink
Chief Financial Officer

cc to: Plaintiff's Representative for filing in appropriate court:

DAVID J. PETTINATO, ESQUIRE
SUITE 950                                                                LMK
TAMPA FL 33602

IN THE CIRCUIT COURT OF THE ELEVENTH JUDICIAL CIRCUIT
IN AND FOR DADE COUNTY, FLORIDA
CIVIL DIVISION

ANTHONY GREENWOOD, d/b/a
McDONALDS,

      Plaintiff,

vs.

      Case No. 09 - 65565 CA 04

ARCH SPECIALTY INSURANCE
COMPANY,

      Defendant.

_____/

## SUMMONS

THE STATE OF FLORIDA

GREETINGS:

      YOU ARE HEREBY COMMANDED to serve this summons and a copy of the Complaint, First Interrogatories and First Request for Production in the above-styled cause upon the Defendant:

      **ARCH SPECIALTY INSURANCE COMPANY**
      c/o Insurance Commissioner, Process Section
      Post Office Box 6200
      Tallahassee, FL 32314

      The Defendant is hereby required to serve written defenses to said complaint on Plaintiff's attorney, whose name and address is:

      David J. Pettinato, Esquire
      Merlin Law Group, P.A.
      777 S. Harbour Island Boulevard
      Suite 950
      Tampa, Florida 33602

within 20 days after service of this summons upon said defendant, exclusive of the day of service, and to file the original of said written defenses with the Clerk of said Court either before service on plaintiff's attorney or immediately thereafter. If a defendant fails to do so, a default will be entered against that defendant for the relief demanded in the complaint.

WITNESS my hand and seal of said court on_____ SEP - 3 2009 _____, 2009.

Clerk of Circuit Court

**TARON BETHEL**

By_____
Deputy Clerk

(Court Seal)

*In accordance with the Americans with Disabilities
Act, Persons Needing a Special Accommodation to
Participate in This Proceeding Should Contact
A.D.A.
Coordination Not Later Than 7 Days Prior to the
Proceeding at 272-7040 or Via Florida Relay Service
for the Hearing Impaired at 1-800-955-8771 (T.D.D.)

2

IN THE CIRCUIT COURT OF THE ELEVENTH JUDICIAL CIRCUIT
IN AND FOR DADE COUNTY, FLORIDA
CIVIL DIVISION

ANTHONY GREENWOOD, d/b/a
McDONALDS,

      Plaintiff,                    Case No.

vs.

ARCH SPECIALTY INSURANCE
COMPANY,

      Defendant.
_____/

## COMPLAINT AND DEMAND FOR JURY TRIAL

COME NOW the Plaintiff, ANTHONY GREENWOOD, d/b/a McDONALDS ("MR. GREENWOOD"), by and through his undersigned counsel, and hereby files this his Complaint and Demand for Jury Trial against the Defendant, ARCH SPECIALTY INSURANCE CORPORATION ("ARCH SPECIALTY"), and as grounds therefore, states as follows:

## GENERAL ALLEGATIONS

1.      The amount in controversy in this action exceeds the sum of Fifteen thousand and 00/100 ($15,000.00) Dollars, exclusive of pre-judgment interest, court costs and attorney's fees.

2.      At all times relevant hereto, MR. GREENWOOD was and is a resident of Miami, Dade County, Florida.

3.      At all times relevant hereto, MR. GREENWOOD owned and operated a McDonalds' restaurant franchise located at 12198 S.W. 117th Avenue, Miami, Florida that sustained catastrophic building and business personal property damages as a

result of an accidental fortuitous fire on May 12, 2005.

    4.    Upon information and belief, at all times relevant hereto, ARCH SPECIALTY was and is a Foreign for Profit Corporation doing business in the State of Florida.

    5.    Upon information and belief, ARCH SPECIALTY is a properly licensed and qualified surplus lines insurance carrier by the State of Florida to engage in the business of insurance with Florida citizens.

    6.    In consideration of the premium paid to it by MR. GREENWOOD, ARCH SPECIALTY issued to MR. GREENWOOD in Miami, Dade County, Florida, a Business Insurance policy, Policy No. 12PRP349400 ("The Policy"), which was in full force and effect at the time the damage occurred as a result of an accidental fire to his insured property located at 12198 S.W. 117th Avenue, Miami, Dade County, Florida on or about May 12, 2005. A certified copy of The Policy is herein requested, and the only copy of The Policy in MR. GREENWOOD'S possession is attached hereto as Exhibit "A."

    7.    Fire is a covered peril under The Policy.

    8.    Damages caused by an accidental fire, and ensuing damages as a direct result thereof, are covered damages under The Policy.

    9.    MR. GREENWOOD has provided ARCH SPECIALTY with all requested documents and information needed for ARCH SPECIALTY to tender insurance benefits.

    10.    MR. GREENWOOD timely submitted his insurance claim to his insurance carrier, ARCH SPECIALTY.

    11.    ARCH SPECIALTY acknowledged that MR. GREENWOOD sustained covered damages as a result of an accidental fire.

2

12.    MR. GREENWOOD has provided ARCH SPECIALTY with all requested documents and information within his possession or custody needed for ARCH SPECIALTY to tender owed insurance benefits.

13.    MR. GREENWOOD has never prohibited ARCH SPECIALTY from inspecting the insured property; and ARCH SPECIALTY inspected the insured property multiple times.

14.    MR. GREENWOOD submitted properly executed Sworn Statements in Proof of Loss ("POL"), but ARCH SPECIALTY wrongfully rejected his submitted POL and/or submitted damage claim.  (See attached Exhibit "B").

15.    The "Settlement of Claims" provision of The Policy states in pertinent part as follows:

> The amount of loss for which the Company may be liable will be paid within 30 days after:
>
> A.    proof of loss as described in the Policy is received by the Company; and
> B.    when a resolution of the amount of loss is made either by:
>
>> 1)    written agreement between the Insured and the Company; and
>> 2)    the filing with the Company of an award as provided in the APPRAISAL clause of this section.

(Refer to Exhibit "A" of Plaintiffs' Complaint, Form No. 00 ML0207 00 11 03, page 18 of 51).

16.    The "Loss Payable Provisions" Endorsement of The Policy states in pertinent part as follows:

3

**LOSS PAYABLE**

For Covered Property in which both you and a Loss Payee shown in the Schedule or in the Declarations have an insurable interest, we will:

a)    Adjust losses with you; and

• • •

(Refer to Exhibit "A" of Plaintiffs' Complaint, Form No. 00 ML0207 00 11 03, page 49 of 51).

17.    The "Appraisal" provision of The Policy states in pertinent part as follows:

**APPRAISAL**

If the Insured and the Company fail to agree on the amount of loss, each will, on written demand of either, select a competent and disinterested appraiser after:

1)    the Insured has fully complied with all provisions of this Policy, including REQUIREMENTS IN CASE OF LOSS; and

2)    the Company has received a signed and sworn proof of loss from the Insured.

Each will notify the other of the appraiser selected within 20 days of such demand.

• • •

(Refer to Exhibit "A" of Plaintiffs' Complaint, Form No. 00 ML0207 00 11 03, page 17 of 51).

<u>COUNT I</u>
<u>BREACH OF CONTRACT</u>

18.    MR. GREENWOOD realleges paragraph No.'s.1 - 17, as if fully set forth herein.

19.    This is an action for damages for a breach of an insurance contract

4

against ARCH SPECIALTY of an insurance policy that was in effect at the time of the loss caused by a fire.

20.    On or about May 12, 2005, MR. GREENWOOD'S insured property was damaged by an accidental and/or fortuitous fire and MR. GREENWOOD timely reported the damage to ARCH SPECIALTY.

21.    MR. GREENWOOD suffered a substantial loss regarding his insured property and continues to suffer the loss.

22.    MR. GREENWOOD, as a result of an accidental and/or fortuitous fire to his insured property, has suffered damage to his insured property.

23.    MR. GREENWOOD has repeatedly requested that ARCH SPECIALTY pay his damages; ARCH SPECIALTY has failed and/or refused, and continues to refuse to pay the full damages despite knowing it is required to do so.

24.    ARCH SPECIALTY completed its own POL and demanded that MR. GREENWOOD signed its own POL'S even though the listed amount of insurance benefits was less than the insured's actual damages. (See attached composite Exhibit "C"). A blank POL should have been provided by ARCH SPECIALTY to MR. GREENWOOD, instead of a POL already filled out, with a dollar amount for the undisputed owed insurance benefits, by ARCH SPECIALTY. ARCH SPECIALTY, therefore, refused to tender undisputed owed insurance benefits to MR. GREENWOOD until he signed a ARCH SPECIALTY POL with an incorrect claim amount. (See attached Exhibit "D"). ARCH SPECIALTY has, therefore, breached The Policy.

25.    On or about March 24, 2009, MR. GREENWOOD demanded appraisal multiple times under The Policy since the Parties were in dispute as to the amount of

5

loss. ARCH SPECIALTY wrongfully rejected and/or denied MR. GREENWOOD'S demand for appraisal. (See attached composite Exhibit "E"). ARCH SPECIALTY has, therefore, breached The Policy.

26. MR. GREENWOOD has done and performed all those matters and things properly required of him under the insurance policy, or alternatively, has been excused from performance of the acts, representations, omissions, and/or conduct of ARCH SPECIALTY.

27. Notwithstanding the foregoing, ARCH SPECIALTY has failed and refused to provide full coverage under The Policy to the damages to MR. GREENWOOD'S insured property and ARCH SPECIALTY has failed to promptly pay all the amounts due and has thereby breached its contract of insurance.

28. Upon information and belief, MR. GREENWOOD requested ARCH SPECIALTY assist him in "Adjusting the Loss" with him, by providing MR. GREENWOOD with all documents and evaluations of ARCH SPECIALTY'S damages estimates, damage expert's reports and/or opinions, scope(s) of the extent and nature of the damages both covered and uncovered, and reasons why ARCH SPECIALTY asserted that any claimed damaged were not covered, but ARCH SPECIALTY failed to produce all documents related to the extent and scope of the claimed damages. This was a breach of The Policy.

A. As a direct result thereof, MR. GREENWOOD was required to borrow money and pay interest on it to rebuild his restaurant;

B. ARCH SPECIALTY refused to acknowledge MR. GREENWOODS experts, the applicable Florida Building Code, code requirements and what MR.

6

GREENWOOD was required to actually pay to rebuild his restaurant and put it back into a pre loss condition.

29.    As a direct result of ARCH SPECIALTY'S breach of its insurance contract, MR. GREENWOOD has lost benefits of his insured property, and continues to suffer the loss.

30.    As a direct result of ARCH SPECIALTY'S breach of its insurance contract, MR. GREENWOOD was required to become obligated for attorney fees and costs in connection with the prosecution of this action, and Florida Statute §627.428 provides for the payment of attorney's fees in the event of such need.

WHEREFORE, the Plaintiff, ANTHONY GREENWOOD, d/b/a McDONALDS, prays this Court enter an award of compensatory damages, consequential damages, pre-judgment interest, costs of this action, attorney fees; and such other and further relief as this Court may deem just and proper.

### COUNT II
### DECLARATORY JUDGMENT

31.    MR. GREENWOOD reallege Paragraph No.'s 1-17, and 20-29, as if fully set forth herein.

32.    This is an action for Declaratory Judgment filed pursuant to Chapter 86 of the Florida Statutes.

33.    This action for declaratory judgment has been filed for the purpose of determining an actual controversy between MR. GREENWOOD and ARCH SPECIALTY.

34.    As a result of the facts set forth above, a dispute has arisen which has left

7

the Parties hereto insecure and uncertain with respect to their rights, status of other equitable or legal responsibilities, including but not limited to:

      A.    Did MR. GREENWOOD have a right to be able to demand appraisal under The Policy, and did ARCH SPECIALTY have a right to refuse the insured's appraisal demand?;

      B.    Did ARCH SPECIALTY wrongfully refuse to tender insurance benefits to MR. GREENWOOD?;

      C.    Did MR. GREENWOOD comply with all terms and conditions of The Policy so as to have a right to be able to demand appraisal?;

      D.    Did MR. GREENWOOD comply with all terms and conditions of The Policy so as to receive owed insurance benefits?;

      E.    that ARCH SPECIALTY knowingly, intentionally and/or voluntarily waived and/or relinquished any right it may have had to deny coverage for MR. GREENWOOD'S insurance claim as a result of any alleged failure to comply with The Policy's terms and conditions, including for example, but not limited to the following terms and conditions: failure to appear for EUO, failure to produce records and documents, failure to permit inspection, failure to mitigate, failure to cooperate, untimely notice, failure to comply with conditions before suit, etc.?;

      F.    that ARCH SPECIALTY may not withhold undisputed insurance benefits to MR. GREENWOOD until MR. GREENWOOD executes a POL completed by ARCH SPECIALTY?;

8

G.    Whether ARCH APECIALTY had a contractual right to refuse to proceed with appraisal and/or designate its named appraiser after MR. GREENWOOD demanded appraisal pursuant to The Policy?;

H.    Whether ARCH SPECIALTY had a contractual right to place additional terms and conditions upon the insured prior to tendering payment and/or agreeing to proceed with appraisal?;

I.    Whether ARCH SPECIALTY had the contractual right to reject MR. GREENWOOD'S submission of its executed Sworn Statement in Proof of Loss?; and

J.    Did ARCH SPECIALTY wrongfully refuse to timely tender insurance benefits to MR. GREENWOOD?;

35.    There exists a bonafide, actual, present, and practicable need for the Court to decide, as a matter of law, the above issues.

36.    There exists a bonafide, actual, present, and practicable need for the declaration of coverage, and compliance with The Policy's terms and conditions since ARCH SPECIALTY has failed and/or refused to timely tender insurance benefits to MR. GREENWOOD as the result of the issues outlined paragraph 34 (A) through (J) above.

37.  · There exists a present, ascertained, and ascertainable state of facts concerning the rights and obligations of both MR. GREENWOOD and ARCH SPECIALTY.

38.    The rights and obligations of both MR. GREENWOOD and ARCH SPECIALTY under The Policy are dependent upon the facts and law applicable to the facts effecting coverage under The Policy.

39.    MR. GREENWOOD has an actual, present, adverse, and antagonistic

9

interest in the subject matter described herein.

**WHEREFORE**, the Plaintiff, ANTHONY GREENWOOD, d/b/a McDONALDS, respectfully seek a declaratory judgment as to whether:

Refer to Paragraph 34(A) through (J) above.

Further, Plaintiff seeks a declaratory judgment that the insurance contract, Policy No. 12PRP3479400, between Plaintiff and Defendant is a valid and enforceable contract, that pursuant to the terms and conditions of the insurance contract, Plaintiff holds a valid and enforceable right to property insurance coverage for damages from the accidental fire, and costs of this action; attorneys fees and such other and further relief as this Court may deem just and proper.

Further, Plaintiff requests a trial by jury on all issues so triable.

Dated: August 20, 2009.

DAVID J. PETTINATO, ESQUIRE
Florida Bar No. 062324
Merlin Law Group
777 S. Harbour Island Boulevard
Suite 950
Tampa, FL  33602
813-229-1000
813-229-3692 fax
Email:  DPettinato@merlinlawgroup.com
Attorney for Plaintiff

10

# EXHIBIT "A"

**ACORD.**  **CERTIFICATE OF LIABILITY INSURANCE**

DATE (MM/DD/YYYY)
10/21/05

| PRODUCER | THIS CERTIFICATE IS ISSUED AS A MATTER OF INFORMATION ONLY AND CONFERS NO RIGHTS UPON THE CERTIFICATE HOLDER. THIS CERTIFICATE DOES NOT AMEND, EXTEND OR ALTER THE COVERAGE AFFORDED BY THE POLICIES BELOW. |
|---|---|
| RMS Insurance Brokerage,LLC 1415 Kellum Place Garden City NY 11530-1695 Phone:516-742-8585  Fax:516-742-5678 | **INSURERS AFFORDING COVERAGE**    NAIC # |

| INSURED | INSURER A: Arch Specialty Insurance Co. |
|---|---|
| Anthony Greenwood 10750 SW 67th Ave Miami, FL 33156 | INSURER B: RSUI Indemnity Company |
| | INSURER C: Arch Specialty Insurance Co. |
| | INSURER D: |
| | INSURER E: |

**COVERAGES**

THE POLICIES OF INSURANCE LISTED BELOW HAVE BEEN ISSUED TO THE INSURED NAMED ABOVE FOR THE POLICY PERIOD INDICATED. NOTWITHSTANDING ANY REQUIREMENT, TERM OR CONDITION OF ANY CONTRACT OR OTHER DOCUMENT WITH RESPECT TO WHICH THIS CERTIFICATE MAY BE ISSUED OR MAY PERTAIN, THE INSURANCE AFFORDED BY THE POLICIES DESCRIBED HEREIN IS SUBJECT TO ALL THE TERMS, EXCLUSIONS AND CONDITIONS OF SUCH POLICIES. AGGREGATE LIMITS SHOWN MAY HAVE BEEN REDUCED BY PAID CLAIMS.

| INSR LTR | ADD'L INSRD | TYPE OF INSURANCE | POLICY NUMBER | POLICY EFFECTIVE DATE (MM/DD/YY) | POLICY EXPIRATION DATE (MM/DD/YY) | LIMITS | |
|---|---|---|---|---|---|---|---|
| A | | **GENERAL LIABILITY** X COMMERCIAL GENERAL LIABILITY CLAIMS MADE X OCCUR X EMPLOYEE BENEFITS | TBD | 10/01/04 | 10/01/05 | EACH OCCURRENCE | $ 1,000,000 |
| | | | | | | DAMAGE TO RENTED PREMISES (Ea occurrence) | $ 1,000,000 |
| | | | | | | MED EXP (Any one person) | $ 0 |
| | | | | | | PERSONAL & ADV INJURY | $ 1,000,000 |
| | | | | | | GENERAL AGGREGATE | $ 2,000,000 |
| | | GEN'L AGGREGATE LIMIT APPLIES PER: POLICY PRO-JECT LOC | | | | PRODUCTS - COMP/OP AGG | $ 1,000,000 |
| A | | **AUTOMOBILE LIABILITY** ANY AUTO ALL OWNED AUTOS SCHEDULED AUTOS X HIRED AUTOS X NON-OWNED AUTOS | TBD | 10/01/04 | 10/01/05 | COMBINED SINGLE LIMIT (Ea accident) | $ 1,000,000 |
| | | | | | | BODILY INJURY (Per person) | $ |
| | | | | | | BODILY INJURY (Per accident) | $ |
| | | | | | | PROPERTY DAMAGE (Per accident) | $ |
| | | **GARAGE LIABILITY** ANY AUTO | | | | AUTO ONLY - EA ACCIDENT | $ |
| | | | | | | OTHER THAN EA ACC AUTO ONLY: AGG | $ |
| B | | **EXCESS/UMBRELLA LIABILITY** X OCCUR CLAIMS MADE DEDUCTIBLE RETENTION $ | TBD | 10/01/04 | 10/01/05 | EACH OCCURRENCE | $ 25,000,000 |
| | | | | | | AGGREGATE | $ 25,000,000 |
| | | | | | | | $ |
| | | | | | | | $ |
| | | | | | | | $ |
| | | **WORKERS COMPENSATION AND EMPLOYERS' LIABILITY** ANY PROPRIETOR/PARTNER/EXECUTIVE OFFICER/MEMBER EXCLUDED? If yes, describe under SPECIAL PROVISIONS below | | | | WC STATU-TORY LIMITS OTH-ER | |
| | | | | | | E.L. EACH ACCIDENT | $ |
| | | | | | | E.L. DISEASE - EA EMPLOYEE | $ |
| | | | | | | E.L. DISEASE - POLICY LIMIT | $ |
| C | | **OTHER** PROPERTY Special Form | TBD | 10/01/04 | 10/01/05 | Bldg & Contents | Actual loss sustained |

DESCRIPTION OF OPERATIONS / LOCATIONS / VEHICLES / EXCLUSIONS ADDED BY ENDORSEMENT / SPECIAL PROVISIONS

| CERTIFICATE HOLDER | CANCELLATION |
|---|---|
| McDonalds Corporate Office McDonalds Corporation McDonaldsPlaza Oakbrook, IL 60521 | SHOULD ANY OF THE ABOVE DESCRIBED POLICIES BE CANCELLED BEFORE THE EXPIRATION DATE THEREOF, THE ISSUING INSURER WILL ENDEAVOR TO MAIL 30 DAYS WRITTEN NOTICE TO THE CERTIFICATE HOLDER NAMED TO THE LEFT, BUT FAILURE TO DO SO SHALL IMPOSE NO OBLIGATION OR LIABILITY OF ANY KIND UPON THE INSURER, ITS AGENTS OR REPRESENTATIVES. AUTHORIZED REPRESENTATIVE |

**ACORD 25 (2001/08)**    © ACORD CORPORATION 1988





## Arch
### Insurance Group

## ARCH SPECIALTY INSURANCE COMPANY

A Wisconsin Corporation

Home Office Address:
300 First Stamford Place, 5th Floor
Stamford, CT  06902

Administrative Address:
One Liberty Plaza, 53rd Floor
New York, NY  10006
Tel: (800)-817-3252

## COMMERCIAL PROPERTY DECLARATIONS

**Policy Number:**   12 PRP 34794 00

**Named Insured:**   McDonalds franchise operators as documented via certificate(s) of insurance

**Policy Period:**   From:  October 1, 2004    To:  October 1, 2005
at 12:01 A.M., Standard Time at your mailing address shown above.

**Policy Limit:**   $50,000,000 per occurrence.  Claims paid under this Policy will not reduce its limit of liability, except claims paid will reduce any Aggregate Limit of Liability.

**Premium:** TBD

**Deductibles and Sublimits:** As per attached policy

**Terms and Conditions:** As per attached policy

**LOCATIONS COVERED:**  As per schedule on file with Company

**FORMS AND ENDORSEMENTS Applying to this Coverage Part and Made Part of this Policy at time of issue. See Schedule of Forms and Endorsements attached.**

**Surplus Line Broker:**   RMS Insurance Brokerage, LLC

**Mailing Address:**   1415 Kellum Place, Suite 101
Garden City, NY 11530

**Surplus Lines License:**  EX-967411

**Surplus Lines State Taxes were filed: New York**

Arch Specialty Insurance Company is not licensed in the state of New York and is not subject to its supervision.

00 ML0207 00 11 03

Page 1 of 51



**Arch**
Insurance Group

Signature Page

YOUR COMPLETE POLICY CONSISTS OF THE POLICY JACKET WITH THE
COVERAGE FORMS, DECLARATIONS, AND ENDORSEMENTS, IF ANY.

IN WITNESS WHEREOF, Arch Specialty Insurance Company has caused this policy to be
executed and attested, and, if required by state law, this policy shall not be valid unless
countersigned by a duly authorized representative of the company.

Ralph E. Jones III

President

Martin J. Nilsen

Secretary

00 ML0207 00 11 03

# COMMERCIAL PROPERTY DAMAGE POLICY

### DECLARATIONS - SECTION A

1. NAMED INSURED AND MAILING ADDRESS

In consideration of this policy's provisions, conditions, stipulations, exclusions and limits of liability, and of premium charged, Arch Specialty Insurance Company, hereafter referred to as the Company, does insure:

McDonalds franchise operators as documented via certificate(s) of insurance

2. POLICY DATES

FROM:   October 1, 2004
TO:     October 1, 2005
TERM:   Annual

The term of this policy begins and ends at 12:01 a.m., Standard Time, on the dates specified above, at the location(s) of property involved as provided in this policy.

3. INSURING AGREEMENT

This policy covers property, as described in this policy, against all risks of physical loss or damage, except as hereinafter excluded, while located as described in this policy.

This policy is made and accepted subject to the provisions and conditions contained herein, together with such other provisions and agreements as may be endorsed or otherwise added to this policy.

Assignment of this policy will not be valid except with the written consent of the Company.

4. TERRITORY

This Policy covers Insured Locations in the United States of America.

5. INSURED LOCATION

A. The coverages under this Policy apply to an Insured Location unless otherwise provided.

Insured Location is a location:

1) scheduled on this policy, or
2) covered as a Miscellaneous Unnamed Location; or
3) covered under the terms and conditions of the Automatic Coverage or Errors and Omissions provisions.

B. References and Application. The following term(s) wherever used in this Policy means:

1) Location:

a) as specified in the schedule of locations, except for Miscellaneous Unnamed Locations; or

b) if not so specified or if a Miscellaneous Unnamed Location, a building, yard, dock, wharf, pier or bulkhead (or any group of the foregoing) bounded on all sides by public streets, clear land space or

00 ML0207 00 11 03

**Page 3 of 51**

open waterways, each not less than fifty feet wide. Any bridge or tunnel crossing such street, space or waterway will render such separation inoperative for the purpose of this References and Application.

6. CURRENCY

All amounts in this Policy are in United States of America currency. Losses will be adjusted and paid as provided in the CURRENCY FOR LOSS PAYMENT clause of the ADJUSTMENT AND SETTLEMENT section.

Premium for this Policy is in United States of America currency.

7. LIMITS OF LIABILITY

The Company's maximum limit of liability in a single occurrence regardless of the number of locations or coverages involved, will not exceed the Policy limit of liability of $ 50,000,000. When a limit of liability for a Location or other specified property is shown, such limit will be the maximum amount payable for any loss or damage arising from physical loss or damage at such Location or involving such other specified property.

If a lesser limit of liability is stated in this Policy, the lesser limit will apply. Limits of liability stated below are part of and not in addition to the Policy limit of liability.
Limits of liability stated below apply in the aggregate per occurrence for all Locations and coverages involved.

When a limit of liability is shown as applying in the Aggregate During Any Policy Year, the Company's maximum limit of liability will not exceed such limit during any policy year regardless of the number of locations, coverages or occurrences involved.

Limits of Liability:

Earth Movement – annual aggregate limit of $1,500,000 per location
Earth Movement – annual aggregate limit of $50,000,000 for all losses in one policy year
Flood – annual aggregate limit of $1,500,000 per location
Flood – annual aggregate limit of $50,000,000 for all losses in one policy year
Crime –
Gift Certificates                    $ 50,000 per occurrence
    Employee Dishonesty              $ 25,000 per occurrence
Loss of Money and Securities $ 25,000 per occurrence
    Robbery, Burglary               Included in above limit (Money and Securities)
Money and Counterfeit Currency      $ 25,000 per occurrence
    Depositors Forgery              $ 25,000 per occurrence
Brands and Labels - $50,000 per occurrence
Demolition and Increased Cost of Construction - $500,000 per occurrence
Contingent Time Element Loss - $50,000 per occurrence
Transit - $10,000 per occurrence
Food Spoilage - $25,000 per occurrence
Valuable Papers and Records - $10,000 per occurrence
Volcanic Ash clean up - $10,000 per location
Fire Department Service Charge - $25,000 per occurrence

Time Limits:

In addition to the time limits shown elsewhere in this Policy, the following apply:

00 ML0207 00 11 03                                          **Page 4 of 51**

Service Interruption Time Element – 12 hour waiting period. No loss under this coverage shall be payable unless the service interruption exceeds 12 hours, and then the policy will only respond to loss incurred after the 12 hour waiting period has elapsed.

8. PREMIUM

This Policy is issued in consideration of an initial premium.

9. DEDUCTIBLES

In each case of loss covered by this Policy, the Company will be liable only if the Insured sustains a loss in a single occurrence greater than the applicable deductible specified below, and only for its share of that greater amount.
Unless otherwise stated below:

A. When more than one location is involved, the deductible will apply against the total loss covered by this Policy in any one occurrence.

B. When two or more deductibles apply to a single occurrence, the total to be deducted will not exceed the largest deductible applicable, unless otherwise provided.

Policy Deductible(s)

A. General Policy Deductible:

A $2,500 deductible applies to each and every occurrence, combined property damage and time element, unless a more specific deductible applies.

B. Specific Deductibles:

    a. Plate Glass - $0 (no deductible applies to insured loss or damage to plate glass)
    b. Wind – Named Storm – 2% of total insurable values (including Time Element) at each location where loss is claimed. A minimum $25,000 deductible applies per location.
    c. Earth Movement – 5% of total insurable values (including Time Element) at each location where loss is claimed. A minimum $25,000 deductible applies per location.
    d. Flood - $25,000 per location

10. OCCURRENCE DEFINITION

The term "occurrence" wherever used in this policy, means the sum of all individual losses directly occasioned by any one disaster, accident or loss or any series of disasters, accidents or losses arising out of one event which occurs anywhere within the policy territory. The duration and extent of any one loss occurrence will be limited to all individual losses occurring during any period of 168 consecutive hours arising out of and directly occasioned by the same event except that the term "occurrence" will be further defined as follows:

1. As regards windstorm, hail, tornado, hurricane, and cyclone, including ensuing collapse and water damage, all individual losses sustained by the Insured occurring during any period of 72 consecutive hours arising out of and directly occasioned by the same event.

2. As regards riot, riot attending a strike, civil commotion, vandalism, and malicious mischief, all individual losses sustained by the Insured occurring during any period of 72 consecutive hours arising out of and directly occasioned by the same event. The maximum duration of 72 consecutive hours may be extended in respect of individual losses that occur beyond such 72 consecutive hours during the continued occupation of an insured's premises by strikers, provided such occupation commenced during the aforesaid period.

3. As regards earth movement, seaquake, tidal wave, volcanic eruption, including losses from all other perils covered hereunder following as a result of aforesaid perils, only those individual losses covered hereunder, which commence during the period of 168 consecutive hours, may be included in the Insured's "loss occurrence".

For all those loss occurrences other than 1. and 2. above, the Insured may choose the date and time when any such period of consecutive hours commences provided that it is not earlier than the date and time of the occurrence of the first recorded individual loss sustained by the Insured arising out of that disaster, accident or loss and provided that only one such period of 168 consecutive hours shall apply with respect to one event.

As respects those loss occurrences referred to in paragraph 1. and 2. above, if the disaster, accident or loss occasioned by the event is of greater duration than 72 consecutive hours, then the Insured may divide that disaster, accident or loss into two or more loss occurrences provided no two periods overlap and no loss occurrence is included in more than one such period and provided that no period commences earlier than the date and time of the occurrence of the first recorded individual loss sustained by the Insured arising out of that disaster, accident or loss.

No individual losses occasioned by an event that would be covered by the 72 hours clauses may be included in any "loss occurrence" claimed under the 168 hour provision.

This clause does not alter any policy limit or policy sublimit.

## PROPERTY DAMAGE - SECTION B

1. **PROPERTY INSURED**

   This Policy insures the following property, to the extent of the Insured's interest in such property, unless otherwise excluded elsewhere in this Policy. The property must be located at an Insured Location or within 1,000 feet of it.

   A. Real Property, including new buildings and additions under construction at an Insured Location, in which the Insured has an insurable interest.

   C. Personal Property:

   1) owned by the Insured, including the Insured's interest as a tenant in improvements and betterments;

   2) of others in the Insured's custody to the extent the Insured is under obligation to keep insured for physical loss or damage insured by this Policy;

   3) of others in the Insured's custody to the extent of the Insured's legal liability for insured physical loss or damage to Personal Property. The Company will defend that portion of any suit against the Insured that alleges such liability; and seeks damages for such insured physical loss or damage. The Company

may, without prejudice, investigate, negotiate and settle any claim or suit as the Company deems expedient.

This Policy insures the interest of contractors and subcontractors in insured property during construction at an Insured Location or within 1,000 feet of it. Coverage is provided to the extent of the Insured's legal liability for insured physical loss or damage to such property. Such interest of contractors and subcontractors is limited to the property for which they have been hired to perform work. Such interest will not extend to any business interruption or other time element coverage, if endorsed to this Policy.

2.  PROPERTY EXCLUDED

This Policy excludes:

A.  accounts, bills, currency, deeds, evidences of debt or title, money, notes, securities, furs, jewelry, or precious stones;

B.  precious metals, unless part of a manufactured product or held for use in manufacture;

C.  fine arts;

D.  land, water or any other substance in or on land; except this exclusion does not apply to:

1)  land improvements consisting of landscape gardening, roadways and pavements, but not including any fill or land beneath such property;

2)  water that is contained within any enclosed tank, piping system or any other processing equipment.

E.  animals; standing timber; or growing crops;

F.  watercraft or aircraft;

G.  vehicles licensed for highway use;

H.  underground mines or mine shafts or any property within such mine or shaft;

I.  dams and dikes;

J.  property in transit;

K.  property sold by the Insured under: conditional sale; trust agreement; installment plan; or other deferred payment plan after delivery to customers.

3.  ADDITIONAL COVERAGES

This Policy includes the following Additional Coverages for physical loss or damage insured by this Policy.

These Additional Coverages:

1)  are subject to the applicable limit of liability;
2)  will not increase the Policy limit of liability; and
3)  are subject to the Policy provisions, including applicable exclusions and deductibles,

all as shown in this section and elsewhere in this Policy.

A.  AUTOMATIC COVERAGE

This Policy covers insured property at any Location rented, leased or purchased by the Insured after the inception date of this Policy. This coverage applies from the date of rental, lease or purchase. This coverage is subject to a limit of liability contained in the DECLARATIONS section of this policy. If no limit is specified for this coverage, then no coverage is provided under this clause.

This Additional Coverage does not apply to property insured in whole or in part by any other insurance policy.

This coverage will apply until whichever of the following occurs first:

1) The Location is bound by the Company.
2) Agreement is reached that the Location will not be insured under this Policy.
3) The Time Limit shown in the LIMITS OF LIABILITY clause in the DECLARATIONS section has been reached. The Time Limit begins on the date of rental, lease or purchase.

B. BRANDS AND LABELS

If branded or labeled property insured by this Policy is physically damaged the Company may elect to take all or any part of that property. In such case the Insured may, at its own expense:

1) stamp "salvage" on the property or its containers; or
2) remove or obliterate the brands or labels,

if doing so will not damage the property. In either event, the Insured must relabel at its own expense, such property or its containers. The relabeling must be in compliance with any applicable law.

C. CONSEQUENTIAL REDUCTION *IN* VALUE

This Policy covers the reduction in value of insured merchandise that is a part of pairs, sets, or components. Such reduction in value must directly result from physical loss or damage insured by this Policy to other insured parts of pairs, sets or components of such merchandise. If settlement is based on a constructive total loss, the Insured will surrender the undamaged parts of such merchandise to the Company.

D. DEBRIS REMOVAL

This Policy covers the reasonable and necessary costs incurred to remove debris from an Insured Location. Such debris must be as a direct result of physical loss or damage insured by this Policy.
This Additional Coverage does not cover the costs of removal of:

1) contaminated uninsured property; or
2) the contaminant in or on any excluded or uninsured property,

whether or not the contamination results from insured physical loss or damage.

Contamination includes, but is not limited to, the presence of pollution or any hazardous material(s).

E. DEMOLITION AND INCREASED COST OF CONSTRUCTION

1) This Policy covers the reasonable and necessary costs incurred, described in item 3 below, to satisfy the minimum requirements of the enforcement of any law or ordinance regulating the demolition, construction, repair, replacement or use of buildings or structures at an Insured Location, provided:

   a) such law or ordinance is in force on the date of insured physical loss or damage; and
   b) its enforcement is a direct result of such insured physical loss or damage.

00 ML0207 00 11 03                                                       Page 8 of 51

2) This Additional Coverage does not cover loss due to any law or ordinance with which the Insured was required to comply had the loss not occurred.

3) This Additional Coverage, as respects the property insured in item 1 above, covers:

   a) the cost to repair or rebuild the physically damaged portion of such property with materials and in a manner to satisfy such law or ordinance; and
   b) the cost:
      (i)  to demolish the physically undamaged portion of such property insured; and
      (ii) to rebuild it with materials and in a manner to satisfy such law or ordinance,

   to the extent that such costs result when the demolition of the physically damaged insured property is required to satisfy such law or ordinance.

4) This Additional Coverage excludes any costs incurred as a direct or indirect result of enforcement of any laws or ordinances regulating any form of contamination including but not limited to the presence of pollution or any hazardous material(s).

5) The Company's maximum liability for this Additional Coverage at each Insured Location in any occurrence is subject to the following: it will not exceed the actual cost incurred in demolishing the physically undamaged portion of the property insured in item 1 above plus the lesser of:

   a) the reasonable and necessary actual cost incurred, excluding the cost of land, in rebuilding on another site; or
   b) the cost of rebuilding on the same site.

F.  ERRORS AND OMISSIONS

If physical loss or damage is not payable under this Policy solely due to an error or unintentional omission:

1) in the description of where insured property is physically located;

2) to include any Location:
   a) owned, rented or leased by the Insured on the effective date of this Policy; or
   b) purchased, rented or leased by the Insured during the term of this Policy; or

3) that results in cancellation of the property insured under this Policy;

this Policy covers such physical loss or damage, to the extent it would have provided coverage had such error or unintentional omission not been made.

The following conditions apply to this Additional Coverage:

   a) any error or unintentional omission must be reported by the Insured to the Company immediately upon discovery and the reasonable required premium paid.
   b) this coverage cannot be applied to any location which is, or could be, insured as a Miscellaneous Unnamed Location.

G.  TEMPORARY REMOVAL OF PROPERTY

1) When insured property is removed from an Insured Location for the purpose of being repaired or serviced or in order to avoid threatened physical loss or damage of the type insured by this Policy; this Policy covers such property:

   a) while at the location to which such property has been moved; and

     b) for physical loss or damage as provided at the Insured Location from which such property was removed.

  2) This Additional Coverage does not apply to property:

     a) insured, in whole or in part, elsewhere in this Policy;
     b) insured, in whole or in part, by any other insurance policy;
     c) removed for normal storage, processing or preparation for sale or delivery;
     d) while in transit, unless transit coverage is specifically endorsed to this policy, and then subject to any conditions and limitations contained therein.

## H. REMOVAL OF VOLCANIC ASH

Subject to a limit of liability as specified under the DECLARATIONS of this policy, this policy covers the removal of volcanic ash from insured premises when such ash is deposited as the result of the eruption of an active volcano.

## I. FIRE DEPARTMENT SERVICE CHARGE

When the fire department is called to save or protect insured property from a type of loss which is not excluded, we will pay for Fire Department Service Charges:

     1. Assumed by contract or agreement prior to loss or damage; or
     2. Required by local ordinance; and
     3. The cost of fire extinguishing materials expended.

All subject to the limit of liability specified under the DECLARATIONS of this policy.

## 4. EXCLUSIONS

The following exclusions apply to all coverages unless specifically altered elsewhere in this Policy:

A. This Policy excludes:

  1) indirect or remote loss or damage;

  2) interruption of business;

  3) loss of market or loss of use;

  4) loss or damage or deterioration arising from any delay;

  5) mysterious disappearance; loss or shortage disclosed on taking inventory; or any unexplained loss;

  6) loss from enforcement of any law or ordinance:

     a) regulating the construction; repair; replacement; use; or removal, including debris removal, of any property; or

     b) requiring the demolition of any property, including the cost in removing its debris;

except as provided by the DEMOLITION AND INCREASED COST OF CONSTRUCTION coverages of this section of this Policy.

7) loss resulting from the voluntary parting with title or possession of property if induced by any fraudulent act or by false pretense.

B. This Policy excludes loss or damage directly or indirectly caused by or resulting from any of the following regardless of any other cause or event, whether or not insured under this Policy, contributing concurrently or in any other sequence to the loss:

1) nuclear reaction or nuclear radiation or radioactive contamination. However, if physical damage by fire or sprinkler leakage results, then only that resulting damage is insured; but not including any loss or damage due to nuclear reaction, radiation or radioactive contamination;

2) a) hostile or warlike action in time of peace or war. This includes action in hindering, combating or defending against an actual, impending or expected attack by any:

    (i) government or sovereign power (de jure or de facto);

    (ii) military, naval or air force; or

    (iii) agent or authority of any party specified in i or ii above

b) discharge, explosion or use of any nuclear device, weapon or material employing or involving nuclear fission, fusion or radioactive force. This exclusion applies whether in time of peace or war and regardless of who commits the act.

c) insurrection; rebellion; revolution; civil war; usurped power; or action taken by governmental authority in hindering, combating or defending against such an event.

d) seizure or destruction under quarantine or custom regulation; or confiscation by order of any governmental or public authority.

e) risks of contraband; illegal transportation or trade.

f) terrorism, including loss or damage caused directly or indirectly by, contributed to by, resulting from, or arising out of or in connection with terrorism, including action in hindering, controlling, preventing, suppressing, retaliating against, responding to or defending against an actual or expected incident of terrorism.

Terrorism means activities against persons, organizations or property of any nature:
1. That involves the following or preparation for the following:

    a. Use or threat of force or violence; or

    b. Commission or threat of a dangerous act; or

    c. Commission or threat of an act that interferes with or disrupts an electronic, communication, information, or mechanical system; and

2. When one or both of the following applies:

    a. The effect is to intimidate or coerce a government, de jure or de facto of any nation or any political division thereof, or the civilian population or any segment thereof, or to disrupt any segment of the economy; or

    b. It appears that the intent is to intimidate or coerce a government, de jure or de facto of any nation or any political division thereof, or to further political, ideological, religious,

00 ML0207 00 11 03

social, economic or similar objectives or to express (or express opposition to) a philosophy or ideology.

Regardless of the amount of damage or losses, in addition to item 1. and 2. above, this Terrorism Exclusion also applies to any incident of terrorism:

1. That involves the use, release, or escape of nuclear materials, or that directly or indirectly results in nuclear reaction or radiation or radioactive contamination; or

2. That is carried out by means of the dispersal or application of pathogenic or poisonous biological or chemical materials; or

3. In which pathogenic or poisonous biological or chemical materials are released, and it appears that one purpose of the terrorism was to release such materials.

In the event of an incident of terrorism that involves nuclear reaction or radiation, or radioactive contamination, this Terrorism Exclusion supersedes any Nuclear Hazard Exclusion.

3) any dishonest act, including but not limited to theft, committed alone or in collusion with others, at any time:

    a) by an Insured or any proprietor, partner, director, trustee, officer, or employee of an Insured; or

    b) by any proprietor, partner, director, trustee, or officer of any business or entity (other than a common carrier) engaged by an Insured to do anything in connection with property insured under this Policy.

This Policy does insure acts of direct insured physical damage intentionally caused by an employee of an Insured or any individual specified in b) above if done without the knowledge of the Insured. This coverage does not apply to any act excluded in B. 2) f) of this EXCLUSIONS clause. In no event does this Policy cover loss by theft by any individual specified in a) or b) above.

4) lack of incoming electricity, fuel, water, gas, steam, refrigerant or incoming or outgoing voice, data or video service or outgoing sewerage service caused by an occurrence off the Insured Location. But, if the lack of such a service directly causes physical damage insured by this Policy at an Insured Location, then only that resulting damage is insured.

5) Earth Movement.

6) Flood.

7) the intentional unlawful use of any pathogenic or poisonous biological or chemical material.

C. This Policy excludes the following, but, if physical damage not excluded by this Policy results, then only that resulting damage is insured:

1) faulty workmanship, material, construction or design from any cause;

2) loss or damage to stock or material attributable to manufacturing or processing operations while such stock or material is being processed, manufactured, tested, or otherwise worked on;

3) deterioration; depletion; rust; corrosion or erosion; wear and tear; inherent vice or latent defect;

4) settling, cracking, shrinking, bulging, or expansion of:

    a) foundations (including any pedestal, pad, platform or other property supporting machinery);

b)  building components including, but not limited to, floors, pavements, walls, ceilings and roofs;

5)  loss or damage, whether atmospheric or not, due to changes in:

   a)  temperature (except to machinery or equipment); or

   b)  relative humidity.

6)  damage due to insect(s), animal(s) or vermin;

7)  loss or damage to the interior portion of buildings from rain, sleet or snow, whether or not driven by wind, when the installation of the roof, walls or windows of such buildings has not been completed;

8)  loss or damage, destruction, distortion, interruption, erasure, corruption or alteration of Electronic Data caused by Computer Virus, nor any resulting business interruption or other time element loss if such coverages are endorsed to this policy;

9)  loss or damage to Electronic Data caused by:

   a)  willful or malicious alteration, manipulation or destruction by an employee, including a temporary or leased employee, or

   b)  any entity retained by the insured to inspect, design, install, modify, repair or replace computer systems or components; or

   c)  operator or program errors.

D.  This Policy excludes the following, unless the direct result of other physical damage not excluded by this Policy:

   1)  shrinkage;

   2)  changes in color, flavor, texture or finish;

   3)  wet rot, dry rot, bacteria, or fungus (including mildew, mold or any mycotoxins, spores, scents or by-products produced or released by fungi) of any type, nature or description. Coverage for all wet rot, dry rot, bacteria, mildew, mold or fungus directly resulting from other physical damage not excluded by this Policy is limited to $100,000 per occurrence and annual aggregate. There is no coverage for resultant loss or damage unless such loss or damage is reported to the Company within 180 days after the initiating insured event.

E.  This policy does not cover any loss, damage, cost or expense caused by, resulting from, contributed to or made worse by actual, alleged or threatened release, discharge, introduction, escape or dispersal of contaminants or pollutants, all whether direct or indirect, proximate or remote or in whole or in part caused by, contributed to or aggravated by any physical damage insured by this policy.

Nevertheless, if a fire arises directly or indirectly from contamination or pollution, any loss or damage insured under this policy arising directly from the fire is insured, subject to the provisions of this policy.

Contaminants or pollutants means any material, whether solid, liquid, gaseous or otherwise, which, after its release, discharge, introduction, escape or dispersal, can cause or threaten

00 ML0207 00 11 03                                                         Page 13 of 51

damage to human health or human welfare or causes or threatens damage, deterioration, loss of value, marketability or loss of use to property insured hereunder.

However, this exclusion shall not apply to loss or damage directly caused by fire, lightning, aircraft impact, explosion, riot, civil commotion, vehicle impact, windstorm, hail, vandalism, malicious mischief or accidental discharge from automatic fire protective systems.

References and Application: The following term(s) wherever used in this Policy mean(s):

Earth Movement:

Any natural or man-made earth movement including, but not limited to earthquake or landslide, regardless of any other cause or event contributing concurrently or in any other sequence of loss. However, physical damage by fire, explosion, sprinkler leakage or Flood resulting from Earth Movement will not be considered to be loss by Earth Movement within the terms and conditions of this Policy. All earth movements within a continuous 72 hour period will be considered a single Earth Movement.

Flood:

Flood; surface waters; rising waters; waves; tide or tidal water; the release of water, the rising, overflowing or breaking of boundaries of natural or man-made bodies of water; or the spray therefrom; or sewer back-up resulting from any of the foregoing; regardless of any other cause or event contributing concurrently or in any other sequence of loss. However, physical damage by fire, explosion or sprinkler leakage resulting from Flood is not considered to be loss by Flood within the terms and conditions of this Policy.

Electronic Data:

Facts, concepts, code or any other information converted to a form usable for communication, interpretation, storage, retrieval or processing by computers or other electronic or electromechanical data processing or electronically controlled equipment, and includes programs, software and other coded instructions for the processing or manipulation of other data or the direction or manipulation of any equipment.

Computer Virus:

Any corrupting, harmful or otherwise disruptive instructions or code including any unauthorized instructions or code, programmatic or otherwise, that propagate through any computer or computer system(s), network(s) or groups of whatever nature. Computer Virus includes, but is not limited to, "Trojan Horses", "worms", and "time or logic bombs".

LOSS ADJUSTMENT AND SETTLEMENT - SECTION C

1.  LOSS ADJUSTMENT/PAYABLE

    Loss, if any, will be adjusted with and payable to the Named Insured, or as may be directed by the Named Insured. Additional insured interests will also be included in loss payment as their interests may appear. Such interests are limited to: additional named insured; lender; mortgagee and/or loss payee in the Certificates of Insurance on file with the Company or named below.

2.  CURRENCY FOR LOSS PAYMENT

    Losses will be adjusted and paid in United States of America currency.

3.  VALUATION

00 ML0207 00 11 03                                                    Page 14 of 51

Adjustment of the physical loss amount under this Policy will be computed as of the date of loss at the location of the loss. It will be for no more than the interest of the Insured, subject to the following:

A. On stock in process: the value of raw materials and labor expended plus the proper proportion of overhead charges.

B. On finished goods manufactured by the Insured: the regular cash selling price at the Location where the loss occurs; less all discounts and charges to which the finished goods would have been subject had no loss occurred.

C. On raw materials, supplies and other merchandise not manufactured by the Insured:

    1) if repaired or replaced, the actual expenditure incurred in repairing or replacing the damaged or destroyed property; or

    2) if not repaired or replaced, the Actual Cash Value.

D. On exposed films, records, manuscripts and drawings: the value blank plus the cost of copying information from back-up or from originals of a previous generation. These costs will not include research, engineering or any costs of restoring or recreating lost information.

E. On data, programs or software stored on electronic data processing or production equipment: the cost of transferring data, programs or software from back up or from originals of a previous generation. These costs will not include research, engineering or any costs of restoring or recreating lost information.

F. On property that is damaged by fire and such fire is the result of Terrorism and the statutory law of the Jurisdiction in which the physical loss occurs requires coverage for such direct physical damage by fire, the Actual Cash Value.

G. On all other property, the loss amount will not exceed the lesser of the following:

    1) The cost to repair;

    2) The cost to rebuild or replace on the same site with new materials of like size, kind and quality;

    3) The cost in rebuilding; repairing; or replacing, on the same or another site but not to exceed the size and operating capacity that existed on the date of loss;

    4) The selling price of real property or machinery and equipment, other than stock, offered for sale prior to the date of loss;

    5) The cost to replace electrical or mechanical equipment which cannot be repaired, including computer equipment, with equipment that is the most functionally equivalent to that damaged or destroyed;

    6) The incremental increased cost of demolition due to loss covered by this Policy, if such property was scheduled for demolition prior to the date of loss;

    7) The unamortized value of improvements and betterments, if such property is not repaired or replaced at the Insured's expense;

    8) The Actual Cash Value if such property is:

        a) useless to the Insured;

        b) not repaired, replaced or rebuilt on the same or another site within two years from the date of loss.

The Insured may elect not to repair or replace the lost or damaged insured property. However, loss settlement may be elected on the lesser of the repair or replacement cost basis if the proceeds of such loss settlement are expended on other capital expenditures. These expenditures must be related to the Insured's operations and be expended within two years from the date of loss. As a condition of collecting under this item, such expenditure must be- unplanned as of the date of loss; and be made at an Insured Location under this Policy. This item does not extend to DEMOLITION AND INCREASED COST OF CONSTRUCTION.

References and Application. The following term(s) wherever used in this Policy means:

a) Actual Cash Value:

The amount it would cost to repair or replace insured property, on the date of loss, with material of like kind and quality, with proper deduction for obsolescence and physical depreciation.

4. LOSS CONDITIONS

A. REQUIREMENTS IN CASE OF LOSS

The Insured will:

1) give immediate written notice to the Company of any loss;

2) protect the property from further loss or damage;

3) promptly separate the damaged and undamaged property; put it in the best possible order; furnish a complete inventory of the lost, destroyed, damaged and undamaged property; show in detail the quantities, costs, Actual Cash Value, replacement value, and amount of loss claimed;

4) submit a signed and sworn proof of loss to the Company within 90 days after the loss. This time may be extended in writing by the Company. The proof of loss must state the knowledge and belief of the Insured as to:

a) the time and origin of the loss;
b) the Insured's interest and that of all others in the property.;
c) the Actual Cash Value and replacement value of each item;
d) the amount of loss to each item;
e) all encumbrances;
f) all other contracts of insurance, whether valid or not, covering any of the property;
g) any changes in the title, use, occupation, location, possession or exposures of the property since the effective date of this Policy;
h) by whom and for what purpose any location insured by this Policy was occupied on the date of loss. Also, whether it then stood on leased ground.

5) include a copy of all the descriptions and schedules in all policies;

6) if required, provide verified plans and specifications of any buildings, fixtures, machinery or equipment destroyed or damaged.

7) as often as may be reasonably required;

a) exhibit to any person designated by the Company all that remains of any property;
b) submit to examination under oath by any person designated by the Company;
c) sign the written records of examinations;
d) produce for examination at the request of the Company:

(i) all books of accounts, business records, bills, invoices and other vouchers; or
(ii) certified copies if originals are lost,

at such reasonable times and places that may be designated by the Company or its representative. The Insured will permit extracts and machine copies of these items to be made.

00 ML0207 00 11 03

B. COMPANY OPTION

The Company has the option to take all or any part of damaged property at the agreed or appraised value. The Company must give notice to the Insured of its intention to do so within 30 days after receipt of proof of loss.

C. ABANDONMENT

There may be no abandonment of any property to the Company.

D. SUBROGATION

The Insured is required to cooperate in any subrogation proceedings. The Company may require from the Insured an assignment or other transfer of all rights of recovery against any party for loss. Such assignment or transfer will be to the extent of the Company's payment.

The Company will not acquire any rights of recovery that the Insured has expressly waived prior to a loss. Such waiver will not affect the Insured's rights under this Policy.

Any recovery from subrogation proceedings, less costs incurred by the Company in such proceedings, will be payable to the Insured in the proportion that the amount of:

1) any applicable deductible; and/or
2) any uninsured loss actually recovered through such proceedings,

bears to the entire provable loss amount

E. APPRAISAL

If the Insured and the Company fail to agree on the amount of loss, each will, on the written demand of either, select a competent and disinterested appraiser after:

1) the Insured has fully complied with all provisions of this Policy, including REQUIREMENTS IN CASE OF LOSS; and
2) the Company has received a signed and sworn proof of loss from the Insured.

Each will notify the other of the appraiser selected within 20 days of such demand.

The appraisers will first select a competent and disinterested umpire. The appraisers have 30 days to agree on an umpire. After that time, either the Insured or the Company may request that an umpire will be selected by a judge. The judge must be a judge of a court of record in the jurisdiction in which the appraisal is pending. The appraisers will then appraise the amount of loss. Each appraiser will state separately the Actual Cash Value and replacement cost value. Those values will be as of the date of loss and the amount of loss, for each item of physical loss or damage.

If the appraisers fail to agree, they will submit their differences to the umpire. An award agreed to in writing by any two will determine the amount of loss.

The Insured and the Company will each:

1) pay its chosen appraiser; and
2) bear equally the other expenses of the appraisal and umpire.

A demand for APPRAISAL shall not relieve the Insured of its continuing obligation to comply with the terms and conditions of this Policy, including as provided under REQUIREMENTS IN CASE OF LOSS.

00 ML0207 00 11 03                                                                     Page 17 of 51

The Company will not be held to have waived any of its rights by any act relating to appraisal.

F.  SUIT AGAINST THE COMPANY

No suit, action or proceeding for the recovery of any claim will be sustained m any court of law or equity unless:

1)  the Insured has fully complied with all the provisions of this Policy; and
2)  legal action is started within:

   a)  twelve months after inception of the loss; or
   b)  the shortest limit of time provided by the insurance laws of the jurisdiction in which the property is located.

5.  SETTLEMENT OF CLAIMS

The amount of loss for which the Company may be liable will be paid within 30 days after:

A.  proof of loss as described in this Policy is received by the Company; and
B.  when a resolution of the amount of loss is made either by:

   1)  written agreement between the Insured and the Company; or
   2)  the filing with the Company of an award as provided in the APPRAISAL clause of this section.

6.  COLLECTION FROM OTHERS

The Company will not be liable for any loss to the extent the Insured has collected for such loss from others.

7.  PARTIAL PAYMENT OF LOSS SETTLEMENT

This Company will make a partial payment on a loss when:

A.  the Insured has submitted a signed and sworn proof of loss as described in this Policy; and
B.  the loss has been ascertained to be insured loss or damage under this Policy; and
C.  the Company's representatives ascertain the loss to be in excess of the applicable Policy deductible; and
D.  there is mutual agreement on the amount of the partial payment,
all subject to this Policy's provisions.

GENERAL PROVISIONS - SECTION D

1.  ADDITIONAL INSURABLE INTERESTS/CERTIFICATES OF INSURANCE

Additional insured interests are additional named insured, lender, mortgagee and/or loss payee. These interests are automatically added to this Policy as their interest may appear when named on a Certificate of Insurance. Such interests become effective on the date shown on the Certificate.

These Certificates must be on a schedule on file with the Company. Such Certificates will not amend, extend or alter the terms, conditions, provisions and limits of this Policy.

2.  CANCELLATION/NON-RENEWAL

This Policy may be:

A.  cancelled at any time at the request of the Insured by: surrendering this Policy to the Company; or giving written notice to the Company stating when such cancellation will take effect.

00 ML0207 00 11 03                                                    **Page 18 of 51**

B. cancelled by the Company by giving the Insured not less than:

    1) 60 days' written notice of cancellation.
    2) 10 days' written notice of cancellation if the Insured fails to remit, when due, payment of premium for this Policy.

C. non-renewed by the Company by giving the Insured not less than 90 days' written notice of non-renewal.

Return of any unearned premium will be calculated on the customary short rate basis if the Insured cancels, or on a pro-rata basis if the Company cancels this Policy. Return of unearned premium will be made by the Company as soon as practicable.

3. INSPECTIONS

The Company, at all reasonable times, will be permitted, but will not have the duty, to inspect insured property.

The Company's:

A. right to make inspections;
B. making of inspections; or
C. analysis, advice or inspection report,

will not constitute an undertaking, on behalf of or for the benefit of the Insured or others, to determine or warrant that the insured property is safe or healthful. This Company will have no liability to the Insured or any other person because of any inspection or failure to inspect.

When the Company is not providing jurisdictional inspections, the Owner/Operator has the responsibility to assure that:

    1) these inspections are performed as required; and
    2) required jurisdictional Operating Certificates are current for their pressure equipment.

4. PROVISIONS APPLICABLE TO SPECIFIC JURISDICTIONS

A. If the provisions of this Policy:

    1) conflict with the laws of any jurisdictions in which this Policy applies; and
    2) if certain provisions are required by law to be stated in this Policy;

this Policy will be

    a) read so as to eliminate such conflict; or
    b) deemed to include such provisions,

for Insured Locations within such jurisdictions.

B. The Company will provide to the Insured copies of endorsements required by the laws of the provinces of Canada. The endorsements modify this Policy in the province in which they apply.

C. The Company will provide the Insured copies of endorsements required by the laws of states in the United States of America. The endorsements modify this Policy in the state in which they apply.

5. LIBERALIZATION

00 ML0207 00 11 03

If during the policy period there are statutory changes that would broaden coverage without additional premium, that broadened coverage will apply to this Policy. This change will be effective on the date of the change specified in such statute for property insured in that jurisdiction.

6   MISREPRESENTATION AND FRAUD

This entire Policy will be void if, whether before or after a loss, an Insured has:

A.  willfully concealed or misrepresented any material fact or circumstance concerning:

    1)  this insurance;
    2)  the subject of this insurance;
    3)  any insurance claim;
    4)  the interest of an Insured.

B.  made any attempt to defraud the Company.

C.  made any false swearing.

7.   LENDERS LOSS PAYEE AND MORTGAGEE INTERESTS AND OBLIGATIONS

A.  The Company will pay for loss to specified property insured under this Policy to each specified Lender Loss Payee (hereinafter referred to as Lender) as its interest may appear; and pay to each specified Mortgagee as its interest may appear, under all present or future mortgages upon such property, in order of precedence of the mortgages.

B.  The interest of the Lender or Mortgagee (as the case may be) in property insured under this Policy will not be invalidated by:

    1)  any act or neglect of the debtor, mortgagor, or owner (as the case may be) of the property;
    2)  foreclosure, notice of sale, or similar proceedings with respect to the property;
    3)  change in the title or ownership of the property;
    4)  change to a more hazardous occupancy.

    The Lender or Mortgagee will notify the Company of any known change in ownership, occupancy, or hazard. Such party within 10 days of written request by the Company, may pay the increased premium associated with such known change. If the Lender or Mortgagee fails to pay the increased premium, all coverage under this Policy will cease.

C.  If this Policy is cancelled at the request of the Insured or its agent, the coverage for the interest of the Lender or Mortgagee will terminate 10 days after the Company sends to the Lender or Mortgagee written notice of cancellation, unless:

    1)  sooner terminated by authorization, consent, approval, acceptance, or ratification of the Insured's action by the Lender or Mortgagee, or its agent;
    2)  this Policy is replaced by the Insured, with a policy providing coverage for the interest of the Lender or Mortgagee. Then, coverage under this Policy with respect to such interest will terminate as of the effective date of the replacement policy despite any other provisions of this Policy.

D.  The Company may cancel this Policy and/or the interest of the Lender or Mortgagee under this Policy. The Company will give the Lender or Mortgagee written notice 60 days prior to the effective date of cancellation, if cancellation is for any reason other than non-payment. If the debtor, mortgagor, or owner has failed to pay any premium due under this Policy, the Company may cancel this Policy for such non-payment. The Company will give the Lender or Mortgagee written notice 10 days prior to the effective date of cancellation. If the Lender or Mortgagee fails to pay the premium due by the specified cancellation date, all coverage under this Policy will cease.

E. The Company has the right to invoke this Policy's SUSPENSION clause. The suspension of insurance will apply to the interest of the Lender or Mortgagee in any machine, vessel, or part of any machine or vessel, subject to the suspension. The Company will provide the Lender or Mortgagee at the last known address a copy of the suspension notice.

F. If: the Company pays the Lender or Mortgagee for any loss and denies payment to the debtor, mortgagor or owner; the Company will, to the extent of the payment made to the Lender or Mortgagee: be subrogated to the rights of the Lender or Mortgagee under all securities held as collateral to the debt or mortgage. No subrogation will impair the right of the Lender or Mortgagee to sue or recover the full amount of its claim. At its option, the Company may pay to the Lender or Mortgagee the whole principal due on the debt or mortgage plus any accrued interest. Then, all rights and securities will be assigned and transferred from the Lender or Mortgagee to the Company; the remaining debt or mortgage will be paid to the Company.

G. If the Insured fails to render proof of loss, the Lender or Mortgagee, upon notice of the Insured's failure to do so, will render proof of loss within 60 days of notice and will be subject to the provisions of this Policy relating to APPRAISAL, SETTLEMENT OF CLAIMS, and SUIT AGAINST THE COMPANY

H. Other provisions relating to the interests and obligations of the Lender or Mortgagee may be added to this Policy by agreement in writing.

8. OTHER INSURANCE

A. If there is any other insurance that would apply in the absence of this Policy, this Policy will apply as excess coverage, providing coverage only to the extent the insured loss exceeds the limits of such other insurance, whether collectible or not.

B. In no event will this Policy apply as contributing insurance.

C. The Insured is permitted to have other insurance over any limits of liability specified in this Policy without prejudice to this Policy. The existence of such insurance will not reduce any limit of liability in this Policy. Any other insurance that would have provided primary coverage in the absence of this Policy will not be considered excess.

D. The Insured is permitted to have other insurance for all, or any part, of any deductible in this Policy. The existence of such insurance will not prejudice recovery under this Policy. If the limits of liability of such other insurance are greater than this Policy's applicable deductible: this Policy will apply only after such other insurance has been exhausted.

E. If this Policy is deemed to contribute with other insurance; the limit of liability applicable at each Location, for purposes of such contribution with other insurers, will be the latest amount described in this Policy; or, the latest Location value on file with the Company.

F. This Policy may include property in more than one jurisdiction. Separate policies underlying this Policy may be issued by the Company in compliance with jurisdictional requirements. Such underlying policies will not be considered as additional insurance. They will be only duplicate insurance.

9. POLICY MODIFICATION

This Policy contains all of the agreements between the Insured and the Company concerning this insurance. The Insured and the Company may request changes to this Policy. This Policy can be changed only by endorsements issued by the Company and made a part of this Policy.

Notice to any agent or knowledge possessed by any agent or by any other person will not:

A. create a waiver, or change any part of this Policy; or

00 ML0207 00 11 03

B.  prevent the Company from asserting any rights under the provisions of this Policy.

## 10. REDUCTION BY LOSS

Claims paid under this Policy will not reduce its limit of liability, except claims paid will reduce any Aggregate Limit of Liability.

## 11. SUSPENSION

On discovery of a dangerous condition, the Company may immediately suspend this insurance on any machine, vessel or part thereof by giving written notice to the Insured. The suspended insurance may be reinstated by the Company. Any unearned premium resulting from such suspension will be returned by the Company.

## 12. TITLES

The titles in this Policy are only for reference. The titles do not affect the provisions of this Policy.

THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.

## GROSS EARNINGS ENDORSEMENT

**LOSS INSURED**

A.   This Policy insures GROSS EARNINGS loss, as provided in the GROSS EARNINGS COVERAGE, directly resulting from physical loss or damage of the type insured by this Policy:

1)   to property described elsewhere in this Policy and not otherwise excluded by this Policy or otherwise limited in the GROSS EARNINGS COVERAGE below; and

2)   used by the Insured, or for which the Insured has contracted use; and

3)   located at an Insured Location;

during the Period of Liability described herein.

B.   This Policy insures GROSS EARNINGS loss only to the extent it cannot be reduced through:

1)   the use of any property or service owned or controlled by the Insured; or

2)   the use of any property or service obtainable from other sources; or

3)   working extra time or overtime; or

4)   the use of inventory.

all whether at an Insured Location or at any other location. The Company reserves the right to take into consideration the combined operating results of all associated, affiliated or subsidiary companies of the Insured in determining the GROSS EARNINGS loss.

C.   This Policy covers expenses reasonably and necessarily incurred by the Insured to reduce the loss otherwise payable under this endorsement. The amount of such recoverable expenses will not exceed the amount by which the loss has been reduced.

D.   In determining the amount of Actual Loss Sustained payable hereunder, the Company will give due consideration to the experience of the business before the date of physical loss or damage and the probable experience thereafter, had no loss or damage occurred.

**GROSS EARNINGS COVERAGE**

1)   Measurement of Loss:

a)   The recoverable GROSS EARNINGS loss is the Actual Loss Sustained by the Insured of the following during the PERIOD OF LIABILITY:

(i)   Gross Earnings;

(ii)   less all charges and expenses that do not necessarily continue during the interruption of production or suspension of business operations or services;

(iii)   plus all other earnings derived from the operation of the business.

00 ML0207 00 11 03                                              Page 23 of 51

b) In determining the indemnity payable as the Actual Loss Sustained, the Company will consider only those normal charges and expenses that must necessarily continue and only to the extent that they would have been otherwise earned had no interruption of production or suspension of business operations or services occurred.

c) There is recovery hereunder only to the extent that the Insured is:

(i) wholly or partially prevented from producing goods or continuing business operations or services; and

(ii) unable to make up lost production within a reasonable period of time, not limited to the period during which production is interrupted; or

(iii) unable to continue such operations or services during the PERIOD OF LIABILITY; and

(iv) able to demonstrate a loss of sales for the operations, services or production prevented.

2) References and Application: The following term means:

Gross Earnings, as used in item (a)

a) for manufacturing operations: the net sales value of production less the cost of all raw stock, materials and supplies used in such production; or

b) for mercantile or non-manufacturing operations: the total net sales less cost of merchandise sold, materials and supplies consumed in the operations or services rendered by the Insured.

Any amount recovered under property damage coverage at selling price for loss or damage to finished goods or merchandise will be considered to have been sold to the Insured's regular customers and will be credited against net sales.

## PERIOD OF LIABILITY

A. The PERIOD OF LIABILITY is as follows:

1) For building and equipment, the period:

a) starting from the time of physical loss or damage of the type insured against; and

b) ending when, with the exercise of due diligence and dispatch, the building and equipment could be:

(i) repaired or replaced; and

(ii) made ready for operations under the same or equivalent physical and operating conditions that existed prior to the damage.

c) not to be limited by the expiration of this Policy.

2) For buildings and equipment under construction:

00 ML0207 00 11 03

Page 24 of 51

a) the equivalent of the above period of time will be applied to the level of business that would have been reasonably achieved after construction and startup would have been completed had no physical damage occurred; and

b) due consideration will be given to the actual experience of the business compiled after completion of the construction and startup.

3) For stock-in-process and mercantile stock, including finished goods not manufactured by the Insured, the time required with the exercise of due diligence and dispatch:

a) to restore stock in process to the state of manufacture in which it stood at the inception of the interruption of production or suspension of business operations or services; and

b) to replace physically damaged mercantile stock.

4) For raw materials and supplies, the period of time:

a) of actual interruption of production or suspension of operations or services resulting from the inability to get suitable raw materials and supplies to replace similar ones damaged; but

b) limited to that period for which the damaged raw materials and supplies would have supplied operating needs.

5) If water:

a) used for any manufacturing purpose, including but not limited to as a raw material or for power;

b) stored behind dams or in reservoirs; and

c) on any Insured Location,

is released as the result of physical damage of the type insured against under this Policy to such dam, reservoir or connected equipment, the Company's liability for the actual interruption of production or suspension of operations or services due to inadequate water supply will not extend beyond 30 consecutive days after the damaged dam, reservoir or connected equipment has been repaired or replaced.

6) For physically damaged exposed film, records, manuscripts and drawings, the time required to copy from backups or from originals of a previous generation.

7) For physically damaged or destroyed data, programs or software stored on electronic, electro-mechanical, electro-magnetic data processing or production equipment, the time required to transfer from backups or from originals of a previous generation.

8) If an order of civil authority prohibits access to the Insured Location and provided such order is the direct result of physical damage of the type insured against under this Policy at the Insured Location or within 1,000 feet of it, the period of time:

a) starting at the time of physical damage; but

b) not to exceed 30 consecutive days.

00 ML0207 00 11 03

B    The PERIOD OF LIABILITY does not include any additional time due to the Insured's inability to resume operations or services for any reason other than from physical loss or damage insured, including but not limited to:

1)    making changes to equipment;

2)    making changes to the building or structures except as provided in the DEMOLITION AND INCREASED COST OF CONSTRUCTION provision;

3)    restaffing or retraining employees;

4)    research, engineering, or restoring or recreating lost information or data.

## RELATED REPORTED VALUES

If reported GROSS EARNINGS values include:

1)    locations used by the Insured (such as branch stores, sales outlets and other plants) but not listed on a schedule under this Policy; and

2)    a GROSS EARNINGS loss would result at such locations,

3)    from insured physical loss or damage at an Insured Location,

then this Policy provides coverage for such resulting GROSS EARNINGS loss in accordance with the coverage applicable at such Insured Location.

## ON PREMISES SERVICES COVERAGE EXTENSION

This Policy covers the Actual Loss Sustained by the Insured during the PERIOD OF LIABILITY directly resulting from physical loss or damage of the type insured to the following property located within 1,000 feet of the Insured Location:

1)    Electrical and telecommunications equipment.

2)    Electrical, telecommunications, fuel, gas, water, steam, refrigeration and sewerage transmission lines.

## TIME ELEMENT EXCLUSIONS

In addition to the EXCLUSIONS clause in the PROPERTY DAMAGE section of the policy to which this coverage is endorsed, the following exclusions apply to TIME ELEMENT loss:

Unless otherwise provided, this Policy does not insure against:

A.    Any loss during any idle period, including but not limited to when production, operation, service or delivery or receipt of goods would cease, or would not have taken place or would have been prevented due to:

1)    physical loss or damage not insured by this Policy on or off of the Insured Location;

2)    planned or rescheduled shutdown;

3)    strikes or other work stoppage;

00 ML0207 00 11 03

**Page 26 of 51**

    4)     any other reason other than physical loss or damage insured by
           this Policy.

B.     Any increase in loss due to:

    1)     suspension, cancellation or lapse of any lease, contract, license or orders;

    2)     fines or damages for breach of contract or for late or failure to complete orders;

    3)     for penalties of any nature;

    4)     any other consequential or remote loss.

C.     Any loss resulting from loss or damage to finished goods manufactured by the Insured, nor the time required for their reproduction.

D.     Any loss resulting from physical loss or damage caused by or resulting from Terrorism.

All other terms and conditions of this Policy remain unchanged.

**THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.**

**RENTAL VALUE ENDORSEMENT**

**LOSS INSURED**

A.  This Policy insures RENTAL INSURANCE loss directly resulting from physical loss or damage of a type insured by this Policy:

1)  to real property described elsewhere in this Policy and not otherwise excluded by this Policy or otherwise limited in the RENTAL INSURANCE coverage below; and

2)  used by the Insured, or for which the Insured has contracted use; and

3)  located at an Insured Location.

during the Period of Liability described herein.

B.  This Policy insures RENTAL INSURANCE loss only to the extent it cannot be reduced through:

1)  the use of any property or service owned or controlled by the Insured;

2)  the use of any property or service obtainable from other sources;

3)  working extra time or overtime; or

4)  the use of inventory,

all whether at an Insured Location or at any other location. The Company reserves the right to take into consideration the combined operating results of all associated, affiliated or subsidiary companies of the Insured in determining the RENTAL INSURANCE loss.

C.  This Policy covers expenses reasonably and necessarily incurred by the Insured to reduce the loss otherwise payable under this endorsement. The amount of such recoverable expenses will not exceed the amount by which the loss has been reduced.

D.  In determining the amount of Actual Loss Sustained payable hereunder, the Company will give due consideration to the experience of the business before the date of physical loss or damage and the probable experience thereafter, had no loss or damage occurred.

**RENTAL INSURANCE**

1)  Measurement of Loss:

The recoverable RENTAL INSURANCE loss is the Actual Loss Sustained by the Insured, excluding charges and expenses which do not necessarily continue, of the following during the PERIOD OF LIABILITY:

a)  The fair rental value of any portion of the property occupied by the Insured;

b)  The income reasonably expected from rentals of portions of such property which are unoccupied or not rented at the time of loss; and

c)  The rental income from the rented portions of such property according to bona fide leases, contracts or agreements in force at the time of loss,

00 ML0207 00 11 03

2)   As respects **RENTAL INSURANCE**, this Policy does not insure any loss of rental income during any period in which the insured property would not have been tenantable for any reason other than an insured loss.

**PERIOD OF LIABILITY**

A.   The PERIOD OF LIABILITY is as follows:

1)   For building and equipment, the period:

a)   starting from the time of physical loss or damage of the type insured against; and

b)   ending when, with the exercise of due diligence and dispatch, the building and equipment could be:

(i)   repaired or replaced; and

(ii)   made ready for operations under the same or equivalent physical and operating conditions that existed prior to the damage;

c)   not to be limited by the expiration of this Policy.

2)   For buildings and equipment under construction:

a)   the equivalent of the above period of time will be applied to the level of business that would have been reasonably achieved after construction and startup would have been completed had no physical damage occurred; and

b)   due consideration will be given to the actual experience of the business compiled after completion of the construction and startup.

3)   If an order of civil authority prohibits access to the Insured Location and provided such order is the direct result of physical damage of the type insured against under this Policy at the Insured Location or within 1,000 feet of it, the period of time:

a)   starting at the time of physical damage; but

b)   not to exceed 30 consecutive days.

B.   The PERIOD OF LIABILITY does not include any additional time due to the Insured's inability to resume operations or services for any reason other than from physical loss or damage insured, including but not limited to:

1)   making changes to equipment;

2)   making changes to the buildings or structures except as provided in the DEMOLITION AND INCREASED COST OF CONSTRUCTION provision;

3)   restaffing or retraining employees;

4)   research, engineering, or restoring or recreating lost information or data.

**RELATED REPORTED VALUES**

If reported RENTAL INSURANCE values include:

1)   locations used by the Insured (such as branch stores, sales outlets and other plants) but not listed on a schedule under this Policy; and

00 ML0207 00 11 03                                              **Page 29 of 51**

2)  a RENTAL INSURANCE loss would result at such locations, from insured physical loss or damage at an Insured Location,

then this Policy provides coverage for such resulting RENTAL INSURANCE loss in accordance with the coverage applicable at such Insured Location.

## ON PREMISES SERVICES COVERAGE EXTENSION

This Policy covers the Actual Loss Sustained by the Insured during the PERIOD OF LIABILITY directly resulting from physical loss or damage of the type insured to the following property located within 1,000 feet of the Insured Location:

1)  Electrical and telecommunications equipment;

2)  Electrical, telecommunications, fuel, gas, water, steam, refrigeration and sewerage transmission lines.

## TIME ELEMENT EXCLUSIONS

In addition to the EXCLUSIONS clause in the PROPERTY DAMAGE section of the policy to which this coverage is endorsed, the following exclusions apply to TIME ELEMENT loss:

Unless otherwise provided, this Policy does not insure against:

A.  Any loss during any idle period, including but not limited to when production, operation, service or delivery or receipt of goods would cease, or would not have taken place or would have been prevented due to:

1)  physical loss or damage not insured by this Policy on or off of the Insured Location;

2)  planned or rescheduled shutdown;

3)  strikes or other work stoppage;

4)  any other reason other than physical loss or damage insured by this Policy.

B.  Any increase in loss due to:

1)  suspension, cancellation or lapse of any lease, contract, license or orders;

2)  fines or damages for breach of contract or for late or failure to complete orders;

3)  for penalties of any nature;

4)  any other consequential or remote loss.

C.  Any loss resulting from loss or damage to finished goods manufactured by the Insured, nor the time required for their reproduction.

D.  Any loss resulting from physical loss or damage caused by or resulting from Terrorism.

All other terms and conditions of this Policy remain unchanged.

**THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.**

## CONTINGENT TIME ELEMENT ENDORSEMENT

This endorsement extends the TIME ELEMENT coverages of this Policy to include coverage for TIME ELEMENT losses:

    1) directly resulting from physical loss or damage of a type not excluded;

       and

    2) to property of the type insured and not excluded,

at any locations of direct suppliers or customers listed below as Insured Suppliers and Customers, and located within the TERRITORY of this Policy.

The term "supplier or customer" does not include any company supplying to, or receiving from, the Insured Location, as described elsewhere in this Policy, electricity, fuel, gas, water, steam, refrigeration or sewage.

As respects CONTINGENT TIME ELEMENT, this Policy does not insure loss resulting from lack of incoming or outgoing transmission of voice, data, or video.

**INSURED SUPPLIERS AND CUSTOMERS:**
  All Direct Suppliers and Customers _____

All other terms and conditions of this Policy remain unchanged.

THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.

SERVICE INTERRUPTION TIME ELEMENT ENDORSEMENT

1) This Policy covers the Actual Loss Sustained by the Insured during the Period of Service Interruption at an Insured Location when the loss is caused by the interruption of the specified incoming services consisting of Power, Water, Communication lines or from the lack of outgoing Sewage service by reason of any accidental physical loss or damage due to a cause not excluded by this policy and to property of a type insured and not excluded by this policy to the facilities of the supplier of such service located within this Policy's TERRITORY, that immediately prevents in whole or in part the delivery of such usable service.

2) This Additional Coverage will apply only when the Period of Service Interruption is in excess of the time shown as Waiting Period in the LIMITS OF LIABILITY – Time Limits clause of the policy DECLARATIONS.

3) In addition, as respects SERVICE INTERRUPTION TIME ELEMENT, this Policy does not insure against service interruption loss caused by or resulting from Earth Movement, whether or not Earth Movement coverage is otherwise endorsed to this policy.

4) Additional General Provisions:

   a) The Insured will immediately notify the suppliers of services of any interruption of such services.

   b) The Company will not be liable if the interruption of such services is caused directly or indirectly by the failure of the Insured to comply with the terms and conditions of any contracts the Insured has for the supply of such specified services.

5) References and Application: The following term(s) means:

   a) Period of Service Interruption:

      (i) The period starting with the time when an interruption of specified services occurs; and ending when with due diligence and dispatch the service could be wholly restored and the Location receiving the service could or would have resumed normal operations following the restoration of service under the same or equivalent physical and operating conditions.

      (ii) The Period of Service Interruption is limited to only those hours during which the Insured would or could have used services(s) if it had been available.

      (iii) The Period of Service Interruption does not extend to include the interruption of operations caused by any reason other than interruption of the specified service(s).

All other terms and conditions of this Policy remain unchanged.

00 ML0207 00 11 03

THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.

SERVICE INTERRUPTION PROPERTY DAMAGE ENDORSEMENT

1) This Policy covers physical loss or damage to insured property at an Insured Location when such physical loss or damage results from the interruption of the specified incoming services consisting of Power, Water, Communication lines or from the lack of outgoing Sewage service by reason of any accidental physical loss or damage due to a cause not excluded by this policy and to property of a type insured and not excluded by this policy, to the facilities of the supplier of such service located within this Policy's TERRITORY, that immediately prevents, in whole or in part, the delivery of such usable service.

2) This Additional Coverage will apply only when the Period of Service Interruption is in excess of the time shown as Waiting Period in the LIMITS OF LIABILITY - Time Limits clause of the policy DECLARATIONS.

3) In addition, as respects SERVICE INTERRUPTION PROPERTY DAMAGE, this Policy does not insure against service interruption loss caused by or resulting from Earth Movement, whether or not Earth Movement coverage is otherwise endorsed to this policy.

4) Additional General Provisions:

   a) The Insured will immediately notify the suppliers of services of any interruption of such services.

   b) The Company will not be liable if the interruption of such services is caused directly or indirectly by the failure of the Insured to comply with the terms and conditions of any contracts the Insured has for the supply of such specified services.

5) References and Application: the following term means:

   a) Period of Service Interruption:

      The period starting with the time when an interruption of specific services occurs; and ending when with due diligence and dispatch the service could be wholly restored.

All other terms and conditions of this Policy remain unchanged.

## THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.

### EARTH MOVEMENT ENDORSEMENT

Section B - Property Damage, Sub-section 4. – EXCLUSIONS, Exclusion 5 – Earth Movement, is deleted and replaced by the following:

This Policy is extended to insure direct physical loss or damage to Covered Property caused by Earth Movement.

Earth Movement, as used in this endorsement, means any natural or man-made earth movement including, but not limited to earthquake or landslide, regardless of any other cause or event contributing concurrently or in any other sequence of loss. However, physical damage by fire, explosion, sprinkler leakage or flood resulting from Earth Movement will not be considered to be loss by Earth Movement within the terms and conditions of this Policy. All earth movements within a continuous 72 hour period will be considered a single Earth Movement. The expiration of this Policy will not reduce the seventy-two (72) hour period.

This coverage is provided per franchisee.

Tsunami is included; however if both Flood and Earth Movement are covered, only the largest Sublimit of Insurance will apply.

### EXCLUSION

This Endorsement does not cover loss or damage to Covered Property under the following Extensions of Coverage: Newly constructed or Acquired Buildings, Newly Acquired Personal Property, or Unnamed Premises, unless endorsed hereon.

### ANNUAL AGGREGATE SUBLIMIT(S)

This Endorsement does not increase the Limits of Insurance provided by this Policy.

The Limits of Insurance for all Earth Movement loss or damage in any one policy year shall not exceed:

1.  $ 1,500,000        at any one Premises

00 ML0207 00 11 03                                                      Page 34 of 51

2.  Not Covered    At any Newly Constructed or Acquired Buildings, Newly Acquired Personal Property, or Unnamed Premises

3.  Not Covered    California Counties of: Orange, Los Angeles, San Francisco and San Mateo.

4. $50,000,000    aggregate Limit of Insurance for all Earth Movement loss or damage for all Premises combined in any one policy year

All other terms and conditions of this Policy remain unchanged.

00 ML0207 00 11 03

## THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.

## FLOOD ENDORSEMENT

Section B - Property Damage, Sub-section 4 – EXCLUSIONS, Exclusion 6 - Flood, is deleted and replaced by the following:

This Policy is extended to insure direct physical loss or damage to Covered Property caused by Flood.

This coverage is provided per franchisee.

Flood means a general and temporary condition of partial or complete inundation of normally dry land areas caused by the unusual and rapid accumulation or runoff of surface waters; waves; tidal waves; overflow of any body of water; and their spray, all whether driven by wind or not; mudslide or mudflow.

Tsunami is included; however if both Flood and Earth Movement are covered, only the largest Sublimit of Insurance will apply.

## EXCLUSION

This Endorsement does not cover loss or damage to:

1. Bridges, bulkheads, docks, piers, retaining walls, seawalls, wharves or other structures located on or partially over water, or personal property located thereon; and
2. Covered Property under the following Extensions of Coverage:  Newly Constructed or Acquired Buildings, Newly Acquired Personal Property, or Unnamed Premises, unless endorsed hereon.

## ANNUAL AGGREGATE SUBLIMIT(S)

This Endorsement does not increase the Limits of Insurance provided by this Policy.

The Limits of Insurance for all Flood loss or damage in any one policy year shall not exceed:

1. $1,500,000        at any one Premises

2. N/A          at any Newly Constructed or Acquired Buildings, Newly Acquired Personal Property, or Unnamed Premises

00 ML0207 00 11 03                                    Page 36 of 51

3.  $50,000,000        aggregate Limit of Insurance for all Flood loss or damage for all Premises combined in any one policy year.

All other terms and conditions of this Policy remain unchanged.

**THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.**

**TRANSIT ENDORSEMENT**

1) This Policy covers the following Personal Property, except as otherwise excluded by this Policy, while in the due course of transit within the TERRITORY of this Policy:

   a) owned by the Insured.

   b) sold and shipped to customers under F.O.B., C & F or similar terms that are usually regarded as terminating the shippers responsibility short of the point of final delivery. The Insured's contingent interest in such shipments is admitted.

   c) of others in the actual or constructive custody of the Insured to the extent of the Insured's interest or legal liability.

   d) of others sold by the Insured, that the Insured has agreed prior to the loss to insure during course of delivery.

2) This Additional Coverage excludes:

   a) samples in the custody of salespeople or selling agents.

   b) property insured under import or export ocean marine insurance.

   c) waterborne shipments, unless:

      (i) by inland water; or

      (ii) by coastal shipments.

   d) waterborne shipments via Panama Canal or to and from Alaska, Puerto Rico and Hawaii.

   e) airborne shipments unless by regularly scheduled passenger airlines or air freight carriers.

   f) property of others, including the Insured's legal liability for it, hauled on vehicles owned, leased or operated by the Insured when acting as a common or contract carrier.

   g) any transporting vehicle, or conveyance.

3) Coverage Attachment and Duration:

   a) This Additional Coverage covers from the time the property leaves the original point of shipment for transit until the property arrives at the destination.

   b) However, coverage on export shipments not insured under ocean cargo policies ends when the property is at the export point, prior to loading on board overseas vessels or aircraft. Coverage on import shipments not insured under ocean cargo policies begins after unloading from overseas vessels or aircraft.

4) This Additional Coverage:

   a) covers general average and salvage charges on shipments covered while waterborne.

   b) insures physical loss or damage caused by or resulting from:

00 ML0207 00 11 03

       (I)  unintentional acceptance of fraudulent bills of lading, shipping and delivery orders, messenger receipts, or similar documents.

       (ii)  improper parties having gained possession of property through fraud or deceit.

5)    Additional General Provisions:

    a)    This Additional Coverage will not inure directly or indirectly to the benefit of any carrier or bailee.

    b)    The Insured has permission, without prejudicing this insurance, to accept:

       (i)  ordinary bills of lading used by carriers;

       (ii)  released bills of lading;

       (iii)  undervalued bills of lading; and

       (iv)  shipping, delivery or messenger receipts.

    c)    The Insured may waive subrogation against railroads under side track agreements.

Except as otherwise stated, the Insured will not enter into any special agreement with carriers releasing them from their common law or statutory liability. Such actions may void coverage that would otherwise be afforded under this endorsement.

## VALUATION

On property in transit:

1)    Property shipped to or for the account of the Insured will be valued at actual invoice to the Insured. Included in the value are accrued costs and charges legally due. Charges may include the Insured's commission as selling agent.

2)    Property sold by the Insured and shipped to or for the purchaser's account will be valued at the Insured's selling invoice amount. Prepaid or advanced freight costs are included.

3)    Property not under invoice will be valued:

    a)    for property of the Insured, at the valuation provisions of this Policy applying at the location from which the property is being transported; or

    b)    for other property, at the actual cash market value at the destination point on the date of occurrence,

less any charges saved which would have become due and payable upon arrival at destination.

All other terms and conditions of this Policy remain unchanged.

## THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.

### ASBESTOS EXCLUSION ENDORSEMENT

A.     This Policy only insures asbestos physically incorporated in an insured building or structure, and then only part of the asbestos which has been physically damaged during the policy period by one of these listed Perils:

Fire, Explosion, Lightning, Windstorm; Hail; Direct impact of vehicle, aircraft or vessel; Riot or civil commotion; Vandalism or malicious mischief; or accidental discharge of fire protective equipment

This coverage is subject to all limitations in the policy to which this endorsement is attached and, in addition, to each of the following specific limitations:

1. The said building or structure must be insured under this policy for damage by that listed Peril.

2. The Listed Peril must be the immediate, sole cause of the damage to the asbestos.

3. The Assured must report to Underwriters the existence and cost of the damage as soon as practicable after the Listed Peril first damaged the asbestos. However this policy does not insure any such damage first reported to Underwriters more than 12 (twelve) month after the expiration, or termination, of the policy period.

4. Insurance under this policy in respect of asbestos shall not include any sum relating to:

   a. any faults in the design,
   b. asbestos not physically damaged by the Listed Peril including any governmental or regulatory authority direction or request of whatsoever nature relating to undamaged asbestos.

B.    Except as set forth in the foregoing Section A, this policy does not insure asbestos or any sum relating thereto.

The policy changes provided by this endorsement shall supersede and annul any conflicting provisions of the policy. All other matters not affected by this endorsement remain the same and shall be governed by the terms and conditions of the Company's policy to which this endorsement is attached.

THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.

### PRODUCT RECALL EXCLUSION ENDORSEMENT

This policy does not insure against any cost associated with any form of contamination of the Insured's raw stock, stock in process or finished stock or products in the stream of commerce, all whether direct or indirect, proximate or remote or in whole or in part caused by, contributed to or aggravated by any physical damage Insured in this policy. Further, this policy does not insure against any loss, damages, costs or expenses incurred by the Insured or by others for the loss of use, withdrawal, recall, inspection, repair, replacement, adjustment, removal or disposal of the Insured's products or the Insured's direct or indirect customers or suppliers if such product or portion of it is withdrawn or recalled from the market or from use by any person or organization because of a known or suspected defect, deficiency, inadequacy, contamination or dangerous condition.

All other terms and conditions of this Policy remain unchanged.

THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.

## ELECTRONIC DATE RECOGNITION EXCLUSION

Notwithstanding any provision to the contrary within this policy or any endorsement thereto, this policy does not cover any loss, damage, cost, claim or expense, whether preventative, remedial or otherwise, directly or indirectly arising out of or relating to:

a) the calculation, comparison, differentiation, sequencing or processing of data involving the date change to the year 2000, or any other date change, including leap year calculations, by any computer system, hardware, program or software and/or any microchip, integrated circuit or similar device in computer equipment or non-computer equipment, whether the property of the insured or not; or

b) any change, alteration or modification involving the date change to the year 2000 or any other date change, including leap year calculations, to any such computer system, hardware, program or software or any microchip, integrated circuit or similar device in computer equipment or non-computer equipment, whether the property of the insured or not.

This clause applies regardless of any other cause or event that contributes concurrently or in any sequence to the loss, damage, cost, claim or expense.

All other terms and conditions of this Policy remain unchanged.

## THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.

### CRIME COVERAGE ENDORSEMENT

Crime Coverage is provided and is self-contained with all of its own terms and conditions.

#### CRIME GENERAL PROVISIONS

Various provisions in this policy restrict coverage. Read the entire policy carefully to determine rights, duties and what is or is not covered.

Throughout this policy the words "you" and "your" refer to the Named Insured shown in the Declarations. The words "we", "us" and "our" refer to the Company providing this insurance.

Words and phrases in quotation marks are defined in the policy.

Unless stated otherwise in any Crime Coverage Form, Declarations or endorsement, the following General Exclusions, General Conditions and General Definitions apply to all Crime Coverage Forms forming part of this policy.

A.   **GENERAL EXCLUSIONS**

We will not pay for loss as specified below:

   1. Acts Committed by You or Your Partners: Loss resulting from any dishonest or criminal act committed by you or any of your partners whether acting alone or in collusion with other persons.

   2. Governmental Action: Loss resulting from seizure or destruction of property by order of governmental authority.

   3. Indirect Loss: Loss that is an indirect result of any act or "occurrence" covered by this insurance including, but not limited to, loss resulting from:

      a. Your inability to realize income that you would have realized had there been no loss of, or loss from damage to, Covered Property.

      b. Payment of damages of any.type for which you are legally liable. But, we will pay compensatory damages arising directly from a loss covered under this insurance.

      c. Payment of costs, fees or other expenses you incur in establishing either the existence or the amount of loss under this insurance.

   4. Legal Expenses: Expenses related to any legal action.

   5. Nuclear: Loss resulting from nuclear reaction, nuclear radiation or radioactive contamination, or any related act or incident.

   6. War and Similar Actions: Loss resulting from war, whether or not declared, warlike action, insurrection, rebellion or revolution, or any related act or incident.

B.   **GENERAL CONDITIONS**

   1. Concealment, Misrepresentation or Fraud: This insurance is void in any case of fraud by you as it relates to this insurance at any time. It is also void if you or any other insured, at any time, intentionally conceal or misrepresent a material fact concerning:

00 ML0207 00 11 03

a.    This insurance;

b.    The Covered Property;

c.    Your interest in the Covered Property; or

d.    A claim under this insurance.

2.  Consolidation – Merger: If through consolidation or merger with, or purchase of assets of, some other entity:

a.    Any additional persons become "employees"; or

b.    You acquire the use and control of any additional "premises"; any insurance afforded for "employees" or "premises" also applies to those additional "employees" and "premises", but only if you:

a.    Give us written notice within 30 days thereafter;     and

b.    Pay us an additional premium.

3.  Coverage Extensions: Unless stated otherwise in the Coverage Form, our liability under any Coverage Extension is part of, not in addition to, the Limit of Insurance applying to the Coverage or Coverage Section.

4.  Discovery Period for Loss: We will pay only for covered loss discovered no later than one year from the end of the policy period.

5.  Duties in the Event of Loss: After you discover a loss or a situation that may result in loss of, or loss from damage to, Covered Property you must:

a.    Notify us as soon as possible.

b.    Submit to examination under oath at our request and give us a signed statement of your answers.

c.    Give us a detailed, sworn proof of loss within 120 days.

d.    Cooperate with us in the investigation and settlement of any claim.

6.    Joint Insured:

a. If more than one Insured is named in the Declarations, the first named Insured will act for itself and for every other Insured for all purposes of this insurance. If the first named Insured ceases to be covered, then the next named Insured will become the first named Insured.

b. If any Insured or partner or officer of that Insured has knowledge of any information relevant to this insurance, that knowledge is considered knowledge of every Insured.

c. An "employee" of any Insured is considered to be an "employee" of every Insured.

d. If this insurance or any of its coverages is cancelled or terminated as to any Insured, loss sustained by that Insured is covered only if discovered no later than one year from the date of that cancellation or termination.

e. We will not pay more for loss sustained by more than one Insured than the amount we would pay if all the loss had been sustained by one Insured.

7. Legal Action Against Us: You may not bring any legal action against us involving loss:

   a. Unless you have complied with all the terms of this insurance; and

   b. Until 90 days after you have filed proof of loss with us; and

   c. Unless brought within 2 years from the date you discover the loss.

8. Liberalization: If we adopt any revision that would broaden the coverage under this insurance without additional premium within 45 days prior to or during the policy period, the broadened coverage will immediately apply to this insurance.

9. Loss Covered Under More Than One Coverage of This Insurance: If two or more coverages of this insurance apply to the same loss, we will pay the lesser of:

   a. The actual amount of loss; or

   b. The sum of the limits of insurance applicable to those coverages.

10. Loss Sustained During Prior Insurance

   a. If you, or any predecessor in Interest, sustained loss during the period of any prior insurance that you or the predecessor in interest could have recovered under that insurance except that the time within which to discover loss had expired, we will pay for it under this insurance, provided:

   (1) This insurance became effective at the time of cancellation or termination of the prior insurance; and

   (2) The loss would have been covered by this insurance had it been in effect when the acts or events causing the loss were committed or occurred.

   b. The insurance under this Condition is part of, not in addition to, the Limits of Insurance applying to this insurance and is limited to the lesser of the amount recoverable under:

   (1) This insurance as of its effective date; or
   (2) The prior insurance had it remained in effect.

11. Loss Covered Under This Insurance and Prior Insurance Issued by Us or Any Affiliate: If any loss is covered:

   a. Partly by this insurance; and

   b. Partly by any prior cancelled or terminated insurance that we or any affiliate had issued to you or any predecessor in interest;
   the most we will pay is the larger of the amount recoverable under this insurance or the prior insurance.

12. Non-Cumulation of Limit of Insurance: Regardless of the number of years this insurance remains in force or the number of premiums paid, no Limit of Insurance cumulates from year to year or period to period.

13. Other Insurance: This insurance does not apply to loss recoverable or recovered under other insurance or indemnity. However, if the limit of the other insurance or indemnity is insufficient to cover the entire amount of the loss, this insurance will apply to that part of the loss, other than that falling within any deductible amount, not recoverable or recovered under the other insurance or

00 ML0207 00 11 03

indemnity. However, this insurance will not apply to the amount of loss that is more than the applicable Limit of Insurance shown in the Declarations.

14.    Ownership of Property; Interests Covered: The property covered under this insurance is limited to property:

      a.    That you own or hold; or

      b.    For which you are legally liable.

However, this insurance is for your benefit only. It provides no rights or benefits to any other person or organization.

15.    Policy Period:

      a.    The Policy Period is shown in the Declarations.

      b.    Subject to the Loss Sustained During Prior Insurance condition, we will pay only for loss that you sustain through acts committed or events occurring during the Policy Period.

16.    Records: You must keep records of all Covered Property so we can verify the amount of any loss.

17.    Recoveries:

a. Any recoveries, less the cost of obtaining them, made after settlement of loss covered by this insurance will be distributed as follows:

    (1)    To you, until you are reimbursed for any loss that you sustain that exceeds the Limit of Insurance and the Deductible Amount, if any;

    (2)    Then to us, until we are reimbursed for the settlement made;

    (3)    Then to you, until you are reimbursed for that part of the loss equal to the Deductible Amount, if any.

      b.    Recoveries do not include any recovery:

    (1)    From insurance, suretyship, reinsurance, security or indemnity taken for our benefit; or

    (2)    Of original "securities" after duplicates of them have been issued.

18.    Territory: This insurance covers only acts committed or events occurring within the United States of America.

19.    Transfer of Your Rights of Recovery Against Others to Us: You must transfer to us all your rights of recovery against any person or organization for any loss you sustained and for which we have paid or settled. You must also do everything necessary to secure those rights and do nothing after loss to impair them.

20.    Valuation – Settlement:

      a.    Subject to the applicable Limit of Insurance provision we will pay for:

    (1)    Loss of "money" but only up to and including its face value. We may, at our option, pay for loss of "money" issued by any country other than the United States of America:

00 ML0207 00 11 03

(a)    At face value in the "money" issued by that country; or
(b)    In the United States of America dollar equivalent determined by    the rate of exchange on the day the loss was discovered.

(2)    Loss of "securities" but only up to and including their value at the close of business on the day the loss was discovered. We may, at our option:

(a)    Pay the value of such "securities" or replace them in kind, in which event you must assign to us all your rights, title and interest in and to those "securities"; or
(b)    Pay the cost of any Lost Securities Bond required in connection with issuing duplicates of the "securities". However, we will be liable only for the payment of so much of the cost of the bond as would be charged for a bond having a penalty not exceeding the lesser of the:

(i)    Value of the "securities" at the close of business on the day the loss was discovered; or
(ii)   Limit of Insurance.

(3)    Loss of, or loss from damage to, "property other than money and securities" or loss from damage to the "premises" for not more than the:

(a)    Actual cash value of the property on the day the loss was    discovered;
(b)    Cost of repairing the property or "premises"; or
(c)    Cost of replacing the property with property of like kind    and quality.

We may, at our option, pay the actual cash value of the property or repair or replace it.

If we cannot agree with you upon the actual cash value or the cost of repair or replacement, the value or cost will be determined by arbitration.

c. We may, at our option, pay for loss of, or loss from damage to, property other than "money":

(1)    In the "money" of the country in which the loss occurred; or
(2)    In the United States of America dollar equivalent of the "money" of the country in which the loss occurred determined by the rate of exchange on the day the loss was discovered.

d.    Any property that we pay for or replace becomes our property.

## C. GENERAL DEFINITIONS

1.    "Employee" means:
    a.    Any natural person:

(1)    While in your service (and for 30 days after termination  of service); and
(2)    Whom you compensate directly by salary, wages or  commissions; and
(1)    Whom you have the right to direct and control while performing services for you; or

    b.    Any natural person employed by an employment contractor while that person is subject to your direction and control and performing services for you excluding, however, any such person while having care and custody of property outside the "premises".

But "employee" does not mean any:
(1)    Agent, broker, factor, commission merchant, consignee, independent contractor or representative of the same general character; or

00 ML0207 00 11 03                                        Page 47 of 51

(2) Director or trustee except while performing acts coming within the scope of the usual duties of an employee.

2.   "Money" means:
    a. Currency, coins and bank notes in current use and having a face value; and
    b. Travelers checks, register checks and money orders held for sale to the public.

3.   "Property Other Than Money and Securities" means any tangible property other than "money" and "securities" that has intrinsic value but does not include any property listed in any Crime Coverage Form as Property Not Covered.

3.   "Securities" means negotiable and non-negotiable instruments or contracts representing either "money" or other property and includes:

    a.   Tokens, tickets, revenue and other stamps (whether represented by actual stamps or unused value in a meter) in current use; and
    b.   Evidences of debt issued in connection with credit or charge cards, which cards are not issued by you;
        but does not include "money".

## D. DEDUCTIBLES AND LIMITS

It is understood and agreed as respects Coverage under this Crime Endorsement, a deductible of $2,500 applies to each occurrence.

It is understood and agreed as respects Coverage under this Crime Endorsement, the following Limit(s) of Liability apply:

| Extensions of Coverage | Limit of Liability |
| --- | --- |
| Gift Certificates | $ 50,000 per occurrence |
| Employee Dishonesty | $ 25,000 per occurrence |
| Loss of Money and Securities | $ 25,000 per occurrence |
| Robbery, Burglary | Included in above limit (Money and Securities) |
| Money and Counterfeit Currency | $ 25,000 per occurrence |
| Depositors Forgery | $ 25,000 per occurrence |

## THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.

## LOSS PAYABLE PROVISIONS

McDonalds Corporation is added to this policy as loss payee, as its interests may appear, subject to the following terms and conditions.

1)  **LOSS PAYABLE**

For Covered Property in which both you and a Loss Payee shown in the Schedule or in the Declarations have an insurable interest, we will:

a)  Adjust losses with you; and
b)  Pay any claim for loss or damage jointly to you and the Loss Payee, as interests may appear.

2)  **LENDER'S LOSS PAYABLE**

a)  The Loss Payee shown in the Schedule or in the Declarations is a creditor, including a mortgage-holder or trustee, whose interest in Covered Property is established by such written instruments as:

i)  Warehouse receipts;
ii)  A contract or deed;
iii)  Bills of lading;
iv)  Financing statements; or
v)  Mortgages, deeds of trust, or security agreements.

b)  For Covered Property in which both you and a Loss Payee have an insurable interest:

i)  We will pay for covered loss or damage to each Loss Payee in their order of precedence, as interests may appear.
ii)  The Loss Payee has the right to receive loss payment even if the Loss Payee has started foreclosure or similar action on the Covered Property.
iii)  If we deny your claim because of your acts or because you have failed to comply with the terms of the Policy, the Loss Payee will still have the right to receive loss payment if the Loss Payee:

(1)  Pays any premium due under this Policy at our request if you have failed to do so;
(2)  Submits a signed, sworn proof of loss within 60 days after receiving notice from us of your failure to do so; and
(3)  Has notified us of any change in ownership, occupancy or substantial change in risk known to the Loss Payee.

All of the terms of this Policy will then apply directly to the Loss Payee.

(4)      If we pay the Loss Payee for any loss or damage and deny payment to you because of your acts or because you have failed to comply with the terms of this Policy:

(a)  The Loss Payee's rights will be transferred to us to the extent of the amount we pay; and
(b)  The Loss Payee's rights to recover the full amount of the Loss Payee's claim will not be impaired.

At our option, we may pay to the Loss Payee the whole principal on the debt plus any accrued interest. In this event, you will pay your remaining debt to us.

c)  If we cancel this policy, we will give written notice to the Loss Payee at least:

00 ML0207 00 11 03

Page 49 of 51

       i)   10 days before the effective date of cancellation if we cancel for your nonpayment of premium; or

       ii)  30 days before the effective date of cancellation if we cancel for any other reason.

d)  If we elect not to renew this policy, we will give written notice to the Loss Payee at least 10 days before the expiration date of this policy.

All other terms and conditions of this policy remain unchanged.

THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.

VALUABLE PAPERS AND RECORDS ENDORSEMENT

This Policy covers insured physical loss or damage to VALUABLE PAPERS AND RECORDS owned by the Insured while at an Insured location anywhere within this Policy's TERRITORY, including while in transit (if Transit Coverage is otherwise endorsed to this policy).

1)   This Additional Coverage excludes loss or damage to:

    a)   Valuable Papers and Records that cannot be replaced with other of like kind and quality, unless an appraised value is specifically declared to the Company on a schedule of Valuable Papers and Records on file with the company.

    b)   currency, money or securities.

    c)   property held as samples or for sale or for delivery after sale.

2)   As respects VALUABLE PAPERS AND RECORDS, this Policy excludes errors or omissions in processing, or copying, but if physical damage not excluded by this Policy results, then only resulting damage is Insured.

3)   References and Application. The following term(s) wherever used in this Policy means:

    a)   Valuable Papers and Records:

        Written, printed or otherwise inscribed documents and records, including books, maps, films, drawings, abstracts, deeds, mortgages and manuscripts, all of which must be of unique value to the Insured.  Valuable Papers and Records do not include business records and media utilized in the ordinary course of conducting your daily business, including but not limited to financial records, sales records, billing records and the like, both current and historical.

**VALUATION**

The following special valuation clause applies to losses covered under this endorsement:

A.   On VALUABLE PAPERS AND RECORDS, the lesser of the following:

    a)   The reasonable and necessary cost to repair or restore the item to the condition that existed immediately prior to the loss.

    b)   The cost to replace the item.

    c)   The amount designated for the item on the schedule of Valuable Papers and Records on file with the Company.

B.   On exposed films, records, manuscripts and drawings, that are not Valuable Papers and Records, including business records and media: the value blank plus the cost of copying information from back-up or from originals of a previous generation. These costs will not include research, engineering or any costs of restoring or recreating lost information.

All other terms and conditions of this Policy remain unchanged.

SEP 27 2004 4:48PM   RMS AGENCY                1516742588                 p. 6

3. Repair, replace, restore or rebuild décor and equipment in accordance with McDonald's Restaurant's current specifications. This requirement does not apply to décor and equipment that is in storage or otherwise not in use.

4. Vacancy – Property that has been vacant beyond a period of 180 consecutive days will be covered except for loss attributable to vandalism.

RENTAL INSURANCE: Licensee shall maintain and keep in force McDonald's Basic Rent in an amount equal to not less than the total of one year's Basic Rent under the Operator's Lease.

A. Standard coverage must include:

1. McDonald's Basic Rents (12 Months). This coverage is to be maintained in addition to any business interruption coverage purchased optionally.

The aforementioned insurance requirements are coverage minimums.



C.  Liquor Liability must be provided for all locations selling alcoholic products.

D.  Stop Gap Liability – required if any locations are in the following states or territory: Nevada, North Dakota, Ohio, Washington, West Virginia, Wyoming, Puerto Rico and any state where the state fund does not provide Workers' Compensation Part B.

E.  Employee Benefits Liability to be provided at a minimum of $300,000 per occurrence/$300,000 aggregate. Coverage shall be written on a claims made form with no retroactive date.

F.  Package policies shall have no exclusions regarding punitive damages for states where it is legally insurable.

The aforementioned insurance requirements are coverage minimums.

PROPERTY INSURANCE: Licensee shall maintain and keep in force all risk insurance, including flood and earthquake coverage, upon the Premises, operational equipment, signs, furnishings, decor and supplies, in an unlimited replacement cost form (whereby the insurer will be obligated to pay full cost of repair or replacement without deduction for depreciation) and without being subject to limit of liability. No co-insurance to apply.

A.  Standard coverage must include:

1.  Replacement cost coverage for an unlimited amount with no co-insurance on buildings, contents, signs, drive-thrus, playgrounds, improvements and betterments.

2.  "All Risk" including Flood, Sewer Backup, Broad Earth Movement (including Earthquake):

a)  For the 10/1/04-05 policy year, a $1,500,000 per occurrence/per location and a $7,500,000 aggregate for flood and $1,500,000 per occurrence/per location and a $1,500,000 per location aggregate for earthquake is acceptable to McDonald's.

b)  Satellite locations/Flood and Earthquake: For satellite locations where the Licensee has no contractual insurance obligation for the building, minimum limits for flood and earthquake of $175,000 for contents/improvements and betterments but not less than full replacement cost value are acceptable to McDonald's.

# EXHIBIT "B"

**John Gunn**

To:              alyons@herrick.com
Cc:              agreen9238@aol.com
Subject:         Anthony Greenwood dba McDonalds
Attachments:     Anthony Greenwood Proof of Loss and Recap.pdf

## BRODSKY & ASSOCIATES, INC.
### 20900 ne 30TH Avenue, Suite 849
### Aventura, Fl. 33180

June 1, 2009

Mr. Alan Lyons
Herrick, Feinstein LLB
2 Park Avenue
New York, NY 33602

Re: insured    Anthony Greenwood dba McDonalds
    Claim No.   24120-64210
    DOL        May 12, 2005

Dear Mr. Lyons:

Attached is a properly executed Sworn Statement in Proof of Loss and revised Recap of Loss & Claim. Please note that we have not received the undisputed payment of $364,248.48. I returned the Sworn Statements in Proof of loss for that payment to John Gray, GAB Robins, and confirmed his receipt by phone. He said he was submitting it for payment, therefore the Recap of Loss & Claim indicated the $364,248.84 is to be paid, and the amount claimed does not include the undisputed payment.

Before the carrier makes a decision on whether to proceed with Appraisal we ask you to reconsider the facts. The Building Code required the damaged building to be repaired in compliance with current codes which would have been economically unfeasible in cost and time given the extensive list of code upgrades required by a thirteen year old building. We are not in agreement on the amount of loss and damage required by the code upgrades which is why we have sought resolution of our disagreement through appraisal.

Please review my letter dated April 29, 2009 and specifically the copy of Chapter 3, Classification of Work, from the 2004 Florida Existing Building Code. Sections 305.1 Scope, and 305.2 Application, say that work exceeding 50% of the aggregate area of the building should comply with Chapter 5, 6, 7, and Alteration Level 1 & 2 requirements. There is no question the repairs exceeded 50% of the aggregate area of the building and are an Alteration Level 3, requiring current code compliance.

In addition, there is no question that the required repairs, as determined by GAB Robins, exceed 50% of the aggregate area of the building and exceed 50% of the value of the building. As such, the Building Code requires repairs be in compliance with the code.

Now, review the letters from Unified Building Sciences & Engineering dated March 7, 2008 and June 27, 2008. Both letters refer to "structural damage" and "building structure" only. They use the terms nine times in the two letters.

1

Building Code compliance requirements for an entire building are not determined by "structural damage" and "building structure" requirements exclusively. Every aspect of the total building is considered when evaluating whether a building must be repaired in accordance with current codes.

UBS also refers to Section 407 of the code, this section addresses Structural only.

The first UBS letter says the building was demolished because of reasons presented in the report by Light Gage Steel Engineering Group. This is only partially correct. The building was demolished because it was not economically feasible to repair the building because of code upgrade requirements to every aspect of the building.

UBS does say in their first letter that " new structural components associated with repairs to the fire damaged portions of the structure should be compliant with current codes", however ignores areas of the code which address all elements of the entire building.

Since the issue is whether the building is required to be brought up to current codes, GAB Robins should not use an engineer that only addresses "structural damage" and "building structure". UBS has carefully worded their letters to allow the casual reader to conclude that the entire building is not required to be brought into current code compliance, which is totally erroneous and would be immediately over ruled by an Appraisal Panel.

In summary, the cost of bringing the building into compliance with current codes is covered under the policy. Therefore, there is no question of the Appraisal determining coverage. We have submitted substantial evidence that the entire building must be brought up to current codes. Your consultant, UBS, has only addressed one aspect of the repairs, "structural damage" and "building structure". The cost of required code upgrades according to GAB Robins is $50,860.00 and we believe the cost is an additional $449,140.00, the limit of the Increased Cost of Construction and Demolition extension of coverage in the policy. This is a disagreement over the amount of loss and damage which is determined by Appraisal.

We look forward to your reply.

John Gunn
Brodsky & Associates, Inc
20900 NE 30th Avenue, S. 849
Aventura, Fl. 33180
954-370-9429x8493
fax 954-370-9710
cell 954-444-3546
jgunn@brodskyandassociates.com

2

## SWORN STATEMENT IN PROOF OF LOSS

| | | | |
|---|---|---|---|
| POLICY # | 12PRP3479400 | OUR FILE | 6960 |
| AMOUNT OF POLICY AT TIME OF LOSS | $ 50000000.00 | COMPANY CLAIM #: | 24120-28789 |
| DATE ISSUED | 10/01/2004 | AGENCY AT: | Garden City, NY |
| DATE EXPIRES | 09/30/2005 | AGENT: | RMS Insurance Brokerage, L.L.C. |

To  Arch Specialty Insurance Company  of  Stamford, CT:

At time of loss, by the above indicated policy of insurance you insured  Maswood Food, Inc.
against loss by Fire to the property described and according to the terms and conditions of the said policy
and all forms, endorsements, transfers and assignments attached thereto.

1. TIME AND ORIGIN: A Fire loss occurred on or about 05/12/2005.
   The cause and origin of the said loss were: Fire, unknown to insured.

2. OCCUPANCY: The building described, or containing the property described, was occupied at the time
   of the loss as follows, and for no other purpose whatsoever:  McDonalds Restaurant

3. TITLE AND INTEREST: At the time of the loss the interest in your insured in the property described
   therein was Owner . No other person or persons had any interest therein or encumbrance thereon,
   except Per Policy.

4. CHANGES: Since the said policy was issued there has been no assignment thereof, or change of
   interest, use, occupancy, possession, location or exposure of the property described except: None

5. TOTAL INSURANCE: The total amount of insurance upon the property described by this policy was, at
   the time of the loss, $ 50,000,000.00 , besides which there was no policy or other contract of insurance,
   written or oral, valid or invalid.

6. THE ACTUAL CASH VALUE of said property at the time of the loss was        $ N/A

7. THE WHOLE LOSS AND DAMAGE was                                             $ 2,111,929.00

8. THE AMOUNT CLAIMED under the above numbered policy is                     $ 449,140.00

Subject to Amendment & Changes

State of  *Florida*
County of  *Miami Dade*

X_____

The foregoing instrument was acknowledged before me this _____ day of
May 28 , 200 9  by _____
acting as _____
for _____

_____
Signature of Notary

LILIA LLEONART
Notary Public - State of Florida
My Comm. Expires Jul 11, 2013
Commission # DD 879137
Bonded Through National Notary Assn.

Personally Known _____✓_____ OR Produced Identification _____
Type of Identification Produced _____

Pursuant to s. 817.234, Florida Statutes, any person who, with the intent to injure, defraud, or deceive any insurer or insured, prepares, presents, or
causes to be presented a proof of loss or estimate of cost of repair of damaged property in support of a claim under an insurance policy knowing that
the proof of loss or estimate of claim or repairs contains any false, incomplete, or misleading information concerning any fact or thing material to the
claim commits a felony of the third degree, punishable as provided in s. 775.082, s. 775.083, s. 775.84, Florida Statutes.

## ASSIGNMENT ENDORSEMENT BECOMING A PART OF
## SWORN STATEMENT IN PROOF OF LOSS

| | | | |
|---|---|---|---|
| POLICY # | 12PRP3479400 | OUR FILE | 6960 |
| AMOUNT OF POLICY AT TIME OF LOSS | $ 50000000.00 | COMPANY CLAIM #: | 24120-28789 |
| DATE ISSUED | 10/01/2004 | AGENCY AT: | Garden City, NY |
| DATE EXPIRES | 09/30/2005 | AGENT: | RMS Insurance Brokerage, L.L.C. |

To the Arch Specialty Insurance Company of Stamford, CT:

At time of loss, by the above indicated policy of Insurance you insured Maswood Foods, Inc. against loss by Fire to the property described and according to the terms and conditions of the said policy and all forms, endorsements, transfers and assignments attached thereto.

1. TIME AND ORIGIN: A Fire loss occurred on or about 06/12/2005. The cause and origin of the said loss were: Fire, unknown to Insured

2. OCCUPANCY: The building described, or containing the property described, was occupied at the time of the loss as follows, and for no other purpose whatsoever: McDonalds Restaurant

3. TITLE AND INTEREST: At the time of the loss the Interest in your Insured in the property described therein was Owner. No other person or persons had any interest therein or encumbrance thereon, except: Per Policy

4. CHANGES: Since the said policy was issued there has been no assignment thereof, or change of interest, use, occupancy, possession, location or exposure of the property described except: None

5. TOTAL INSURANCE: The total amount of Insurance upon the property described by this policy was, at the time of the loss, $ , besides which there was no policy or other contract of Insurance, written or oral, valid or invalid.

6. THE WHOLE LOSS AND DAMAGE was      $ 2,111,929.90

7. THE AMOUNT CLAIMED under the above numbered policy is      $ 449,140.00

   Subject to Amendment & Changes

8. I/We have retained the services of Brodsky & Associates, Inc. on my/our claim arising out of the loss by FIRE, being more fully described in the Sworn Statement in Proof of Loss, and this Statement, which is attached to and made a part of such Sworn Statement, is executed by me/us, to the above-named company, and settlement drafts are to be made payable to the Insureds above-named and Brodsky & Associates, Inc. Agreement or representations, verbal or otherwise, not herein contained are expressly waived. I have read the above and accepted the conditions as set forth therein. The foregoing Assignment Endorsement Becoming a Part of Sworn Statement in Proof of Loss was translated to me by Brodsky & Associates, Inc., and I hereby certify that I fully understand the meaning hereof, that I accept the conditions, and that I am signing the same of my own free will.

State of Florida

County of Miami-Dade

The foregoing instrument was acknowledged before me this 28th day of May, 2009, by Anthony Greenwood, acting as _____

for Combo Enterprises _____     X _____

Signature of Notary

LILIA LLEONART
Notary Public - State of Florida
My Comm. Expires Jul 11, 2013
Commission # DD 870137
Bonded Through National Notary Assn.

## THIS IS AN ASSIGNMENT ATTACHED TO PROOF OF LOSS FOR SERVICES

Pursuant to s. 817.234, Florida Statutes, any person who, with the intent to injure, defraud, or deceive any insurer or insured, prepares, presents, or causes to be presented a proof of loss or estimate of cost of repair of damaged property in support of a claim under an insurance policy knowing that the proof of loss or estimate of claim or repairs contains any false, incomplete, or misleading information concerning any fact or thing material to the claim commits a felony of the third degree, punishable as provided in s. 775.082, s. 775.803, s. 775.84, Florida Statutes.

Brodsky Associates, Inc.                    Professional Loss Consultants

### *Recap of Loss & Claim*

## *Anthony Greenwood d/b/a McDonalds*
*12198 S.W. 117th Avenue*
*Miami, Florida 33184*
*DOL: 5/12/05*

Insured Cost to Rebuild

| | | |
|---|---|---|
| Building | $ 1,094,960.00 | |
| BPP | $ 464,984.00 | |
| Food/Paper | $ 20,199.00 | |
| | $ 1,580,143.00 | $ 1,580,143.00 |

| | |
|---|---|
| Business Income Loss | $ 531,786.00 |
| Total Amount Claimed | $ 2,111,929.00 |

Less

| | | |
|---|---|---|
| Amount initially paid - Building and BPP | $ 496,684.31 | |
| Amount Paid for Business Income | $ 531,786.00 | |
| Undisputed Building and BPP to be paid | $ 364,248.84 | |
| | $ 1,392,719.15 | $ (1,392,719.15) |

| | |
|---|---|
| Total | $ 719,209.85 |

Amount Claimed - Balance of Policy Limit on the additional
Coverage Demolition and increased cost of Construction        $ 449,140.00

The insured's reserves the right to Amend this claim to reflect factors which should be
considered in the proper determination of the loss.

# EXHIBIT "C"



**GAB Robins**

March 20, 2008

Brodsky & Associates
Attn: John Gunn
8181 W. Broward Blvd., Suite 355
Plantation, FL 33324

Re:    Insured: Maewood Foods/McDonalds/Anthony Greenwood
       Loss location: 12198 S.W. 117th Ave., Miami, FL 33186
       Policy No: 12PRP3479400
       Claim No: 24120 64210
       Date of loss: 05-12-2005
       Type of loss: Fire

Dear Mr. Gunn:

Attached to this correspondence you will find our Statement of Loss, as well as the final McDonalds Summation Sheet from U.B.S.   We have also attached a report from Unified Building Sciences & Engineering, Inc. authored by Christopher Meyer, P.E. regarding the restaurant itself.

The report from Mr. Meyer suggests that the demolition of the building was unnecessary and that the report presented by Light Gage Steel Engineering Group was erroneous and that the building structure could have been repaired.   Thus we fall back to our original agreements regarding building repair at $359,436.00.   We include necessary upgrades required by Ordinance & Law at $50,860.00.  This would be the roof work suggested in the report from Mr. Meyer and some additional miscellaneous law and ordinance inclusions.   We allow $63,885.00 for décor and installation of décor.   We allow $357,723.99 for fixed equipment including $8,356.00 in current standards upgrades.   We allow $7,592.16 for other equipment and $1,200.00 for landscaping, etc.     Under business personal property we also allow $20,199.54 for the food and paper inventory.   Total replacement cost loss on building totals $474,181.46. Total replacement cost loss on business personal property totals $386,715.69.  Total of these two figures amounts to $860,897.15.  Application of the $2,500.00 deductible results in a net of $858,397.15.  The business income/extra expense evaluation has not and will not change.

Please review our detail and advise of your thoughts.   Should you have any questions in connection with the above, please feel free to contact me at your earliest convenience.

Sincerely,

John R. Gray, Regional General Adjuster

JRG/kdd
Encl.


**GAB Robins**

May 8, 2009

Certified – Return Receipt Requested

Brodsky & Associates, Inc.
Attn: John Gunn
8181 W. Broward Blvd., Suite 355
Plantation, FL 33324

Re:    Insured: Maewood Foods/McDonalds/Anthony Greenwood
       Loss location: 12198 SW 117th Ave., Miami, FL 33186
       Policy No: 12PRP3479400
       Claim No: 24120 64210
       Date of loss: 05-12-2005
       Type of loss: Fire

Dear Mr. Gunn:

Attached to this correspondence you will find our correspondence of 03-20-08 along with a Sworn Statement in Proof of Loss reflecting the uncontested additional amount which Arch Specialty Insurance Co. feels was owed regarding the above captioned fire claim.

While we understand there are other items in dispute at the present time, we would certainly like to pay any undisputed amounts. We therefore request that the attached Sworn Statement in Proof of Loss be signed and returned to us and at that time a draft will be issued in the amount of $364,248.84 made payable to your insured. A copy of this correspondence is being e-mailed to you as well as a copy of the Sworn Statement in Proof of Loss, and our original correspondence of 03-20-08. This letter is being sent Certified – Return Receipt Requested to ensure proper delivery.

Again should you have any questions regarding this aspect of the claim, please feel free to contact me at your earliest convenience.

Sincerely,

John R. Gray,
Regional General Adjuster

JRG/kdd
Encl.

# EXHIBIT "D"



**GAB Robins**
A Leader In Global Risk Management Services

May 28, 2009                                              Sent via Fed Ex

Brodsky & Associates, Inc.
Attn: John Gunn
8567 S. W. 24th St., Suite 195
Miami, FL  33155

| | |
|---|---|
| GAB File: | 24120-64210 |
| Store #: | 12309 @ 12198 Southwest 117th Ave Miami, Florida |
| Insured: | Maewood Foods, Inc. |
| Date of Loss: | 5/12/2005 |
| Type of Loss: | Fire |

Mr. Gunn:

Since we have received the signed Proof of Loss, enclosed is our check in the amount of $364,248.84 for the balance of the undisputed claim amount.

Sincerely,

Mike Bravo
Adjuster

Enclosures: check # 2000039725

One Oak Hill Center, Suite 201, Westmont, IL 60559, Tel: 630-203-2410 X466, Fax 630-325-5240
E-mail: bravom@gabrobins.com

## CLAIM INFORMATION

CLAIMANT NAME: MAEWOOD FOODS INC

OCCURRENCE DATE: 06/12/08

GAB FILE NUMBER: 24128-64210

INSURANCE COMPANY: ARCH INSURANCE GROUP

POLICY NUMBER: 12PRP3473400

INSURED NAME: RM8 INSURANCE BROKERAGE LLC

CLAIM NUMBER: 012369

PHONE:   630-209-2410

FAX :     630-325-5240

DATE:     06/27/09

CONTACT GAB IF YOU HAVE ANY QUESTIONS CONCERNING THIS CHECK

## PAYMENT INFORMATION

PAYMENT FOR:

INVOICE NUMBER: UNDISPUTED BALANCE/BLDG & BPP

CHECK NUMBER: 2000039725

CHECK AMOUNT: $384,248.84

RECEIVED

MAY 2 8 2009

GAB ROBINS - CHICAGO



ıʳ 2000039725ıʳ ⱴ:03 1 1 00 209:ⱴ   38 2 15461ıⱴ

| | | | |
|---|---|---|---|
| POLICY NO. 12PRP347S400 | | 5642411876 | |
| $ 50,000,000.00 | SWORN STATEMENT | CLAIM/LOSS FILE NO | |
| AMOUNT OF POLICY AT TIME OF LOSS | IN | 24120 28789 | |
| 10-01-04 | PROOF OF LOSS | COMPANY CLAIM NO | |
| DATE ISSUED | | RJMS | |
| 09-30-05 | | AGENT | |
| DATE EXPIRES | | GARDEN CITY, N Y | |
| | | AGENCY AT | |

To the   ARCH SPECIALTY INSURANCE COMPANY

of   STAMFORD, CT.

At time of loss, by the above indicated policy of insurance, you insured

MAEWOOD FOODS, INC:

against loss by   ALL RISK                                                                to the property described according to the terms and conditions of said policy and of all forms, endorsements, transfers and assignments attached thereto

**TIME AND ORIGIN**   A   FIRE   loss occurred about the hour of   1:00   o'clock ☒ AM ☐ PM
on the   12TH   day of   MAY   of   2005   the cause and origin of the said loss were:
FIRE STARTED IN MENU BOARD

**OCCUPANCY**   The building described, or containing the property described, was occupied at the time of the loss as follows and for no other purpose whatever:   MCDONALDS RESTAURANT

**TITLE AND INTEREST**   At the time of the loss the interest of your insured in the property described therein was   OWNER
. No other person or persons had any interest therein or encumbrance thereon, except

NO EXCEPTIONS

**CHANGES**   Since the said policy was issued, there has been no assignment thereof, or change of interest, use, occupancy, possession, location or exposure of the property described, except

NO CHANGES

**TOTAL INSURANCE**   THE TOTAL AMOUNT OF INSURANCE upon the property described by this policy was, at the time of loss,
$   50,000,000.00   as more particularly specified in the apportionment attached, besides which there was no policy or other contract of insurance, written or oral, valid or invalid

**VALUE**   THE ACTUAL CASH VALUE of said property at the time of the loss was   $   NOT FOUND

**LOSS**   THE WHOLE LOSS AND DAMAGE was subject to Amendment   $   1,392,683.15

**AMOUNT CLAIMED**   THE AMOUNT CLAIMED under the above numbered policy is Undisputed   364,248.84

**STATEMENTS OF INSURED**   The said loss did not originate by any act, design or procurement on the part of your insured, or this affiant; nothing has been done by or with the privity or consent of your insured or this affiant, to violate the conditions of the policy, or render it void; no articles are mentioned herein or in annexed schedules but such as were destroyed or damaged at the time of said loss; no property saved has in any manner been concealed, and no attempt to deceive the said company, as to the extent of said loss, has in any manner been made. Any other information that may be required will be furnished and considered a part of this proof.

The furnishing of this blank or the preparation of proofs by a representative of the above insurance company is not a waiver of any of its rights.
CAUTION READ BEFORE SIGNING BELOW

State of   Florida
County of   Miami Dade

Sworn and subscribed to before me this   13   day of   May   2009

MAEWOOD FOODS, INC

BY

Delmer L Ibanez

ROBERTA L. IBANEZ
Notary Public - State of Florida
My Commission Expires Feb 1, 2010
Commission # DD 514757
Bonded By National Notary Assn.

Form PROT86 (Rev 5-96)

# EXHIBIT "E"

# HERRICK

New York
Newark
Princeton

ALAN R. LYONS
Direct Tel  312.592.1559
Direct Fax  312.545.3354
Email  alyons@herrick.com

April 3, 2009

VIA TELECOPIER AND U.S. MAIL

David J. Pettinato, Esq.
Merlin Law Group
777 S. Harbour Island Boulevard
Suite 950
Tampa, Florida 33602

Re:    Insured:      Anthony Greenwood d/b/a McDonald's
        Insurer:      Arch Specialty Insurance Company
        Arch Policy No.:  12PRP3479400 ("Policy")
        Property:     12198 S.W. 117th Ave., Miami, Florida
        Arch Claim No.:  24120-64210
        Date of Loss:   May 12, 2005
        Our File No.:   10292.0533

Dear Mr. Pettinato:

       We represent Arch Specialty Insurance Company ("Arch"). This supplements our March 17, 2009 letter with respect to this matter, and will also respond to a letter we received dated March 24, 2009 from Brodsky & Associates, Inc. ("Brodsky") reiterating its demand for an appraisal.

       Arch reiterates its position as set forth in our March 17 letter (which is incorporated herein by reference) that the issue in dispute between our respective clients is a coverage issue, and therefore not subject to appraisal under the Policy. Arch's position is that the amount claimed by your client with respect to the demolition and rebuild of the property does not fall within the coverage afforded by the Demolition and Increased Cost of Construction Additional Coverage of the Policy because, *inter alia*, such amounts were not necessary to satisfy "the minimum requirements of the enforcement of any law or ordinance." That issue involves an interpretation of the relevant provisions of the Florida Building Code, the Code of Miami-Dade County ("County Code") and the Policy, and is not an issue regarding "the amount of loss." *Gonzalez v. State Farm Fire & Cas. Co.*, 805 So.2d 814 (Fla. 3d DCA 2000) ("whether [a] claim is covered by a policy is a judicial question, not a question for the appraisers"); *Johnson v. Nationwide Mut. Ins. Co.*, 828 So.2d 1021 (Fla. 2002) (a "challenge of coverage is exclusively a judicial question . . .").

       Accordingly, the request for appraisal is premature prior to any determination that coverage exists under the Policy for the amounts claimed by your client in the Civil Remedy

HERRICK, FEINSTEIN LLP
A New York Limited
Liability Partnership
Including New York
Professional Corporations

2 PARK AVENUE, NEW YORK, NY 10016 · TEL 212.592.1400 · FAX 212.592.1500 · www.herrick.com

H E R R I C K

David J. Pettinato, Esq.
April 3, 2009
Page 2

Notice of Insurer Violation filed against Arch ("Notice"). If it is determined by a court that there is coverage under the Policy for the additional amounts incurred by your client to demolish and rebuild the Property, and if there is then a dispute as to quantum, that dispute would be then be subject to the appraisal provisions in the Policy.

The request for appraisal is also premature because Arch has not received a signed and sworn proof of loss with respect to the amount referenced in the Notice. Your client has thus failed to comply with one of the conditions precedent for an appraisal under the Policy.

Arch reiterates its objections to all of the allegations made in the Notice. At all times, Arch has acted in good faith in the adjustment and settlement of this claim, and has not violated any of the statutes referenced in the Notice. Your client's claim for an additional $721,428.00 incurred to demolish and rebuild the Property is entirely premised on the incorrect assertion that the demolition and rebuild was required by an applicable code or ordinance. However, it is clear that there was no such requirement in this case for, *inter alia*, the following reasons:

- Pursuant to Section 8.5(c) of the County Code regarding unsafe structures, if the cost of repair to a building does not exceed 50% of its value, such building may be repaired. If the cost of repair exceeds 50% of its value, the building must be demolished. The Miami-Dade County Building Department determined that, pursuant to the valuation criteria in Section 8.5 (c)(2) of the County Code, the Valuation of Construction Components was 35.5%. Thus, the County determined that the property damage was 35.5% of the building's value, and that the building could therefore be repaired. The County's valuation remained unchanged. The County did not find the building to be more than 50% damaged, and did not require the demolition of the structure.

- On May 20, 2005, the Miami-Dade County Building Department issued an order that the property be repaired *or* demolished. It is therefore clear that the County considered the Property repairable, and the property damage to be less than 50% of the building's value.

- On June 18, 2005, Mr. William D. Cook, P.E., issued a structural inspection report to the Chief Inspector of the Miami-Dade County Building Department which confirmed the Building Department's observations and certified that the structure was sound.

- There was no indication that the Unsafe Structures Board was considering the mandatory demolition of the structure as a result of the valuation criteria or that it had changed its initial valuation of the percentage of damages.

HF 4703567 -.1  ?18292/8033 04/3/2009 02:34 PM

**HERRICK**

David J. Pettinato, Esq.
April 3, 2009
Page 3

Your client's assertion that the County required the demolition is contrary to the 35.5% damage determined by the Building Department, as well as two successive six-month periods granted by the Building Department to obtain repair permits.

In light of the above, Arch has adjusted the loss in good faith on the basis that the Property could have been repaired. On March 20, 2008, GAB Robins North America, Inc. ("GAB"), on Arch's behalf, sent Brodsky a Statement of Loss indicating a balance of $364,248.84, which represented the balance of the replacement value with respect to the repair of the building and personal property. GAB's March 20, 2008 letter also attached a Proof of Loss for the amount of $364,248.84. GAB has not received the signed and sworn Proof of Loss from your client. Upon receipt of that signed and sworn Proof of Loss, Arch will issue a check to Brodsky for $364,248.84. Such payment will constitute the final payment for the loss which was adjusted on the basis that applicable codes did not require demolition of the Property. Rather, it appears that your client based its decision to demolish the Property upon costs and configurations of improvements or changes to McDonald's kitchen equipment, not code requirements.

The Additional Coverage of "Demolition and Increased Cost of Construction" is subject to a limit of liability of $500,000 per occurrence. As stated in GAB's March 20, 2008 letter, Arch has already acknowledged coverage for code upgrades in the amount of $50,860.00. Accordingly, the remaining limit under that Additional Coverage with respect to this occurrence is $449,140.00.

If you client decides to commence litigation against Arch with respect to the allegations made in the Notice, Arch will vigorously defend such litigation. If you disagree with Arch's position and consider that demolition of the Property was required by applicable code, please explain your position and provide us with all supporting documentation. In the meantime, all of Arch's rights under the above-referenced policy are reserved.

Very truly yours,

Alan R. Lyons

cc:    Mike Bravo, GAB Robins North America, Inc. (via email)
       John Gray, GAB Robins North America, Inc. (via email)

IN THE CIRCUIT COURT OF THE ELEVENTH JUDICIAL CIRCUIT
IN AND FOR DADE COUNTY, FLORIDA
CIVIL DIVISION

**ANTHONY GREENWOOD, d/b/a**
**McDONALDS,**

      **Plaintiff,**                  **Case No.**

**vs.**

**ARCH SPECIALTY INSURANCE**
**COMPANY,**

        **Defendant.**

_____/

### PLAINTIFF'S NOTICE OF SERVING FIRST SET
### OF INTERROGATORIES TO DEFENDANT SERVED WITH THE COMPLAINT

    **PLEASE TAKE NOTICE** that Plaintiff served the original and one copy of First

Interrogatories to ARCH SPECIALTY INSURANCE COMPANY, by serving an original and

one copy with the Complaint.

### CERTIFICATE OF SERVICE

    **I HEREBY CERTIFY** that a true and correct copy of the foregoing has been

furnished via U.S. Mail, postage prepaid, to Insurance Commissioner, Process Section,

200 E. Gaines Street, Post Office Box 6200, Tallahassee, Florida  323l4-6l00, for service

upon the Defendant with the Complaint.

                              **DAVID J. PETTINATO, ESQUIRE**
                              Florida Bar Number: 062324
                              MERLIN LAW GROUP, P.A.
                              777 S. Harbour Island Blvd, Ste 950
                              Tampa, Florida  33602
                              Telephone:  (813) 229-1000
                              Fax: (813) 229-3692
                              Email:  DPettinato@merlinlawgroup.com
                              Attorney for Plaintiff

IN THE CIRCUIT COURT OF THE ELEVENTH JUDICIAL CIRCUIT
IN AND FOR DADE COUNTY, FLORIDA
CIVIL DIVISION

ANTHONY GREENWOOD, d/b/a
McDONALDS,

      Plaintiff,                          Case No.

vs.

ARCH SPECIALTY INSURANCE
COMPANY,

      Defendant.

_____/

## PLAINTIFF'S FIRST SET OF INTERROGATORIES TO DEFENDANT SERVED WITH THE COMPLAINT

Plaintiff, ANTHONY GREENWOOD, d/b/a McDONALDS ("MR. GREENWOOD"),

by and through his undersigned counsel, hereby propounds upon the Defendant, ARCH

SPECIALTY INSURANCE COMPANY ("ARCH SPECIALTY"), the following

interrogatories to be answered, in compliance with applicable Rules of Procedure.

### Instructions

1.      You are instructed either to produce documents as they are kept in the usual course of business or to produce documents organized and labeled to correspond with the categories in these Interrogatories. Documents are to be produced in full and unexpurgated form.

2.      These Interrogatories shall be deemed continuing, if permitted by Rule, so as to require further and supplemental production in the event that the party requested to produce, or any of its attorneys, agents or representatives, obtains or discovers additional information or documents between the time of the initial production and the time of hearing or trial.

3.      If any documents covered by these Interrogatories are withheld by reason of a claim of privilege, work-product immunity or other ground of non-production, a list is to be furnished at the time that documents are produced identifying each such document for which the privilege is claimed specifically by its nature (e.g., letter,

2

memorandum, etc.) together with the following information with respect to any such document withheld: author; recipient; sender; indicated or blind copies; date; subject matter; basis on which the privilege is claimed; number of pages; and the paragraph of these Interrogatories to which such document relates.

4.    If a portion of an otherwise responsive document contains information that is subject to a claim of privilege, only those portions of the document subject to the claim of privilege shall be deleted or redacted from the document and the rest of the document shall be produced.

5.    In the event that any document called for by these Interrogatories has been destroyed, lost, discarded or otherwise disposed of, each such document is to be identified as completely as possible, including, without limitation, the following information: author; recipient; sender; subject matter; date prepared or received; date of disposal; person currently in possession of the document; and the person disposing of the document.

6.    All objections to any category of documents to be produced pursuant to these Interrogatories or to any definition or instruction they contain shall be in writing and delivered to Defendant's counsel within the time provided in the Florida Rules of Civil Procedure or at such other time as is agreed upon by the parties or ordered by the Court.

7.    Where identification of a document is requested, please set forth the identity of its author or originator, the date of such authorship or origination, the identity of each person to whom the original or copy was addressed or delivered, the identity of each person known or reasonably believed to have present possession, custody, or control thereof, and a brief description of the subject matter thereof.

8.    Where identification of a person is requested, please set forth the person's name, last-known home and business address and telephone number, and relation to Defendant, if any.

### Definitions

1.    "Plaintiff" means ANTHONY GREENWOOD, d/b/a McDONALDS ("MR. GREENWOOD") his agents, employees, and representatives.

2.    "ARCH SPECIALTY" and/or "you" and "your" means ARCH SPECIALTY INSURANCE COMPANY ("ARCH SPECIALTY") individually or any representatives or agents who are authorized to act on ARCH SPECIALTY'S behalf.

3.    The term "representative" as used herein with regard to a person or entity means and includes each and every present and former director, officer, partner, employee, agent, independent consultant or expert or other person (including attorneys), such as friends, relatives and spouse, acting or purporting to act on behalf of

3



the person or entity.

4.    The term "document" or "documents" is used in its broadest sense and includes, without limitation, drafts, documents whether printed, recorded, stored or reproduced by any mechanical or electronic process, or written or produced by hand, and including computer tapes (including backup tapes) and all other computer-related documents, within your possession, custody or control. "Documents" shall also include (1) each copy that is not identical to the original or to any other copy, and (2) any tangible thing that is called for by or identified in response to any request. "Document" as used herein shall be construed broadly to include all documents and things within the scope of Florida Rule of Civil Procedure 1.340 and refers to all writings or other graphic matter, as well as any other medium by which information is stored or recorded.  It includes originals, drafts, copies and reproductions; and it includes, without limiting the generality of the foregoing, letters; memoranda; reports and/or summaries of investigations; police reports; accident reports; opinions or reports of consultants; diagrams; marginal comments appearing on any documents; accounts; telegrams; studies; lists of persons attending meetings or conferences; records or memoranda of telephone conversations; written statements; transcripts or recorded statements; recorded statements; records of personal conversations or interviews; calculations; computations; specifications; drawings; advertisements; circulars; trade letters; press releases; prints; recordings; positive or negative films, slides or photographs; magnetic, electronic or video tapes; computer tapes, cards or printouts; and all other things of like nature; and any and all containers, boxes or other receptacles or repositories housing or containing such "documents."

5.    The term "communication" shall mean any transmission of information by any means, including, without limitation, by spoken language, electronic transmission of data or any other means.  The term "communication" shall include, without limitation, any copies of written information received by the person or entity responding to this request, even if such person or entity is not the primary or direct addressee of such written information.

6.    The term "referring" or "relating" shall mean showing, disclosing, averting to, comprising, evidencing, constituting or reviewing.

7.    "Person" means a natural person, firm, association, partnership, corporation or other form of legal or business entity, public or private.

8.    The singular includes the plural and vice versa; the words "and" and "or" shall be both conjunctive and disjunctive; the word "all" means "any and all"; the word "any" means "any and all"; the word "including" means "including, with limitation."

9.    All other words have their plain and ordinary meaning.

4

## FIRST SET OF INTERROGATORIES

1.  State the name, official title and function, relationship with ARCH SPECIALTY, address and telephone number of each person(s) who assisted in the preparation and formulation of the answers to these Interrogatories, and responses to the request for production of documents that accompany these interrogatories, and in the assembly of documents to be produced.

    **ANSWER:**

2.  State the name, address, telephone number, and title of each person(s) who had any role, whatsoever, in working on or adjusting the insurance claim(s) of MR. GREENWOOD located at 12198 S.W. 117th Avenue, Miami, Dade County, Florida, giving a brief description of their responsibilities regarding this matter. This Interrogatory seeks the name of every employee of ARCH SPECIALTY who had anything to do with the claim, including the adjusters, branch claims representatives, regional or home office claims auditors or claims examiners, all claims managers and claims supervisors at any level, executive officers of the company, underwriters, and all members of any review committee or claims committee. State the name(s), address(es), and telephone number(s) of all persons who have personal knowledge of any of these facts, and identify all documents that support or explain any of these facts.

    **ANSWER:**

5

A.    If any person identified in the answer to the preceding Interrogatory has been promoted, demoted, or transferred during the time relevant herein, describe in detail the change in employment status of each such individual, including the circumstances of the person's employment before and after the change in status.

**ANSWER:**

B.    If any person identified in the answer to the preceding Interrogatory is no longer employed with ARCH SPECIALTY, please state the date of separation, and the last-known residence address and telephone number or place of current employment of each such past employee.

**ANSWER:**

6



3.  List any documents you are in possession of or have knowledge of which pertains to the subject matter of MR. GREENWOOD'S Complaint and ARCH SPECIALTY'S Answers and Affirmative Defenses which are discoverable under the applicable Rules of Procedure. State the name(s), address(es), and telephone number(s) of all persons who have personal knowledge of any of these facts, and identify all documents that support or explain any of these facts.

    **ANSWER:**

4.  State in detail and with specificity all damages to MR. GREENWOOD'S insured premises located at 12198 S.W. 117th Avenue, Miami, Dade County, Florida that ARCH SPECIALTY found during its claims investigation, including but not limited to:

    -   The date ARCH SPECIALTY first had knowledge of or discovered the damage(s);
    -   Nature and extent of the damage(s);
    -   Dollar amount of the estimate of repair or remediation;
    -   ARCH SPECIALTY'S recommended remedial procedures to fix/repair the damage(s) and date it informed the insureds of such recommended remedial procedures;
    -   Date remedial procedures to fix/repair the damage(s) was/were completed; and
    -   If the damage(s) recurred after being fixed/repaired.

    State the name(s), address(es), and telephone number(s) of all persons who have personal knowledge of any of these facts, and identify all documents that support or explain any of these facts.

    **ANSWER:**

7

5.  Explain comprehensively and it detail all factual information that would show that Plaintiff's damages to the insured property was not the result of the May 12, 2005, fire.   State the name(s), address(es), and telephone number(s) of all persons who have personal knowledge of any of these facts, and identify all documents that support or explain any of these facts..

**ANSWER:**

6.  State with specificity, when and why did ARCH SPECIALTY anticipate litigation with regard to Plaintiff's cause of action.  State the name(s), address(es), and telephone number(s) of all persons who have personal knowledge of any of these facts, and identify all documents that support or explain any of these facts.

**ANSWER:**

8



7.  State the good faith factual basis for ARCH SPECIALTY'S Affirmatve Defense(s) to MR. GREENWOOD'S Complaint. Identify the date, type of document, author(s), recipient(s), and present custodian of every document known or believed by you to refer or relate in any way to the facts you contend support your Affirmative Defense(s).

    **ANSWER:**

8.  With regard to ARCH SPECIALTY'S Answer to MR. GREENWOOD'S Complaint, describe comprehensively and in detail all basis, both factual and otherwise, documents, notes, memorandum, reports,or other documentation in whatever form, that supports or substantiates ARCH SPECIALTY'S denials of any of the paragraphs of MR. GREENWOOD'S Complaint. State the name(s), address(es), and telephone number(s) of all persons who have personal knowledge of any of these facts, and identify all documents that support or explain any of these facts..

    **ANSWER:**

9



9.   Describe comprehensively and in detail each of every way you believe that MR. GREENWOOD has violated and/or failed to comply with any terms or conditions of the insurance policy, including but not limited to, cooperate with ARCH SPECIALTY'S investigation and adjustment of the loss, intentional concealment, motted and/or misrepresented any material facts or circumstances.  State the name(s), address(es), and telephone number(s) of all persons who have personal knowledge of any of these facts, and identify all documents that support or explain any of these facts.

**ANSWER:**

10.   Identify by name, author and date of report, all reports prepared by or on behalf of ARCH SPECIALTY concerning MR. GREENWOOD'S insured premises located at 12198 S.W. 117th Avenue, Miami, Dade County, Florida.  State the name(s), address(es), and telephone number(s) of all persons who have personal knowledge of any of these facts, and identify all documents that support or explain any of these facts.

**ANSWER:**

10

11.    State with specificy all dates of inspection of the insured property by any ARCH SPECIALTY Representative, including but not limited to, the name of the person(s) conducting the inspection, what areas were inspected, the length of inspection and was any estimate, report or other written memorialization created as a result of the inspection, and if yes, provide the name of the document and its date of creation. State the name(s), address(es), and telephone number(s) of all persons who have personal knowledge of any of these facts, and identify all documents that support or explain any of these facts.

**ANSWER:**

12.    State with specificity all insurance proceed payments made by ARCH SPECIALTY to the Plaintiff, including but not limited to:

-    the date of payment(s);
-    amount of payment(s);
-    reason for payment(s);
-    coverage under which payment(s) was being tendered;
-    check number(s), and
-    the documents and/or information ARCH SPECIALTY utilized to support it makings such payment(s).

State the name(s), address(es), and telephone number(s) of all persons who have personal knowledge of any of these facts, and identify all documents that support or explain any of these facts.

**ANSWER:**

11

ARCH SPECIALTY INSURANCE COMPANY,

By_____
Authorized and Designated Corporate
Representative

_____
Printed name

_____
Title

STATE OF _____

COUNTY OF_____

    The foregoing instrument was acknowledged before me this_____day

of_____, 2009, by_____ as the authorized representative of

ARCH SPECIALTY INSURANCE COMPANY, who is personally known to me or who has

produced _____as identification and who took an oath.

    IN WITNESS WHEREOF, my hand and seal in the State and County aforesaid

this_____day of_____, 2009.

_____
Signature of Person Taking
Acknowledgment

_____
Name of Acknowledger (Typed,
Printed or Stamped)

Title:  Notary Public

Commission #_____

12

IN THE CIRCUIT COURT OF THE ELEVENTH JUDICIAL CIRCUIT
IN AND FOR DADE COUNTY, FLORIDA
CIVIL DIVISION

ANTHONY GREENWOOD, d/b/a
McDONALDS,

      Plaintiff,                 Case No.

vs.

ARCH SPECIALTY INSURANCE
COMPANY,

      Defendant.
_____/

## PLAINTIFF'S FIRST REQUEST FOR PRODUCTION OF DOCUMENTS
## SERVED WITH THE COMPLAINT

Plaintiff, ANTHONY GREENWOOD, d/b/a McDONALDS (hereinafter referred to as "MR. GREENWOOD"), by and through his undersigned counsel, pursuant to the applicable Florida Rules of Civil Procedure, hereby requests the Defendant, ARCH SPECIALTY INSURANCE COMPANY ("ARCH SPECIALTY"), to produce at the office of Merlin Law Group, P.A., 777 S. Harbour Island Boulevard, Suite 950, Tampa, Florida 33602, the following documents for inspection, examination and copying within thirty (30) days, or at such time and place as may be agreed upon between counsel, the originals or, if the originals are unavailable, copies of all documents hereinafter described in the possession, custody and control of ARCH SPECIALTY.  ARCH SPECIALTY will be in compliance with this Request to Produce if ARCH SPECIALTY provides to MR. GREENWOOD'S attorney, by mail, a complete and legible copy of the requested documents prior to the date fixed for production and make arrangements for the inspection of all other items which cannot be copied at a time convenient to both MR. GREENWOOD and ARCH SPECIALTY.

### Instructions

1. You are instructed either to produce documents as they are kept in the usual course of business or to produce documents organized and labeled to correspond with the categories in this Request. Documents are to be produced in full and unexpurgated form.

2. This Request shall be deemed continuing, if permitted by Rule, so as to require further and supplemental production in the event that the party requested to produce, or any of its attorneys, agents or representatives, obtains or discovers additional information or documents between the time of the initial production and the time of hearing or trial.

3. If any documents covered by this Request are withheld by reason of a claim of privilege, work product immunity or other ground of non-production, a list is to be furnished at the time that documents are produced identifying each such documents for which the privilege is claimed specifically by its nature (e.g., letter, memorandum, etc.) together with the following information with respect to any such document withheld: author; recipient; sender; indicated or blind copies; date; subject matter; basis on which the privilege is claimed; number of pages; and the paragraph of this Request to which such document relates.

4. If a portion of an otherwise responsive document contains information that is subject to a claim of privilege, only those portions of the document subject to the claim of privilege shall be deleted or redacted from the document and the rest of the document shall be produced.

5. In the event that any document called for by this Request has been destroyed, lost, discarded or otherwise disposed of, each such document is to be identified as completely as possible, including, without limitation, the following information: author; recipient; sender; subject matter; date prepared or received; date of disposal; person currently in possession of the document; and the person disposing of the document.

6. All objections to any category of documents to be produced pursuant to this Request or to any definition or instruction it contains shall be in writing and delivered to defendant's counsel within the time provided in Florida Rule of Civil Procedure 1.350 or at such other time as is agreed upon by the parties or ordered by this Court.

7. Where identification of a document is requested, please set forth the identity of its author or originator, the date of such authorship or origination, the identity of each person to whom the original or copy was addressed or delivered, the identity of each person known or reasonably believed to have present possession, custody, or control thereof, and a brief description of the subject matter thereof.

2

8.    Where identification of a person is requested, please set forth the person's name, last-known home and business address and telephone number, and relation to Plaintiff, if any.

### Definitions

1.    "Plaintiff" means ANTHONY GREENWOOD, d/b/a McDONALDS (hereinafter referred to as "MR. GREENWOOD"), his agents, employees, and representatives.

2.    "Defendant" and/or "you" and "your" means Defendant, ARCH SPECIALTY INSURANCE COMPANY ("ARCH SPECIALTY"), individually or any representatives or agents who are authorized to act on ARCH SPECIALTY'S behalf.

3.    The term "representative" as used herein with regard to a person or entity means and includes each and every present and former director, officer, partner, employee, agent, independent consultant or expert or other person (including attorneys), such as friends, relatives and spouse, acting or purporting to act on behalf of the person or entity.

4.    The term "document" or "documents" is used in its broadest sense and includes, without limitation, drafts, documents whether printed, recorded, stored or reproduced by any mechanical or electronic process, or written or produced by hand, and including computer tapes (including backup tapes) and all other computer-related documents, within your possession, custody or control. "Documents" shall also include (1) each copy that is not identical to the original or to any other copy, and (2) any tangible thing that is called for by or identified in response to any request. "Document" as used herein shall be construed broadly to include all documents and things within the scope of Florida Rule of Civil Procedure 1.340 and refers to all writings or other graphic matter, as well as any other medium by which information is stored or recorded. It includes originals, drafts, copies and reproductions; and it includes, without limiting the generality of the foregoing, letters; memoranda; reports and/or summaries of investigations; police reports; accident reports; opinions or reports of consultants; diagrams; marginal comments appearing on any documents; accounts; telegrams; studies; lists of persons attending meetings or conferences; records or memoranda of telephone conversations; written statements; transcripts or recorded statements; recorded statements; records of personal conversations or interviews; calculations; computations; specifications; drawings; advertisements; circulars; trade letters; press releases; prints; recordings; positive or negative films, slides or photographs; magnetic, electronic or video tapes; computer tapes, cards or printouts; and all other things of like nature; and any and all containers, boxes or other receptacles or repositories housing or containing such "documents."

3

5. The term "communication" shall mean any transmission of information by any means, including, without limitation, by spoken language, electronic transmission of data or any other means. The term "communication" shall include, without limitation, any copies of written information received by the person or entity responding to this request, even if such person or entity is not the primary or direct addressee of such written information.

6. The term "referring" or "relating" shall mean showing, disclosing, averting to, comprising, evidencing, constituting or reviewing.

7. "Person" means a natural person, firm, association, partnership, corporation or other form of legal or business entity, public or private.

8. The singular includes the plural and vice versa; the words "and" and "or" shall be both conjunctive and disjunctive; the word "all" means "any and all"; the word "any" means "any and all"; the word "including" means "including, with limitation."

9. All other words have their plain and ordinary meaning.

4

## FIRST REQUEST FOR DOCUMENTS TO BE PRODUCED

1.  Copies of all documentation of whatever kind or nature in your possession, custody or control (excluding privileged and protected information and documentation) concerning Plaintiff's claim of loss that occurred on or about May 12, 2005, and all files relating to ARCH SPECIALTY'S insured, MR. GREENWOOD, and his claim for damages to his insured property located at 12198 S.W. 117th Avenue, Miami, Dade County, Florida, including but not limited to, certified copies of any insurance policies, recorded statements, documentation of the claim such as proofs of loss, damage estimates, agreements (mediation or otherwise), reports or memoranda by ARCH SPECIALTY'S adjuster regarding the extent of damage and the reasons for payment, delay, withholding, or denial of the claim.

2.  Copies of all documentation of whatever kind or nature in your possession, custody or control concerning prior or subsequent insurance claim(s) (excluding privileged and protected information and documentation) made by ARCH SPECIALTY'S insured, MR. GREENWOOD, to either ARCH SPECIALTY or some other insurance carrier regarding claim(s) of loss other than the May 12, 2005, claim, including but not limited to, copies of any insurance policies, recorded statements, documentation of the claim such as proofs of loss, damage estimates, reports or memoranda by the insurance adjuster regarding the extent of damage and the reasons for payment or denial of the claim and copies of any and all letters to or from the insurance carrier which deny the claim, as well as copies of all correspondence to or from the insured regarding this claim(s).

3.  Copies of all recorded or transcribed statements taken by you, your representative(s) and/or your attorneys, of any persons having knowledge of any facts relating to any of the issues in this case.

4.  Copies of all correspondence, notices, reports or other communications between you and your representatives and MR. GREENWOOD and/or his representatives regarding the fire at the insured premises located at 12198 S.W. 117th Avenue, Miami, Dade County, Florida.

5.  Copies of all documents, including but not limited to, correspondence, notes, reports, memoranda, calendars, journals, telephone messages, notices, e-mails, etc., which in anyway relate to inquires, investigations, criminal charges and meetings by or with civil authorities concerning the May 12, 2005, fire which is the subject of MR. GREENWOOD'S Complaint. This includes, but is not limited to, city, county, state and federal authorities.

6.  Copies of all letters from ARCH SPECIALTY that deny, authorize payment or withhold payment, of MR. GREENWOOD'S claim that is the subject of this litigation, as well as copies of all correspondence to or from MR. GREENWOOD regarding this claim.

5

7.    Copies of all documents in your possession, custody or control relating to the insured premises located at 12198 S.W. 117th Avenue, Miami, Dade County, Florida including but not limited to: photographs, estimates, sketches, drawings, field notes, reports relied upon by you, reports prepared by you or prepared for you or on your behalf or on behalf of ARCH SPECIALTY in this litigation regarding MR. GREENWOOD'S May 12, 2005, claim as well as any and all original photographs and/or videotapes taken of the insured property in question, in addition, all photographic logs and videotape logs related to such photographs or videotapes.

8.    Copies of all damage inventories received by you and upon which you relied in reaching your conclusions concerning valuation of the loss.

9.    Copies of all documents relied upon by you in reaching any conclusions regarding MR. GREENWOOD'S insurance claims, all books, tables, depreciation tables, guides, price lists, whatsoever used by you in determining the valuation of the property of MR. GREENWOOD, the methods of computation used by you in arriving at valuation figures for the property, all reports, calculations, estimates and the like relied upon by you In arriving at any and all figures used in determining the damage to the property.

10.    Any and all documents, statements, notes, measurements, test results and related materials relied upon by you in reaching your conclusion to deny or refuse, withhold, delay, or authorize payment of this claim.

11.    With respect to Interrogatory No. 3, served concurrently with this Request for Production of Documents, produce any and all documents or records, in whatever form, upon which you base your response to this Interrogatory.

12.    With respect to Interrogatory No. 4, served concurrently with this Request for Production of Documents, produce any and all documents or records, in whatever form, which you base your response to this Interrogatory.

13.    With respect to Interrogatory No. 5 and 5(A), served concurrently with this Request for Production of Documents, produce any and all documents or records, in whatever form, which you base your response to this Interrogatory.

14.    With respect to Interrogatory No. 6, 6(A), and 6(B), served concurrently with this Request for Production of Documents, produce any and all documents or records, in whatever form, which you base your response to this Interrogatory.

15.    With respect to Interrogatory No. 7, served concurrently with this Request for Production of Documents, produce any and all documents or records, in whatever form, which you base your response to this Interrogatory.

16.    With respect to Interrogatory No. 8, served concurrently with this Request for Production of Documents, produce any and all documents or records, in

6

whatever form, which you base your response to this Interrogatory.

17.  With respect to Interrogatory No. 9, served concurrently with this Request for Production of Documents, produce any and all documents or records, in whatever form, which you base your response to this Interrogatory.

18.  With respect to Interrogatory No. 10, served concurrently with this Request for Production of Documents, produce any and all documents or records, in whatever form, which you base your response to this Interrogatory.

19.  With respect to Interrogatory No. 11, served concurrently with this Request for Production of Documents, produce any and all documents or records, in whatever form, which you base your response to this Interrogatory.

20.  With respect to Interrogatory No. 12, served concurrently with this Request for Production of Documents, produce any and all documents or records, in whatever form, which you base your response to this Interrogatory.

21.  With respect to Interrogatory No. 13, served concurrently with this Request for Production of Documents, produce any and all documents or records, in whatever form, which you base your response to this Interrogatory.

22.  Copies of any report, printout, log, in whatever form, of all cases/claims that ARCH SPECIALTY'S expert(s) and/or their professional associations, retained in this case, were retained to perform any other review(s), analysis, or examination(s) of claimant(s), plaintiff(s) and/or insured(s) claim(s) or cause(s) of action(s) for ARCH SPECIALTY in other cases/claims within the last three (3) years.[1]

23.  Copies of any report, printout, log, in whatever form, of all cases/claims that ARCH SPECIALTY'S expert(s) and/or their professional associations, retained in this case, testified on ARCH SPECIALTY'S behalf, including but not limited to, affidavits, deposition or trial testimony, within the last three (3) years.[2]

24.  Copies of any report, printout, log, in whatever form, of the amount of monies (and dates of payment) ARCH SPECIALTY paid to its expert(s) and/or their professional associations in this case, within the last three (3) years, to perform any review(s), analysis, or examination(s) of claimant(s), plaintiff(s) and/or insured(s) claim(s) or cause(s) of action(s).[3]

---

[1]    Note: this area of inquiry is limited to only those experts who were retained to perform any review(s), analysis, or examination(s) of claimant(s), plaintiff(s) and/or insured(s) claim(s) or cause(s) of action(s) that concern, refer, or relate to any issue(s) of this cause of action.

[2]    Same limitations as outlined footnote one.

[3]    Same limitations as outlined footnote one.

7

25. Copies of all reports or other documents of all expert witnesses who you will or may call to testify at the trial of this litigation.

26. Copies of all documents you intend to offer as evidence, the foundation for the introduction of any evidence, any evidence you may use to refresh the memory of any witness you may call to testify at the trial of this litigation, or any document you may ask the Court to take judicial notice of.

27. All written documents, transcripts, memoranda, invoices, statements, and any other similar documents as defined and allowed by the Florida Rules of Civil Procedure which are not privileged which support any and all alleged damages sustained by MR. GREENWOOD with respect to the pending action.

28. As permitted by Florida Rule of Civil Procedure 1.350, permit MR. GREENWOOD and/or his representatives access to all samples, *e.g.*, debris, etc., taken and submitted for testing by ARCH SPECIALTY and/or its representatives for the purpose of inspection and measuring, surveying, photographing, testing (non destructive), or sampling (non destructive) of the samples themselves. In compliance with the foregoing request, provide alternative dates and times that MR. GREENWOOD and/or his representatives may carry out the foregoing.

29. A copy, pursuant to Fla. Stat. §627.4137 (2008), of ARCH SPECIALTY'S "a statement, under oath, of a corporate officer or the insurer's claims manager or superintendent setting forth the following information with regard to each known policy of insurance . . . : (d) A statement of any policy or coverage defense which such insurer reasonably believes is available to such insurer at the time of filing such statement."

30. A copy of the entire underwriting file pertaining to the insured property located at 12198 S.W. 117th Avenue, Miami, Dade County, Florida. This request is being made pursuant to the provisions of Florida Statue §119.07(1) and Florida Statue §24(a), Article 1 of the Florida State Constitution. Additional, Florida Statute §627.351(6)(n)(1) provides for the production of such records at the policyholders request.

31. A Certified copy, pursuant to Fla. Stat. §627.4137 (2008), of MR. GREENWOOD'S insurance policy, including Declarations page, riders, endorsements, schedules, etc., that were in effect at the time of the insurance claim at issue in the lawsuit.

8

## CERTIFICATE OF SERVICE

I HEREBY CERTIFY that a true and correct copy of the foregoing has been furnished via U.S. Mail, postage prepaid, to Insurance Commissioner, Process Section, 200 E. Gaines Street, Post Office Box 6200, Tallahassee, Florida 32314-6100, for service upon the Defendant with the Complaint.

DAVID J. PETTINATO, ESQUIRE
Florida Bar Number: 062324
MERLIN LAW GROUP, P.A.
777 S. Harbour Island Blvd, Ste 950
Tampa, Florida 33602
Telephone: (813) 229-1000
Fax: (813) 229-3692
Email: DPettinato@merlinlawgroup.com
Attorney for Plaintiff

9

IN THE CIRCUIT COURT OF THE ELEVENTH JUDICIAL CIRCUIT
IN AND FOR DADE COUNTY, FLORIDA
CIVIL DIVISION

ANTHONY GREENWOOD, d/b/a
McDONALDS,

       Plaintiff,

                                  Case No.: 09-65565 CA 04

vs.

ARCH SPECIALTY INSURANCE
COMPANY,

       Defendant.

_____/

## ANSWER, AFFIRMATIVE DEFENSES AND DEMAND FOR JURY TRIAL

Defendant, ARCH SPECIALTY INSURANCE COMPANY, (hereinafter referred to as "Arch"), by and through its undersigned counsel, responds to the Complaint filed herein as follows:

### GENERAL ALLEGATIONS

1.    Admitted for jurisdictional purposes only; otherwise denied.

2.    Defendant is without knowledge as to the allegations contained in Paragraph No. 2 of Plaintiff's Complaint, and therefore denies all allegations, and demands strict proof thereof.

3.    Admitted that the insured premises sustained some repairable damage due to fire. Otherwise; denied.

4.    Admitted.

5.    Admitted.

6.    Admitted that Arch Specialty Insurance Company issued policy number 12 PRP 34794 00; otherwise, the policy speaks for itself in all its terms and conditions;

therefore denied.

7.    Admitted that Arch Specialty Insurance Company issued policy number 12 PRP 34794 00; otherwise, the policy speaks for itself in all its terms and conditions; therefore denied.

8.    Admitted that Arch Specialty Insurance Company issued policy number 12 PRP 34794 00; otherwise, the policy speaks for itself in all its terms and conditions; therefore denied.

9.    Denied.

10.    Admitted.

11.    Admitted.

12.    Denied.

13.    Admitted that Arch Specialty Insurance Company inspected the insured property following the loss and adjusted the claim in light of those inspections; otherwise denied.

14.    Denied.

15.    Admitted that Arch Specialty Insurance Company issued policy number 12 PRP 34794 00; otherwise, the policy speaks for itself in all its terms and conditions; therefore denied.

16.    Admitted that Arch Specialty Insurance Company issued policy number 12 PRP 34794 00; otherwise, the policy speaks for itself in all its terms and conditions; therefore denied.

17.    Admitted that Arch Specialty Insurance Company issued policy number 12 PRP 34794 00; otherwise, the policy speaks for itself in all its terms and conditions;

2

therefore denied.

### Count I - Breach of Contract

18.  Defendants reasserts its responses 1 - 17 above as if fully set forth herein.

19.  Admitted that Plaintiff has characterized his cause of action as a breach of contract; otherwise denied.

20.  Admitted.

21.  Denied.

22.  Admitted.

23.  Denied.

24.  Denied.

25.  Denied.

26.  Denied.  The Plaintiff continues to refuse to provide the documents requested, in abrogation of his duties and obligation under the terms and conditions of the policy and to the prejudice of Arch.

27.  Denied.

28.  Denied.

29.  Denied.

30.  Denied.

WHEREFORE, the Defendant, ARCH INSURANCE COMPANY, respectfully prays for judgment in  favor, costs of this action, and such other relief as the Court deems appropriate under the circumstances. Defendant demands a trial by jury on all issues so triable as a matter of right.

3

## Count II - Declaratory Judgment

31.  Defendants reasserts its responses 1 - 17 above and 18 - 30 above as if fully set forth herein.

32-39.  Defendant asserts that Paragraphs 32 through 39 are the subject of Arch Specialty Insurance Company's Motion to Dismiss filed separately by Arch Specialty Insurance Company , a copy of which attached hereto as Exhibit "A". To the extent that the Court determines that said Paragraphs require a response while the Motion to Dismiss is Pending, they are denied.

40.  All allegations not expressly admitted are denied.

### AFFIRMATIVE DEFENSES

### First Affirmative Defense

Arch has paid the insured all amounts owed under the policy to include the undisputed replacement cost of the building (less deductible) Business interruption coverage and full payment for lost or damaged business personal property.  Defendant may not claim those amounts or any other amounts are due under the policy's terms and conditions.

### Second Affirmative Defense

Plaintiff breached the policy of insurance when it willfully refused to provide the documentation Arch requested during its adjustment of the claim including but not limited to the detailed documentation regarding the replacement cost value asserted by Plaintiff and any documentation that might support Plaintiff's assertion that it was required by law and ordinance to demolish the structure rather than make repairs.

4

### Third Affirmative Defense

By its terms and conditions, the policy limits benefits for costs incurred as a result of the imposition of laws and ordinances.

### Fourth Affirmative Defense

The provision regarding appraisal may only be invoked when the basis for the parties disagreement is the amount of the loss.  In the instant case, the insured has demanded payment for increased costs to demolish and rebuild its restaurant that were caused by the insured's business preferences and the preferences of its franchiser.  Arch has paid all other aspects of the claim.  Arch has asserted those costs are not covered under the terms and conditions of the policy.  As the dispute between the parties is wholly dependant upon a coverage determination, it does not implicate the appraisal clause in the contract between the parties.  The policy expressly provides:

B.      APPRAISAL

If the insured and the Company fail to agree on the amount of loss, each will, on the written demand of either, select a competent and disinterested appraiser after:

1)      the insured has fully complied with all provisions of this Policy, including REQUIREMENTS IN CASE OF Loss; and

2)      the Company has received a signed and sworn proof of loss from the Insured.

Each will notify the other of the appraiser selected within 20 days of such demand.

The appraisers will first select a competent and disinterested umpire. The appraisers have 30 days to agree on an umpire. After that time, either the Insured or the Company may request that an umpire will be selected by a judge. The judge must be a judge of a court of record in the jurisdiction in which the appraisal is pending. The appraisers will then appraise the amount of loss. Each appraiser will state separately the Actual Cash Value and

5

replacement cost value. Those values will be as of the date of loss and the amount of loss, for each item of physical loss or damage.

If the appraisers fail to agree, they will submit their differences to the umpire. An award agreed to in writing by any two will determine the amount of loss. The Insured and the Company will each:

      1)    pay its chosen appraiser; and
      2)    bear equally the other expenses of the appraisal and umpire.

A demand for APPRAISAL shall not relieve the Insured of its continuing obligation to comply with the terms and conditions of this Policy, including as provided under REQUIREMENTS TN CASE OF LOSS.

The Company will not be held to have waived any of its rights by any act relating to appraisal.

Arch asserts that, under the specific terms and conditions of the policy, the coverage question at issue in this case is outside the scope of the appraisal process and the question of whether there is coverage for the costs now claimed by the Plaintiff is exclusively a judicial question.

### Fifth Affirmative Defense

Arch asserts that, under the specific terms and conditions of the policy, the Plaintiff may not demand appraisal before he has fully complied with all provisions of this Policy

### Sixth Affirmative Defense

By its actions, Plaintiff has waived any right to appraisal under the terms and conditions of the contract.

### Seventh Affirmative Defense

Neither Florida Law nor the terms and conditions of the contract require Arch to include the insured as a participant in the conduct of Arch's adjustment of the claim or provide "discovery" of Arch's documents to the insured during Arch's adjustment of the

6

claim.

WHEREFORE, the Defendant, ARCH INSURANCE COMPANY, respectfully prays for judgment in  favor, costs of this action, and such other relief as the Court deems appropriate under the circumstances. Defendant demands a trial by jury on all issues so triable as a matter of right.

BUTLER PAPPAS WEIHMULLER KATZ CRAIG LLP

WILLIAM R. LEWIS, ESQ.
Florida Bar No.: 879827
JOHN V. GARAFFA, ESQ.
Florida Bar No.:  0554308
777 S. Harbour Island Boulevard
Suite 500
Tampa, Florida  33602
Telephone:   (813) 281-1900
Facsimile:    (813) 281-0900
jgaraffa@butlerpappas.com
Attorneys for Defendant(s)

## CERTIFICATE OF SERVICE

I certify that a copy hereof has been furnished to:

David J. Pettinato, Esq.
Merlin Law Group, P.A.
777 S. Harbour Island Boulevard
Suite 950
Tampa, FL  33602

by U.S. Mail on September _29_, 2009.

JOHN V. GARAFFA, ESQ.

7

IN THE CIRCUIT COURT OF THE ELEVENTH JUDICIAL CIRCUIT
IN AND FOR DADE COUNTY, FLORIDA
CIVIL DIVISION

ANTHONY GREENWOOD, d/b/a
McDONALDS,

      Plaintiff,

                                Case No.: 09-65565 CA 04

vs.

ARCH SPECIALTY INSURANCE
COMPANY,

      Defendant.

_____/

### ARCH SPECIALTY INSURANCE COMPANY INSURANCE COMPANY'S MOTION TO DISMISS COUNT II OF THE COMPLAINT BY ANTHONY GREENWOOD, d/b/a McDONALDS

ARCH SPECIALTY INSURANCE COMPANY ("Arch"), by and through its undersigned counsel, hereby files this its Motion to Dismiss Count II of the Counter Claim by Defendant Anthony Greenwood, d/b/a McDonalds, ("Greenwood") and states the following:

1.    On or about September 15, 2009, Greenwood Served Arch with its complaint.

2.    Greenwood's complaint was divided into two counts.

3.    Count I, paragraphs 23-30, of Greenwood's complaint, asserts

    23.    MR. GREENWOOD has repeatedly requested that ARCH SPECIALTY pay his damages; ARCH SPECIALTY has failed and/or refused, and continues to refuse to pay the full damages despite knowing it is required to do so.

    24.    ARCH SPECIALTY completed its own POL and demanded that MR. GREENWOOD signed its own POL'S even though the listed amount of insurance benefits was less than the insured's actual damages. (See attached composite Exhibit "C"). A blank POL should have been provided by ARCH SPECIALTY to MR. GREENWOOD, instead of a POL already filled out, with a dollar amount for the undisputed owed



EXHIBIT
A

insurance benefits, by ARCH SPECIALTY. ARCH SPECIALTY, therefore, refused to tender undisputed owed insurance benefits to MR. GREENWOOD until he signed a ARCH SPECIALTY POL with an incorrect claim amount. (See attached Exhibit "D"). ARCH SPECIALTY has, therefore, breached The Policy.

25.    On or about March 24, 2009, MR. GREENWOOD demanded appraisal multiple times under the policy since the parties were in dispute as to the amount of the loss.. ARCH SPECIALTY wrongfully rejected and/or denied MR. GREENWOOD'S demand for appraisal. (See attached composite Exhibit "E"). ARCH SPECIALTY has, therefore, breached The Policy.

26.    MR. GREENWOOD has done and performed all those matters and things properly required of him under the insurance policy, or alternatively, has been excused from performance of the acts, representations, omissions, and/or conduct of ARCH SPECIALTY.

27.    Notwithstanding the foregoing, ARCH SPECIALTY has failed and refused to provide full coverage under The Policy to the damages to MR. GREENWOOD'S insured property and ARCH SPECIALTY has failed to promptly pay all the amounts due and has thereby breached its contract of insurance.

28.    Upon information and belief, MR. GREENWOOD requested ARCH SPECIALTY assist him in "Adjusting the Loss" with him, by providing MR. GREENWOOD with all documents and evaluations of ARCH SPECIALTY'S damages estimates, damage expert's reports and/or opinions, scope(s) of the extent and nature of the damages both covered and uncovered, and reasons why ARCH SPECIALTY asserted that any claimed damaged were not covered, but ARCH SPECIALTY failed to produce all documents related to the extent and scope of the claimed damages. This was a breach of The Policy.

   A.    As a direct result thereof, MR. GREENWOOD was required to borrow money and pay interest on it to rebuild his restaurant;

   B.    ARCH SPECIALTY refused to acknowledge MR. GREENWOODS experts, the applicable Florida Building Code, code requirements and what MR.GREENWOOD was required to actually pay to rebuild his restaurant and put it back into a pre loss condition,

29.    As a direct result of ARCH SPECIALTY'S breach of its insurance contract, MR. GREENWOOD has lost benefits of his insured property,

2

and continues to suffer the loss.

4.    Count II, paragraphs 31-39, of Greenwood's complaint, is a petition for Declaratory Relief asserting that a bona fide controversy has arisen as to the following matters:

A.    Did MR. GREENWOOD have a right to be able to demand appraisal under The Policy, and did ARCH SPECIALTY have a right to refuse the insured's appraisal demand?;

B.    Did ARCH SPECIALTY wrongfully refuse to tender insurance benefits to MR. GREENWOOD?;

C.    Did MR. GREENWOOD comply with all terms and conditions of The Policy so as to have a right to be able to demand appraisal?;

D.    Did MR. GREENWOOD comply with all terms and conditions of The Policy so as to receive owed insurance benefits?;

E.    that ARCH SPECIALTY knowingly, intentionally and/or voluntarily waived and/or relinquished any right it may have had to deny coverage for MR. GREENWOOD'S insurance claim as a result of any alleged failure to comply with The Policy's terms and conditions, including for example, but not limited to the following terms and conditions: failure to appear for EUO, failure to produce records and documents, failure to permit inspection, failure to mitigate, failure to cooperate, untimely notice, failure to comply with conditions before suit, etc.?;

F.    that ARCH SPECIALTY may not withhold undisputed insurance benefits to MR. GREENWOOD until MR. GREENWOOD executes a POL completed by ARCH SPECIALTY?;

G.    Whether ARCH APECIALTY had a contractual right to refuse to proceed with appraisal and/or designate its named appraiser after MR. GREENWOOD demanded appraisal pursuant to The Policy?;

H.    Whether ARCH SPECIALTY had a contractual right to place additional terms and conditions upon the insured prior to tendering payment and/or agreeing to proceed with appraisal?;

I.    Whether ARCH SPECIALTY had the contractual right to reject MR. GREENWOOD'S submission of its executed Sworn Statement in Proof of Loss?; and

3

J.    Did ARCH SPECIALTY wrongfully refuse to timely tender insurance benefits to MR. GREENWOOD?

5.    Count II requests the Court to enter judgment against Arch and in favor of Plaintiff

A.    as to Paragraph 34(A) through (J)

B.    seeks a declaratory judgment that:

(1)    the insurance contract, Policy No. 12PRP3479400, between Plaintiff and Defendant is a valid and enforceable contract,

(2)    that pursuant to the terms and conditions of the insurance contract, Plaintiff holds a valid and enforceable right to property insurance coverage for damages from the accidental tire, and costs of this action; attorneys fees and such other and further relief as this Court may deem just and proper.

6.    The areas of "bona fide controversy" asserted by the Plaintiff in Count II for Declaratory Judgment are simply a statement of the factual issues that underlie the breach of contract claim asserted under Count I of Greenwood's complaint.

7.    Despite the fact that Court II asks the Court to decide all the factual issues underlying Count I for breach of contract, Plaintiff nonetheless requests a trial by jury on the same factual issues that he asks the Court to resolve under the Count II for declaratory judgment.

8.    For Plaintiff to prevail on the breach of contract claim under Count I, he will prove to the trier of fact that:

A.    Mr. Greenwood had a right to be able to demand appraisal under The

4

Policy, and ARCH did not have the right to refuse the insured's appraisal demand on the grounds that it would require the appraisal of the coverage defense asserted by Arch.

B.      That ARCH's coverage defense was unsupported by the facts and the policy and that therefore Arch breached the contract by not paying Mr. Greenwood the full amount of his demand.

C.      Mr. Greenwood's refusal to provide some of the documents request by Arch during the adjustment was not a breach of his duty to cooperate.

D.      that Arch's actions resulted in a knowing, intentional and/or voluntary waiver and/or relinquishment of any right it may have had to deny coverage for Mr. Greenwood's insurance claim as a result of any alleged failure to comply with The Policy's terms and conditions, including for example, but not limited to the following terms and conditions: failure to appear for EUO, failure to produce records and documents, failure to permit inspection, failure to mitigate, failure to cooperate, untimely notice, and failure to comply with conditions before suit.

E.      that Arch was not entitled to withhold undisputed insurance benefits to Mr. Greenwood until Mr. Greenwood executed a POL completed by Arch

F.      Arch breached the contract by placing asserting terms and conditions prior to tendering payment and/or agreeing to proceed with appraisal

5

G.    Arch breached the contract by rejecting Mr. Greenwood's submission of its executed Sworn Statement in Proof of Loss; and

H.    Arch breached the contract by "refusing to timely tender insurance benefits to Mr. Greenwood"

Thus, if Plaintiff prevails on its contractual claim, the plea for declaratory relief will be moot.

9.    If Plaintiff does not prevail on the contractual claim under Count I, either because the because the trier of fact determines Greenwood has been properly paid under the terms and conditions of the policy, or that Greenwood has breeched the contract of insurance itself, Plaintiff's Count for declaratory relief will be moot.

10.    As set out below in the Memorandum of Law, the Courts in Florida do not entertain declaratory judgment claims when the issues of coverage are dependent on resolution of fact issues common to an underlying liability action and the petition for declaratory relief contained in Count II of Greenwood's counterclaim should therefore be dismissed.

## Memorandum of Law

11.    The goals of the Declaratory Judgment Act[1] are to relieve litigants of the

---

[1] Florida Statute §§86.021. Power to construe

Any person claiming to be interested or who may be in doubt about his or her rights under a deed, will, contract, or other article, memorandum, or instrument in writing or whose rights, status, or other equitable or legal relations are affected by a statute, or any regulation made under statutory authority, or by municipal ordinance, contract, deed, will, franchise, or other article, memorandum, or instrument in writing may have determined any question of construction or validity arising under such statute, regulation, municipal ordinance, contract, deed, will, franchise, or other article, memorandum, or instrument in writing, or any part thereof, and obtain a declaration of rights, status, or other equitable or

6

common-law rule that a declaration of rights cannot be adjudicated unless the right has been violated and to render practical help in ending controversies which have not reached stage where other legal relief is immediately available.[2]  It affords parties relief from insecurity and uncertainty with respect to rights, status, and other equitable or legal relations.[3]

  12. The standard for testing sufficiency of declaratory judgment complaint is that, before any proceeding for declaratory relief should be entertained, it should be clearly made to appear that:

  (1) there is bona fide, actual, present practical need for declaration;

  (2) that declaration should deal with present, ascertained or ascertainable state of facts or present controversy as to stated facts; that some immunity, power, privilege or right of complaining party is dependent on fact or law applicable to facts;

  (3) that there is some person or persons who have, or reasonably may have actual, present, adverse and antagonistic interest in subject matter, either in fact or law;

  (4) that antagonistic and adverse interests are all before court by proper process or class presentation and

  (5) that relief sought is not merely giving of legal advice by courts or answer to questions propounded from curiosity.[4]

  13. The complaint must state more than a request to determine the rights of the parties under the contract in light of the facts.  There must be a real doubt as to the

---

legal relations thereunder.

  [2] State, Dept. of Educ. v. Glasser, App. 2 Dist., 622 So.2d 1003 (1992), reversed 622 So.2d 944.

  [3] Coalition for Adequacy and Fairness in School Funding, Inc. v. Chiles, 680 So.2d 400 (1996), rehearing denied.

  [4] City of Hollywood v. Florida Power & Light Co., App. 4 Dist., 624 So.2d 285 (1993), clarified.

7

meaning of the contract language. Thus, in <u>Johnson v. Atlantic Nat. Ins. Co.</u>,[5] the Court held the complaint by the insurer containing allegations of non-liability on basis of insured's breach of duty to give it written notice of accident was insufficient to state a cause of action for declaratory relief. The Court held that the failure of complaint to contain allegations as to a doubt or need for construction of the policy or for determination of validity was fatal to the request for declaratory relief.

14.    Where the complainant has alleged a contractual claim as well as a count for declaratory judgment, the courts will entertain the declaratory judgment claim so long as issues of coverage are not dependent on resolution of fact issues common to underlying liability action.[6] Where the only "doubt" in a declaratory judgment action is a factual one, a declaratory judgment action is inappropriate.[7] Put another way, the Declaratory Judgment statute is not available to settle factual issues bearing on liability under a contract which is clear and unambiguous and which presents no need for its construction.[8]

---

[5]  <u>Johnson v. Atlantic Nat. Ins. Co.</u>, App. 3 Dist., 155 So.2d 886 (1963).

[6]
<u>Britamco Underwriters, Inc. v. Central Jersey Investments, Inc.</u>, App. 4 Dist., 632 So.2d 138 (1994). In <u>Britamco</u>, the Insurer who had a bona fide coverage dispute with its insurer. The court held that it was entitled to litigate coverage issue in separate declaratory judgment action, while simultaneously defending insured under reservation of rights in underlying liability action.

[7]  See: <u>Columbia Cas. Co. v. Zimmerman</u>, 62 So.2d 338 (1953); <u>Smith v. Milwaukee Ins. Co. of Milwaukee, Wis.</u>, App., 197 So.2d 548 (1967). Where only doubt in declaratory judgment action to determine automobile liability insurer's liability for injuries inflicted when insured's automobile was being driven by another was whether the automobile was being driven with insured's knowledge and consent, such action would not lie.

[8]
<u>Burns v. Hartford Acc. & Indem. Co.</u>, App. 3 Dist., 157 So.2d 84 (1963). See also: <u>Smith v. Milwaukee Ins. Co. of Milwaukee, Wis.</u>, App. 4 Dist., 197 So.2d 548 (1967), certiorari

8

15.    Greenwood does not assert that the provisions of the policy are confusing or that there is any doubt as to their meaning.   In fact, Greenwood describes the dispute as a series of factual questions bearing on the issue of whether Arch has breached the contract of insurance.

16.    These are the very factual issues that must necessarily be resolved by the trier of fact in its resolution of the breach of contract claim asserted in Count I.

WHEREFORE, Arch respectfully requests that this Honorable Court grant its motion to dismiss the petition for declaratory relief contained in Count II of Greenwood's Counterclaim, and for such other relief as this Court deems appropriate.

BUTLER PAPPAS WEIHMULLER KATZ CRAIG LLP

WILLIAM R. LEWIS, ESQ.
Florida Bar No.: 879827
JOHN V. GARAFFA, ESQ.
Florida Bar No.: 0554308
777 S. Harbour Island Boulevard
Suite 500
Tampa, Florida  33602
Telephone:    (813) 281-1900
Facsimile:    (813) 281-0900
jgaraffa@butlerpappas.com
Attorneys for Defendant(s)

---

dismissed 204 So.2d 332. The use of declaratory proceedings is not available where object of the proceedings is to try disputed questions of fact as determinative issue rather than to seek a construction of definite stated rights, status or other relations., Johnson v. Atlantic Nat. Ins. Co.; App. 3 Dist., 155 So.2d 886 (1963). In order for a party to be entitled to declaratory relief, a question must be raised either of construction or of validity of a contract or instrument in writing, and Columbia Cas. Co. v. Zimmerman, 62 So.2d 338 (1952). In order for declaratory judgment action to lie, there must be some doubt as to existence or nonexistence of some right, status, immunity, power or privilege, which may be at stake under a deed, will, contract, or other article, memorandum or instrument in writing.

9

## CERTIFICATE OF SERVICE

I certify that a copy hereof has been furnished to:

David J. Pettinato, Esq.
Merlin Law Group, P.A.
777 S. Harbour Island Boulevard
Suite 950
Tampa, FL  33602

by U.S. Mail on September _2 9_, 2009.

JOHN V. GARAFFA, ESQ.

10

.                                        .

IN THE CIRCUIT COURT OF THE ELEVENTH JUDICIAL CIRCUIT
IN AND FOR DADE COUNTY, FLORIDA
CIVIL DIVISION

ANTHONY GREENWOOD, d/b/a
McDONALDS,

       Plaintiff,

                              Case No.: 09-65565 CA 04

vs.

ARCH SPECIALTY INSURANCE
COMPANY,

       Defendant.

_____/

### ARCH SPECIALTY INSURANCE COMPANY INSURANCE COMPANY'S MOTION TO DISMISS COUNT II OF THE COMPLAINT BY ANTHONY GREENWOOD, d/b/a McDONALDS

ARCH SPECIALTY INSURANCE COMPANY ("Arch"), by and through its undersigned counsel, hereby files this its Motion to Dismiss Count II of the Counter Claim by Defendant Anthony Greenwood, d/b/a McDonalds, ("Greenwood") and states the following:

1.     On or about September 15, 2009, Greenwood Served Arch with its complaint.

2.     Greenwood's complaint was divided into two counts.

3.     Count I, paragraphs 23-30, of Greenwood's complaint, asserts

     23.     MR. GREENWOOD has repeatedly requested that ARCH SPECIALTY pay his damages; ARCH SPECIALTY has failed and/or refused, and continues to refuse to pay the full damages despite knowing it is required to do so.

     24.     ARCH SPECIALTY completed its own POL and demanded that MR. GREENWOOD signed its own POL'S even though the listed amount of insurance benefits was less than the insured's actual damages. (See attached composite Exhibit "C"). A blank POL should have been provided by ARCH SPECIALTY to MR. GREENWOOD, instead of a POL already filled out, with a dollar amount for the undisputed owed

insurance benefits, by ARCH SPECIALTY. ARCH SPECIALTY, therefore, refused to tender undisputed owed insurance benefits to MR. GREENWOOD until he signed a ARCH SPECIALTY POL with an incorrect claim amount. (See attached Exhibit "D"). ARCH SPECIALTY has, therefore, breached The Policy.

25.    On or about March 24, 2009, MR. GREENWOOD demanded appraisal multiple times under the policy since the parties were in dispute as to the amount of the loss.. ARCH SPECIALTY wrongfully rejected and/or denied MR. GREENWOOD'S demand for appraisal. (See attached composite Exhibit "E"). ARCH SPECIALTY has, therefore, breached The Policy.

26.    MR. GREENWOOD has done and performed all those matters and things properly required of him under the insurance policy, or alternatively, has been excused from performance of the acts, representations, omissions, and/or conduct of ARCH SPECIALTY.

27.    Notwithstanding the foregoing, ARCH SPECIALTY has failed and refused to provide full coverage under The Policy to the damages to MR. GREENWOOD'S insured property and ARCH SPECIALTY has failed to promptly pay all the amounts due and has thereby breached its contract of insurance.

28.    Upon information and belief, MR. GREENWOOD requested ARCH SPECIALTY assist him in "Adjusting the Loss" with him, by providing MR. GREENWOOD with all documents and evaluations of ARCH SPECIALTY'S damages estimates, damage expert's reports and/or opinions, scope(s) of the extent and nature of the damages both covered and uncovered, and reasons why ARCH SPECIALTY asserted that any claimed damaged were not covered, but ARCH SPECIALTY failed to produce all documents related to the extent and scope of the claimed damages. This was a breach of The Policy.

    A.    As a direct result thereof, MR. GREENWOOD was required to borrow money and pay interest on it to rebuild his restaurant;

    B.    ARCH SPECIALTY refused to acknowledge MR. GREENWOODS experts, the applicable Florida Building Code, code requirements and what MR.GREENWOOD was required to actually pay to rebuild his restaurant and put it back into a pre loss condition,

29.    As a direct result of ARCH SPECIALTY'S breach of its insurance contract, MR. GREENWOOD has lost benefits of his insured property,

2

and continues to suffer the loss.

4.    Count II, paragraphs 31-39, of Greenwood's complaint, is a petition for Declaratory Relief asserting that a bona fide controversy has arisen as to the following matters:

A.    Did MR. GREENWOOD have a right to be able to demand appraisal under The Policy, and did ARCH SPECIALTY have a right to refuse the insured's appraisal demand?;

B.    Did ARCH SPECIALTY wrongfully refuse to tender insurance benefits to MR. GREENWOOD?;

C.    Did MR. GREENWOOD comply with all terms and conditions of The Policy so as to have a right to be able to demand appraisal?;

D.    Did MR. GREENWOOD comply with all terms and conditions of The Policy so as to receive owed insurance benefits?;

E.    that ARCH SPECIALTY knowingly, intentionally and/or voluntarily waived and/or relinquished any right it may have had to deny coverage for MR. GREENWOOD'S insurance claim as a result of any alleged failure to comply with The Policy's terms and conditions, including for example, but not limited to the following terms and conditions: failure to appear for EUO, failure to produce records and documents, failure to permit inspection, failure to mitigate, failure to cooperate, untimely notice, failure to comply with conditions before suit, etc.?;

F.    that ARCH SPECIALTY may not withhold undisputed insurance benefits to MR. GREENWOOD until MR. GREENWOOD executes a POL completed by ARCH SPECIALTY?;

G.    Whether ARCH APECIALTY had a contractual right to refuse to proceed with appraisal and/or designate its named appraiser after MR. GREENWOOD demanded appraisal pursuant to The Policy?;

H.    Whether ARCH SPECIALTY had a contractual right to place additional terms and conditions upon the insured prior to tendering payment and/or agreeing to proceed with appraisal?;

I.    Whether ARCH SPECIALTY had the contractual right to reject MR. GREENWOOD'S submission of its executed Sworn Statement in Proof of Loss?; and

3

  J.  Did ARCH SPECIALTY wrongfully refuse to timely tender insurance benefits to MR. GREENWOOD?

5. Count II requests the Court to enter judgment against Arch and in favor of Plaintiff

  A.  as to Paragraph 34(A) through (J)

  B.  seeks a declaratory judgment that:

    (1)  the insurance contract, Policy No. 12PRP3479400, between Plaintiff and Defendant is a valid and enforceable contract,

    (2)  that pursuant to the terms and conditions of the insurance contract, Plaintiff holds a valid and enforceable right to property insurance coverage for damages from the accidental tire, and costs of this action; attorneys fees and such other and further relief as this Court may deem just and proper.

6. The areas of "bona fide controversy" asserted by the Plaintiff in Count II for Declaratory Judgment are simply a statement of the factual issues that underlie the breach of contract claim asserted under Count I of Greenwood's complaint.

7. Despite the fact that Court II asks the Court to decide all the factual issues underlying Count I for breach of contract, Plaintiff nonetheless requests a trial by jury on the same factual issues that he asks the Court to resolve under the Count II for declaratory judgment.

8. For Plaintiff to prevail on the breach of contract claim under Count I, he will prove to the trier of fact that:

  A.  Mr. Greenwood had a right to be able to demand appraisal under The

4

Policy, and ARCH did not have the right to refuse the insured's appraisal demand on the grounds that it would require the appraisal of the coverage defense asserted by Arch.

B.    That ARCH's coverage defense was unsupported by the facts and the policy and that therefore Arch breached the contract by not paying Mr. Greenwood the full amount of his demand.

C.    Mr. Greenwood's refusal to provide some of the documents request by Arch during the adjustment was not a breach of his duty to cooperate.

D.    that Arch's actions resulted in a knowing, intentional and/or voluntary waiver and/or relinquishment of any right it may have had to deny coverage for Mr. Greenwood's insurance claim as a result of any alleged failure to comply with The Policy's terms and conditions, including for example, but not limited to the following terms and conditions: failure to appear for EUO, failure to produce records and documents, failure to permit inspection, failure to mitigate, failure to cooperate, untimely notice, and failure to comply with conditions before suit.

E.    that Arch was not entitled to withhold undisputed insurance benefits to Mr. Greenwood until Mr. Greenwood executed a POL completed by Arch

F.    Arch breached the contract by placing asserting terms and conditions prior to tendering payment and/or agreeing to proceed with appraisal

5

G.     Arch breached the contract by rejecting Mr. Greenwood's submission of its executed Sworn Statement in Proof of Loss; and

H.     Arch breached the contract by "refusing to timely tender insurance benefits to Mr. Greenwood"

Thus, if Plaintiff prevails on its contractual claim, the plea for declaratory relief will be moot.

9.     If Plaintiff does not prevail on the contractual claim under Count I, either because the because the trier of fact determines Greenwood has been properly paid under the terms and conditions of the policy, or that Greenwood has breeched the contract of insurance itself, Plaintiff's Count for declaratory relief will be moot.

10.    As set out below in the Memorandum of Law, the Courts in Florida do not entertain declaratory judgment claims when the issues of coverage are dependent on resolution of fact issues common to an underlying liability action and the petition for declaratory relief contained in Count II of Greenwood's counterclaim should therefore be dismissed.

### Memorandum of Law

11.    The goals of the Declaratory Judgment Act[1] are to relieve litigants of the

---

[1] Florida Statute §§86.021. Power to construe

Any person claiming to be interested or who may be in doubt about his or her rights under a deed, will, contract, or other article, memorandum, or instrument in writing or whose rights, status, or other equitable or legal relations are affected by a statute, or any regulation made under statutory authority, or by municipal ordinance, contract, deed, will, franchise, or other article, memorandum, or instrument in writing may have determined any question of construction or validity arising under such statute, regulation, municipal ordinance, contract, deed, will, franchise, or other article, memorandum, or instrument in writing, or any part thereof, and obtain a declaration of rights, status, or other equitable or

6

common-law rule that a declaration of rights cannot be adjudicated unless the right has been violated and to render practical help in ending controversies which have not reached stage where other legal relief is immediately available.[2]  It affords parties relief from insecurity and uncertainty with respect to rights, status, and other equitable or legal relations.[3]

12.    The standard for testing sufficiency of declaratory judgment complaint is that, before any proceeding for declaratory relief should be entertained, it should be clearly made to appear that:

(1)    there is bona fide, actual, present practical need for declaration;

(2)    that declaration should deal with present, ascertained or ascertainable state of facts or present controversy as to stated facts; that some immunity, power, privilege or right of complaining party is dependent on fact or law applicable to facts;

(3)    that there is some person or persons who have, or reasonably may have actual, present, adverse and antagonistic interest in subject matter, either in fact or law;

(4)    that antagonistic and adverse interests are all before court by proper process or class presentation and

(5)    that relief sought is not merely giving of legal advice by courts or answer to questions propounded from curiosity.[4]

13.    The complaint must state more than a request to determine the rights of the parties under the contract in light of the facts.  There must be a real doubt as to the

_____

legal relations thereunder.

[2]  State, Dept. of Educ. v. Glasser, App. 2 Dist., 622 So.2d 1003 (1992), reversed 622 So.2d 944.

[3]  Coalition for Adequacy and Fairness in School Funding, Inc. v. Chiles, 680 So.2d 400 (1996), rehearing denied.

[4]  City of Hollywood v. Florida Power & Light Co., App. 4 Dist., 624 So.2d 285 (1993), clarified.

meaning of the contract language. Thus, in <u>Johnson v. Atlantic Nat. Ins. Co.</u>, [5] the Court held the complaint by the insurer containing allegations of non-liability on basis of insured's breach of duty to give it written notice of accident was insufficient to state a cause of action for declaratory relief. The Court held that the failure of complaint to contain allegations as to a doubt or need for construction of the policy or for determination of validity was fatal to the request for declaratory relief.

14.    Where the complainant has alleged a contractual claim as well as a count for declaratory judgment, the courts will entertain the declaratory judgment claim so long as issues of coverage are not dependent on resolution of fact issues common to underlying liability action.[6] Where the only "doubt" in a declaratory judgment action is a factual one, a declaratory judgment action is inappropriate.[7] Put another way, the Declaratory Judgment statute is not available to settle factual issues bearing on liability under a contract which is clear and unambiguous and which presents no need for its construction.[8]

---

[5] <u>Johnson v. Atlantic Nat. Ins. Co.</u>, App. 3 Dist., 155 So.2d 886 (1963).

[6] <u>Britamco Underwriters, Inc. v. Central Jersey Investments, Inc.</u>, App. 4 Dist., 632 So.2d 138 (1994). In <u>Britamco</u>, the Insurer who had a bona fide coverage dispute with its insurer. The court held that it was entitled to litigate coverage issue in separate declaratory judgment action, while simultaneously defending insured under reservation of rights in underlying liability action.

[7] See: <u>Columbia Cas. Co. v. Zimmerman</u>, 62 So.2d 338 (1953); <u>Smith v. Milwaukee Ins. Co. of Milwaukee, Wis., App.</u>, 197 So.2d 548 (1967). Where only doubt in declaratory judgment action to determine automobile liability insurer's liability for injuries inflicted when insured's automobile was being driven by another was whether the automobile was being driven with insured's knowledge and consent, such action would not lie.

[8] <u>Burns v. Hartford Acc. & Indem. Co.</u>, App. 3 Dist., 157 So.2d 84 (1963). See also: <u>Smith v. Milwaukee Ins. Co. of Milwaukee, Wis.</u>, App. 4 Dist., 197 So.2d 548 (1967), certiorari

15. Greenwood does not assert that the provisions of the policy are confusing or that there is any doubt as to their meaning. In fact, Greenwood describes the dispute as a series of factual questions bearing on the issue of whether Arch has breached the contract of insurance.

16. These are the very factual issues that must necessarily be resolved by the trier of fact in its resolution of the breach of contract claim asserted in Count I.

WHEREFORE, Arch respectfully requests that this Honorable Court grant its motion to dismiss the petition for declaratory relief contained in Count II of Greenwood's Counterclaim, and for such other relief as this Court deems appropriate.

BUTLER PAPPAS WEIHMULLER KATZ CRAIG LLP

WILLIAM R. LEWIS, ESQ.
Florida Bar No.: 879827
JOHN V. GARAFFA, ESQ.
Florida Bar No.: 0554308
777 S. Harbour Island Boulevard
Suite 500
Tampa, Florida 33602
Telephone:  (813) 281-1900
Facsimile:  (813) 281-0900
jgaraffa@butlerpappas.com
Attorneys for Defendant(s)

---

dismissed 204 So.2d 332. The use of declaratory proceedings is not available where object of the proceedings is to try disputed questions of fact as determinative issue rather than to seek a construction of definite stated rights, status or other relations., Johnson v. Atlantic Nat. Ins. Co., App. 3 Dist., 155 So.2d 886 (1963). In order for a party to be entitled to declaratory relief, a question must be raised either of construction or of validity of a contract or instrument in writing, and Columbia Cas. Co. v. Zimmerman, 62 So.2d 338 (1952). In order for declaratory judgment action to lie, there must be some doubt as to existence or nonexistence of some right, status, immunity, power or privilege, which may be at stake under a deed, will, contract, or other article, memorandum or instrument in writing.

9

## CERTIFICATE OF SERVICE

I certify that a copy hereof has been furnished to:

David J. Pettinato, Esq.
Merlin Law Group, P.A.
777 S. Harbour Island Boulevard
Suite 950
Tampa, FL  33602

by U.S. Mail on September _2 9_, 2009.

JOHN V. GARAFFA, ESQ.

10

IN THE CIRCUIT COURT OF THE ELEVENTH JUDICIAL CIRCUIT
IN AND FOR DADE COUNTY, FLORIDA
CIVIL DIVISION

ANTHONY GREENWOOD, d/b/a
McDONALDS,

      Plaintiff,

                                  Case No.: 09-65565 CA 04

vs.

ARCH SPECIALTY INSURANCE
COMPANY,

      Defendant.

_____/

## DEFENDANT'S CERTIFICATION OF NOTICE OF REMOVAL

TO:    Clerk, 11th Judicial Circuit
       Miami-Dade County Courthouse
       73 West Flagler Street, Room 135
       Miami, FL 33130

       In compliance with 28 U.S.C, Section 1446(d), you are hereby notified of the filing

of a Notice of Removal of the above-styled cause to the United State District Court for the

Middle District of Florida, Tampa Division, copies of which are attached hereto.

       This $29$ day of September, 2009.

                         Respectfully submitted,

                         BUTLER PAPPAS WEIHMULLER KATZ CRAIG, LLP

                         JOHN V. GARAFFA, ESQ.
                         Florida Bar No.: 0554308
                         777 S. Harbour Island Boulevard, Suite 500
                         Tampa, Florida  33602
                         Telephone:   (813) 281-1900
                         Facsimile:    (813) 281-0900
                         jgaraffa@butlerpappas.com
                         Attorneys for Defendant

## CERTIFICATE OF SERVICE

I certify that a copy hereof has been furnished to:

David J. Pettinato, Esq.
Merlin Law Group, P.A.
777 S. Harbour Island Boulevard
Suite 950
Tampa, FL  33602

by U.S. Mail on September _____, 2009.

JOHN V. GARAFFA, ESQ.

IN THE CIRCUIT COURT OF THE ELEVENTH JUDICIAL CIRCUIT
IN AND FOR DADE COUNTY, FLORIDA
CIVIL DIVISION

ANTHONY GREENWOOD, d/b/a
McDONALDS,

        Plaintiff,

                                    Case No.: 09-65565 CA 04

vs.

ARCH SPECIALTY INSURANCE
COMPANY,

        Defendant.

_____/

## DEFENDANT'S NOTICE OF REMOVAL TO OPPOSING COUNSEL

TO:   David J. Pettinato, Esq.
      The Merlin Law Group
      777 S. Harbour Island Blvd., Suite 950
      Tampa, FL 33602

YOU ARE HEREBY NOTIFIED that on this 29 day of September, 2009, Defendant,

Arch Specialty Insurance Company, did remove the above-styled action to the United

States District Court, Southern District of Florida.

Defendant did mail to the Office of the Clerk of the Unites States District Court of

the Southern District of Florida, its Notice of Removal of the above-styled cause to the

United States District Court for the Southern District of Florida, a copy of said Notice of

Removal being provided contemporaneously with this Notice,  and that removal of said

cause to the United States District Court for the Southern District of Florida has been

effected hereby.

You will please serve the undersigned with copies of all pleadings which may be

filed by you in the United States District Court for the Southern District of Florida, pursuant

to the removal of said cause aforesaid, in accordance with the Rules of Civil Procedure

obtaining in the said District Court.

Respectfully submitted,

BUTLER PAPPAS WEIHMULLER KATZ CRAIG, LLP

WILLIAM R. LEWIS, ESQ.
Florida Bar No.: 879827
JOHN V. GARAFFA, ESQ.
Florida Bar No.: 0554308
777 S. Harbour Island Boulevard, Suite 500
Tampa, Florida 33602
Telephone:   (813) 281-1900
Facsimile:    (813) 281-0900
jgaraffa@butlerpappas.com
Attorneys for Defendant

## CERTIFICATE OF SERVICE

I certify that a copy hereof has been furnished to:

David J. Pettinato, Esq.
Merlin Law Group, P.A.
777 S. Harbour Island Boulevard
Suite 950
Tampa, FL 33602

by U.S. Mail on September _29_, 2009.

JOHN V. GARAFFA, ESQ.

IN THE CIRCUIT COURT OF THE ELEVENTH JUDICIAL CIRCUIT
IN AND FOR DADE COUNTY, FLORIDA
CIVIL DIVISION

ANTHONY GREENWOOD, d/b/a
McDONALDS,

      Plaintiff,

                              Case No.: 09-65565 CA 04

vs.

ARCH SPECIALTY INSURANCE
COMPANY,

      Defendant.

_____/

## DEFENDANT'S NOTICE OF FILING NOTICE OF REMOVAL

TO:    David J. Pettinato, Esq.            Clerk, 11th Judicial Circuit
        Merlin Law Group, P.A.           Miami-Dade County Courthouse
        777 S. Harbour Island Boulevard    73 West Flagler Street, Room 135
        Suite 950                        Miami, FL 33130
        Tampa, FL 33602

In compliance with 28 U.S.C, Section 1446(d), you are hereby notified of the filing

of a Notice of Removal of the above-styled cause to the United State District Court for the

Southern District of Florida, copies of which are attached hereto.

This 29 day of September, 2009.

                           Respectfully submitted,

                           BUTLER PAPPAS WEIHMULLER KATZ CRAIG, LLP

                           JOHN V. GARAFFA, ESQ.
                           Florida Bar No.: 0554308
                           777 S. Harbour Island Boulevard, Suite 500
                           Tampa, Florida 33602
                           Telephone:  (813) 281-1900
                           Facsimile:   (813) 281-0900
                           jgaraffa@butlerpappas.com
                           Attorneys for Defendant

## CERTIFICATE OF SERVICE

I certify that a copy hereof has been furnished to:

David J. Pettinato, Esq.
Merlin Law Group, P.A.
777 S. Harbour Island Boulevard
Suite 950
Tampa, FL  33602

by U.S. Mail on September ___29___, 2009.

JOHN V. GARAFFA, ESQ.

℀JS 44  (Rev. 11/05)

# CIVIL COVER SHEET

The JS 44 civil cover sheet and the information contained herein neither replace nor supplement the filing and service of pleadings or other papers as required by law, except as provided by local rules of court. This form, approved by the Judicial Conference of the United States in September 1974, is required for the use of the Clerk of Court for the purpose of initiating the civil docket sheet. (SEE INSTRUCTIONS ON THE REVERSE OF THE FORM.) **NOTICE: Attorneys MUST Indicate All Re-filed Cases Below.**

| I. (a) PLAINTIFFS | DEFENDANTS |
|---|---|
| Anthony Greenwood, d/b/a McDonalds | Arch Specialty Insurance Company |

**(b)** County of Residence of First Listed Plaintiff  Miami-Dade County, 🏛
(EXCEPT IN U.S. PLAINTIFF CASES)

County of Residence of First Listed Defendant  Douglas County, Nebraska
(IN U.S. PLAINTIFF CASES ONLY)

NOTE:  IN LAND CONDEMNATION CASES, USE THE LOCATION OF THE TRACT LAND INVOLVED.

**(c)** Attorney's (Firm Name, Address, and Telephone Number)

David J. Pettinato, Esq.
Merlin Law Group, P.A.
777 S. Harbour Island Blvd., Suite 950
Tampa, FL  33602

Attorneys (If Known)

John V. Garaffa, Esq.
Butler Pappas Weihmuller Katz Craig LLP

**(d)** Check County Where Action Arose: ✓ MIAMI- DADE  ❑ MONROE  ❑ BROWARD  ❑ PALM BEACH  ❑ MARTIN  ❑ ST. LUCIE  ❑ INDIAN RIVER  ❑ OKEECHOBEE HIGHLANDS

## II. BASIS OF JURISDICTION    (Place an "X" in One Box Only)

❑ 1  U.S. Government Plaintiff

❑ 3  Federal Question (U.S. Government Not a Party)

❑ 2  U.S. Government Defendant

✓ 4  Diversity (Indicate Citizenship of Parties in Item III)

*handwritten:* 1:09 CV 22982-A Hmaga Brown

## III. CITIZENSHIP OF PRINCIPAL PARTIES (Place an "X" in One Box for Plaintiff and One Box for Defendant)
(For Diversity Cases Only)

|  | PTF | DEF |  | PTF | DEF |
|---|---|---|---|---|---|
| Citizen of This State | ✓ 1 | ❑ 1 | Incorporated or Principal Place of Business In This State | ❑ 4 | ❑ 4 |
| Citizen of Another State | ❑ 2 | ❑ 2 | Incorporated and Principal Place of Business In Another State | ❑ 5 | ✓ 5 |
| Citizen or Subject of a Foreign Country | ❑ 3 | ❑ 3 | Foreign Nation | ❑ 6 | ❑ 6 |

## IV. NATURE OF SUIT    (Place an "X" in One Box Only)

| CONTRACT | TORTS | | FORFEITURE/PENALTY | BANKRUPTCY | OTHER STATUTES |
|---|---|---|---|---|---|
| ☒ 110 Insurance | **PERSONAL INJURY** | **PERSONAL INJURY** | ❑ 610 Agriculture | ❑ 422 Appeal 28 USC 158 | ❑ 400 State Reapportionment |
| ❑ 120 Marine | ❑ 310 Airplane | ❑ 362 Personal Injury - | ❑ 620 Other Food & Drug | ❑ 423 Withdrawal | ❑ 410 Antitrust |
| ❑ 130 Miller Act | ❑ 315 Airplane Product | Med. Malpractice | ❑ 625 Drug Related Seizure | 28 USC 157 | ❑ 430 Banks and Banking |
| ❑ 140 Negotiable Instrument | Liability | ❑ 365 Personal Injury - | of Property 21 USC 881 | | ❑ 450 Commerce |
| ❑ 150 Recovery of Overpayment | ❑ 320 Assault, Libel & | Product Liability | ❑ 630 Liquor Laws | **PROPERTY RIGHTS** | ❑ 460 Deportation |
| & Enforcement of Judgment | Slander | ❑ 368 Asbestos Personal | ❑ 640 R.R. & Truck | ❑ 820 Copyrights | ❑ 470 Racketeer Influenced and |
| ❑ 151 Medicare Act | ❑ 330 Federal Employers' | Injury Product | ❑ 650 Airline Regs. | ❑ 830 Patent | Corrupt Organizations |
| ❑ 152 Recovery of Defaulted | Liability | Liability | ❑ 660 Occupational | ❑ 840 Trademark | ❑ 480 Consumer Credit |
| Student Loans | ❑ 340 Marine | **PERSONAL PROPERTY** | Safety/Health | | ❑ 490 Cable/Sat TV |
| (Excl. Veterans) | ❑ 345 Marine Product | ❑ 370 Other Fraud | ❑ 690 Other | | ❑ 810 Selective Service |
| ❑ 153 Recovery of Overpayment | Liability | ❑ 371 Truth in Lending | **LABOR** | **SOCIAL SECURITY** | ❑ 850 Securities/Commodities/ |
| of Veteran's Benefits | ❑ 350 Motor Vehicle | ❑ 380 Other Personal | ❑ 710 Fair Labor Standards | ❑ 861 HIA (1395ff) | Exchange |
| ❑ 160 Stockholders' Suits | ❑ 355 Motor Vehicle | Property Damage | Act | ❑ 862 Black Lung (923) | ❑ 875 Customer Challenge |
| ❑ 190 Other Contract | Product Liability | ❑ 385 Property Damage | ❑ 720 Labor/Mgmt. Relations | ❑ 863 DIWC/DIWW (405(g)) | 12 USC 3410 |
| ❑ 195 Contract Product Liability | ❑ 360 Other Personal | Product Liability | ❑ 730 Labor/Mgmt.Reporting | ❑ 864 SSID Title XVI | ❑ 890 Other Statutory Actions |
| ❑ 196 Franchise | Injury | | & Disclosure Act | ❑ 865 RSI (405(g)) | ❑ 891 Agricultural Acts |
| **REAL PROPERTY** | **CIVIL RIGHTS** | **PRISONER PETITIONS** | ❑ 740 Railway Labor Act | **FEDERAL TAX SUITS** | ❑ 892 Economic Stabilization Act |
| ❑ 210 Land Condemnation | ❑ 441 Voting | ❑ 510 Motions to Vacate | ❑ 790 Other Labor Litigation | ❑ 870 Taxes (U.S. Plaintiff | ❑ 893 Environmental Matters |
| ❑ 220 Foreclosure | ❑ 442 Employment | Sentence | ❑ 791 Empl. Ret. Inc. | or Defendant) | ❑ 894 Energy Allocation Act |
| ❑ 230 Rent Lease & Ejectment | ❑ 443 Housing/ | **Habeas Corpus:** | Security Act | ❑ 871 IRS—Third Party | ❑ 895 Freedom of Information |
| ❑ 240 Torts to Land | Accommodations | ❑ 530 General | | 26 USC 7609 | Act |
| ❑ 245 Tort Product Liability | ❑ 444 Welfare | ❑ 535 Death Penalty | | | ❑ 900 Appeal of Fee Determination |
| ❑ 290 All Other Real Property | ❑ 445 Amer. w/Disabilities - | ❑ 540 Mandamus & Other | | | Under Equal Access |
| | Employment | ❑ 550 Civil Rights | | | to Justice |
| | ❑ 446 Amer. w/Disabilities - | ❑ 555 Prison Condition | | | ❑ 950 Constitutionality of |
| | Other | | | | State Statutes |
| | ❑ 440 Other Civil Rights | | | | |

## V. ORIGIN    (Place an "X" in One Box Only)

❑ 1  Original Proceeding
✓ 2  Removed from State Court
❑ 3  Re-filed- (see VI below)
❑ 4  Reinstated or Reopened
❑ 5  Transferred from another district (specify)
❑ 6  Multidistrict Litigation
❑ 7  Appeal to District Judge from Magistrate Judgment

## VI. RELATED/RE-FILED CASE(S).

(See instructions second page):

a) Re-filed Case ❑ YES  ✓ NO        b) Related Cases ❑ YES  ✓ NO

JUDGE                                DOCKET NUMBER

## VII. CAUSE OF ACTION

Cite the U.S. Civil Statute under which you are filing and Write a Brief Statement of Cause (**Do not cite jurisdictional statutes unless diversity**):

28 U.S.C. 1332 - breach of insurance contract

LENGTH OF TRIAL via  10  days estimated (for both sides to try entire case)

## VIII. REQUESTED IN COMPLAINT:

❑ CHECK IF THIS IS A CLASS ACTION UNDER F.R.C.P. 23

DEMAND $

CHECK YES only if demanded in complaint:
JURY DEMAND:  ✓ Yes  ❑ No

ABOVE INFORMATION IS TRUE & CORRECT TO THE BEST OF MY KNOWLEDGE

SIGNATURE OF ATTORNEY OF RECORD

DATE  September 24, 2009

**FOR OFFICE USE ONLY**

AMOUNT  350 00    RECEIPT # 547711    IFP